# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **CLEVELAND BROWNS FOOTBALL COMPANY, LLC,** | : : : | **Case No. 1:24-cv-01857** |
| **Plaintiff,** | : : | **Judge David A. Ruiz** |
| **vs.** | : : | |
| **THE CITY OF CLEVELAND, et al.** | : : | |
| **Defendants.** | : | |

---

## INTERVENOR-DEFENDANT THE STATE OF OHIO'S MOTION TO DISMISS

---

Intervenor-Defendant the State of Ohio requests that this Court abstain from deciding this case until the unanswered questions of state law upon which it is premised can be decided by an Ohio court. In the alternative, the State moves to dismiss Plaintiff's federal claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Once the federal claims are dismissed, all that remains are novel claims grounded in Ohio law. This Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them pursuant to Federal Rule of Civil Procedure 12(b)(1). The reasons for this Motion are set forth in the attached Memorandum.

Respectfully submitted,

DAVE YOST
OHIO ATTORNEY GENERAL

*/s/ Bridget C. Coontz*
Bridget C. Coontz (0072919)
Chief Counsel and Ethics Officer
Samuel C. Peterson (0081342)
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Tel: 614-728-2035
bridget.coontz@OhioAGO.gov
Samuel.peterson@ohioago.gov

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES........................................................**Error! Bookmark not defined.**

ISSUES TO BE DECIDED.................................................................................................. vi

SUMMARY OF ARGUMENT ............................................................................................ vii

MEMORANDUM IN SUPPORT ........................................................................................... 1

BACKGROUND .................................................................................................................... 2

LAW AND ARGUMENT ....................................................................................................... 4

    A.   The Browns' federal questions are premised upon unanswered questions of state law that this Court should abstain from deciding........................................................................................ 4

    B.   Standard of Review ................................................................................................... 6

        1.   The Browns failed to state a federal constitutional challenge......................................... 7

           a.   The dormant Commerce Clause does not apply to intrastate commerce……………..7

           b.   The dormant Commerce Clause does not apply because the government acts as a market participant when it provides taxpayer support for a sports stadium. ...................... 14

           c.   The Art Modell Law nonetheless complies with the dormant Commerce Clause..... 15

        2.   This Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them pursuant to Fed. Civ. R. 12(b)(1). ............................................. 19

CONCLUSION ..................................................................................................................... 20

<u>**TABLE OF AUTHORITIES**</u>

**Cases**                                                                                                    **Page(s)**

*Alshaibani v. Litton Loan Servicing, LP,*
    528 F. App'x 462 (6th Cir. 2013) ........................................................................ 6, 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) .............................................................................................. 6

*Burch v. USDA,*
    174 F. App'x. 328 (6th Cir. 2006) ............................................................. 8, 10, 12

*City of Cleveland v. Haslam Sports Group, LLC, et al.,*
    Cuyahoga County Common Pleas Court Case No. CV-25-110189 (Moore, J.)................... 20

*Department of Revenue of Ky. v. Davis,*
    553 U.S. 328 (2008) ............................................................................................ 14

*Doe v. Cummins,*
    662 F. App'x 437 (6th Cir. 2016) ........................................................................ 7

*Filing v. Phipps,*
    No. 5:07-cv-1712, 2008 U.S. Dist. LEXIS 142989 (N.D. Ohio Oct. 17, 2008) .................... 19

*Foresight Coal Sales, LLC v. Chandler,*
    60 F.4th 288 (6th Cir. 2023)............................................................................... 15

*General Motors Corp. v. Romein,*
    503 U.S. 181 (1992) ..................................................................................... 12, 13

*GTE North, Inc. v. Strand,*
    209 F.3d 909 (6th Cir. 2000)................................................................................ 5

*Guzman v. U.S. Dep't of Homeland Sec.,*
    679 F.3d 425 (6th Cir, 2012)............................................................................... 11

*Harris Ct. Comm'rs Court v. Moore,*
    420 U.S. 77 (1975) .......................................................................................... 4, 5

*Haw. Hous. Auth. v. Midkiff,*
    467 U.S. 229 (1984) ............................................................................................ 4

*Hoffman Estates v. Flipside,*
    455 U.S. 489 (1982) ............................................................................................ 8

*Home Bldg. & Loan Ass'n v. Blaisdell,*
    290 U.S. 398 (1934) .......................................................................................... 13

*Hughes v. Alexandria Scrap Corp.*,
    426 U.S. 794 (1976) ................................................................................ 14

*United States ex rel. Martin v. Hathaway*
    63 F.4th 1043 (6th Cir. 2023) .................................................................. 11

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023) ......................................................... 13, 14, 16, 18

*State of Ohio ex rel. Ohio Attorney General Mike DeWine, et al. v. Precourt Sports*
    *Ventures, LLC, et al.*
    Franklin County Common Pleas Court Case No. 18-CV-001864 (Brown, J.) ............... *passim*

*Pike v. Bruce Church*,
    397 U.S. 137 (1970) ........................................................................ 17, 18

*Railroad Comm'n v. Pullman Co.*,
    312 U.S. 496 (1941) ........................................................................ *passim*

*SEC v. G. Weeks Secur., Inc.*
    678 F.2d 649 (6th Cir. 1982) .................................................................. 11

*Stevens v. City of Columbus*,
    2022 U.S. App. LEXIS 20829 ..................................................... vii, 7, 8

*Strayhorn v. Wyeth Pharms., Inc.*,
    737 F.3d 378 (6th Cir. 2013) .................................................................... 6

*Texaco, Inc. v. Short*,
    454 U.S. 516 (1982) ............................................................................... 13

*Truesdell v. Friedlander*,
    80 F.4th 762 (6th Cir. 2023) ........................................... 15, 16, 17, 18

*Tyler v. Collins*,
    709 F.2d 1106 (6th Cir. 1983) ............................................................ 4, 5

*United States v. Edge*,
    989 F.2d 871 (6th Cir. 1993) ............................................................ vii, 7

*Warth v. Seldin*,
    422 U.S. 490 (1975) ............................................................................... 14

*White v. Mass. Council of Constr. Emplrs.*,
    460 U.S. 204 (1983) ............................................................................... 15

**Statutes**

28 U.S.C. § 1367 ............................................................................................... 19

28 U.S.C. § 1367(c)(1), (3) ................................................................ vi, 19, 20

Ohio Rev. Code § 1.42 ........................................................................ 9

Ohio Rev. Code § 9.67 .................................................................. *passim*

Ohio Rev. Code § 9.67(A) ................................................................ 3, 4

Ohio Rev. Code § 9.67(B) .............................................................. *passim*

Ohio Rev. Code § 2744.01(F) ............................................................ 10

**Other Authorities**

*Agreement reached for Haslam, Edwards families to operate Columbus Crew SC,*
Dec. 28, 2018 available at https://perma.cc/F52Z-RJZB ............................... 6

American Heritage Dictionary of the English Language (5th ed. 2022) ............... 9

Fed. Civ. R. 12(b)(1) ................................................................... i, 19, 20

Fed. Civ. R. 12(b)(6) ............................................................... i, 6, 16, 20

United States Constitution Art. I, § 8, cl. 3 ...................................... *passim*

United States Constitution Article I, § 10 ..................................... vi, vii, 4, 12

United States Constitution Due Process Clause ....................................... vi, 4

**<u>ISSUES TO BE DECIDED</u>**

1. Whether it is appropriate for this Court to consider the Plaintiff's federal claims when they are premised on unanswered questions of state law, or whether it should abstain from deciding Plaintiff's federal claims in accordance with the United States Supreme Court's decision in *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941).

2. Whether Ohio Revised Code § 9.67 is unconstitutionally vague in violation of the Due Process Clause of the United States Constitution.

3. Whether Ohio Revised Code § 9.67 violates Article I, § 10 of the United States Constitution, the Contracts Clause.

4. Whether Ohio Revised Code § 9.67 violates the dormant Commerce Clause.

5. Whether, once the federal constitutional claims are dismissed, this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims in accordance with 28 U.S.C. § 1367(c)(1), (3).

## <u>SUMMARY OF ARGUMENT</u>

1. As a threshold matter, unanswered questions of Ohio law must be answered before this Court can reach Plaintiff's federal constitutional claims. Consistent with the United States Supreme Court's decision in *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941), this Court should abstain from considering those claims until an Ohio Court has determined whether and how Ohio Revised Code § 9.67 applies to the facts at hand.

2. Ohio Revised Code § 9.67 is not unconstitutionally vague. A law will survive a void-for-vagueness challenge so long as it provides "'the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and offer[s] clear standards to judges, juries, and police that prevent discriminatory or arbitrary enforcement." *Stevens v. City of Columbus,* 2022 U.S. App. LEXIS 20829 *12 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972)). Civil laws, such as Ohio Rev. Code § 9.67 which do not implicate the First Amendment are reviewed less stringently than criminal laws and courts should consider such statutes as as-applied to the relevant facts. *United States v. Edge,* 989 F.2d 871, 878 (6th Cir. 1993). Here, a person of ordinary intelligence would understand what Ohio Revised Code § 9.67 requires of the Browns before the Team abandons its tax-supported facility and begins playing the majority of its games elsewhere.

3. For a statute to impair a contractual relationship in violation of Art. I Sec. 10 of the United States Constitution, the contract must exist at the time the statute is passed. That did not happen here. Ohio Revised Code § 9.67 went into effect in June 1996. The Browns did not enter into a Franchise Agreement with the National Football League until September 1998. Plaintiff's Contract Clause claim therefore fails

4. Plaintiff's dormant Commerce Clause claim fails for three reasons. *First,* the dormant Commerce Clause applies to protect *interstate* commerce between the states. It has no application to the Browns' intended *intrastate* move from Cleveland, Ohio to Brook Park, Ohio. *Second,* the dormant Commerce Clause does not apply when a government acts as a market participant. Here, the government has entered the professional sports team market and is acting as a financier. Ohio Revised Code § 9.67 imposes conditions on the receipt of taxpayer money, the dormant Commerce Clause does not apply to it. *Third,* if the dormant Commerce Clause applies, the Statute complies with it. Ohio Rev. Code § 9.67 does not discriminate against out-of-state businesses or give any preferential treatment to those from in-state. Ohio Revised Code § 9.67 simply levels the playing field by giving a political subdivision, or a group of investors in its area, the same opportunity to purchase a professional sports team as every other potential purchaser.

5. This Court's supplemental jurisdiction over the Plaintiff's state law claims are premised upon the existence of their federal claims. Once this Court dismisses Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over the state law claims and allow an Ohio court to decide the novel state law issues this case presents.

## MEMORANDUM IN SUPPORT

Ohio has the right, and the duty, to protect taxpayer money. And when it makes taxpayer money available to private entities, it has the right to ensure that it is not wasted. Ohio Revised Code § 9.67 does exactly that. It ensures that when a professional sports team accepts public money, it also complies with statutory obligations which prevent it from being wasted. The obligations are minimal when compared to the amount of taxpayer dollars that are often given to professional sports teams. Before a professional sports team that plays most of its home games in a tax-supported facility and receives financial assistance from the State or a political subdivision wants to play elsewhere, it must do one of two things: (1) enter into an agreement with the political subdivision which allows the team to play somewhere other than the tax-supported facility; *or* (2) give the political subdivision in which the facility is located six months' notice of its intent to relocate. During the six months the political subdivision, or a group of investors in the area, must be given the same (non-exclusive opportunity) to purchase the team as everyone else. That's it.

Notably, the Statute does not require a sale or give anyone purchaser selection rights. It simply provides that when a professional sports team accepts taxpayer money, the political subdivision that gave it to them gets a seat at the "opportunity to purchase" table on the same footing as everyone else. This is an extraordinarily small price for a team to pay in exchange for tens, if not hundreds, of millions of taxpayer dollars that are often provided.

What's more, it is a price that is easily avoided. The Browns did not have to accept taxpayer money. It was their business decision to do so that got them here. But soliciting and accepting public money comes with small strings, as it should. Here, the Browns claim that those strings are unconstitutional. They are wrong.

But leading with the federal constitutional claims puts the proverbial cart before the horse. If it is truly up in the air whether the Browns' actions trigger or violate Ohio Rev. Code § 9.67 (as the Browns claim), basic abstention and constitutional avoidance principles dictate that those questions should be answered by an Ohio court before the federal claims are considered. Because if the Statute is not triggered or violated, there is no reason to reach the federal constitutional questions. But even if this Court reaches the federal constitutional questions, the Statute easily passes constitutional muster and the Browns have failed to state a claim otherwise. Finally, once the federal claims are dismissed, this Court should decline to exercise its supplemental jurisdiction over the only remaining state law claims. The bottom line is that the Browns should not be in federal court yet, or possibly ever. An Ohio court should have been their first, and possibly only, stop.

**BACKGROUND**

Plaintiff, the Cleveland Browns Football Company ("Browns" or "Team") is an Ohio company that owns the rights to the Cleveland Browns football franchise of the National Football League ("NFL"). Doc. No. 12 ¶ 2, 16. It obtained those rights through a Franchise Agreement with the NFL, entered on or about September 1998. Id. ¶ 40. The Team currently plays its home football games at Huntington Bank Field ("HBF"), located on the City of Cleveland's lakefront. Id. The City of Cleveland ("City") owns HBF and leases it to Cleveland Browns Stadium Company LLC ("StadCo"), a Browns affiliate. Id. The lease expires in 2029, at which point the Browns will have no right or obligation to continue playing football at HBF, and taxpayer funds will no longer be used to support it. Id. ¶ 3.

Over the past several years the Browns and the City have been in discussions over renovating HBF or building an entirely new stadium on the Cleveland lakefront ("the Cleveland

options"). Id. ¶ 6-7. The Browns recently concluded that the Cleveland options would not work and informed the City that they intend to pursue a new domed stadium in Brook Park, Ohio. Id. ¶ 8. Brook Park is adjacent to the City. Id. The Browns will perform the Lease in full prior to its expiration. Id. ¶ 10.

The City objects to the Browns' intended move and on May 6, 2024 its City Council passed an emergency ordinance authorizing the City's Law Director to enforce the provisions of Ohio Revised Code § 9.67, known as the "Art Modell Law", against the Team. Id. ¶ 14. Effective June 20, 1996, the Art Modell law imposes certain restrictions on owners of professional sports teams that use tax supported facilities and that want to begin playing the majority of their home games somewhere else. Id. ¶ 43; *and see* Ohio Rev. Code § 9.67. It provides:

> No owner of a professional sports team that uses a tax-supported facility for most of its home games and receives financial assistance from the state or a political subdivision thereof shall cease playing most of its home games at the facility and begin playing most of its home games elsewhere unless the owner either:
>
> (A) Enters into an agreement with the political subdivision permitting the team to play most of its home games elsewhere;
>
> (B) Gives the political subdivision in which the facility is located not less than six months' advance notice of the owner's intention to cease playing most of its home games at the facility and, during the six months after such notice, gives the political subdivision or any individual or group of individuals who reside in the area the opportunity to purchase the team.

Ohio Rev. Code § 9.67. This is an 'either/or' statute. That is, the owner of a professional sports team that uses a tax-supported facility and receives financial assistance from the state or a political subdivision can stop playing most of its home games at "the facility" if it does one of two things: 1) enters into an agreement with the political subdivision allowing the team to play "elsewhere," *see* Ohio Rev. Code § 9.67(A); *or* 2) gives notice as set out in the Statute, *see* Ohio Rev. Code § 9.67(B). The owner does not need to do both.

The Browns do not allege that they have an agreement with the City to play the their home games somewhere other than HBF. Ohio Rev. Code 9.67(A) is therefore not implicated. Instead, the Team challenges the so-called "notice-and-opportunity" requirements of Ohio Rev. Code § 9.67(B). They claim that facially, and as applied to the Browns, they are unconstitutionally vague in violation of the Due Process Clause of U.S. Constitution (Count One), violate the dormant Commerce Clause (Count Two), and violate Art. I, § 10 of the U.S. Constitution, the Contract Clause (Count Three). Doc. 12 ¶ 68-121. In the alternative the Browns seek a declaration under Ohio law that their actions do not trigger or violate Ohio Rev. Code § 9.67. Id. ¶ 122-131.

## LAW AND ARGUMENT

### A. The Browns' federal questions are premised upon unanswered questions of state law that this Court should abstain from deciding.

"[W]hen a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question, and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Ct. Comm'rs Court v. Moore,* 420 U.S. 77, 83 (1975) (citing *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941)). In *Pullman,* the Supreme Court held that "[f]ew public interests have a higher claim upon discretion of a federal chancellor than the avoidance of needless friction with state policies[.]" *Pullman*, 312 U.S. at 500. By abstaining in such cases, "federal courts will avoid [the] unnecessary adjudication of federal questions[.]" *Haw. Hous. Auth. v. Midkiff,* 467 U.S. 229, 236 (1984).

When determining whether to apply *Pullman* abstention, the Sixth Circuit asks two questions: 1) whether an unclear state law exists; and 2) the likelihood that the state court's decision on the state law issue would "obviate the necessity for a decision of the federal constitutional question or substantially modify the constitutional issue." *Tyler v. Collins,* 709 F.2d 1106, 1108

(6th Cir. 1983) (quoting 1A Moore's Federal Practice P0.203[1] (1982)). "If the state courts would be likely to construe the statute in a fashion that would avoid the need for federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." *Harris,* 420 U.S. at 84; *GTE North, Inc. v. Strand,* 209 F.3d 909, 921 (6th Cir. 2000).

If, as the Browns allege, they have not triggered or violated Ohio Rev. Code § 9.67, doc. no. 12 ¶ 131, the federal constitutional questions fall away. Whether they are correct rests on unanswered questions of state law. No Ohio Court has decided:

- Whether Ohio Rev. Code § 9.67 applies to a professional sports team that leases a tax-supported facility where the lease is set to expire on a date certain and the team intends to continue playing at the tax-supported facility throughout the lease term. Id. ¶ 124. The Browns claim it does not. No Ohio court has decided that issue.

- Whether Ohio Rev. Code § 9.67 applies when a professional sports team seeks to make an intrastate move. On its face, the Statute does not distinguish between an intrastate or interstate move. The Browns allege that there is a distinction. Id. ¶ 130. Though the State disagrees and believes that it applies here, no Ohio court has decided that issue.

If a state court confirms that the Browns are right on either of these points, there is no need for this Court to decide the federal constitutional claims. *See Tyler,* 709 F.2d at 1108. Abstention is warranted here. That an Ohio court *should* decide these questions is only underscored by the fact that no Ohio court has ever considered them. In fact, in the twenty-eight years that it has been in effect, only one Ohio court has considered Ohio Rev. Code § 9.67 *at all.*

In 2018 the Franklin County Court of Common Pleas considered similar constitutional challenges to the ones presented here. *State of Ohio ex rel. Ohio Attorney General Mike DeWine, et al. v. Precourt Sports Ventures, LLC, et al.* Franklin County Common Pleas Court Case No. 18-CV-001864 (Brown, J.). There, the State of Ohio and the City of Columbus sued Precourt Sports Ventures, LLC ("PSV"), Major League Soccer, LLC ("MLS"), and others to enforce Ohio Rev. Code § 9.67 relative to MLS and PSV's potential move of the Columbus Crew SC ("the Crew") from Columbus to Austin, Texas. *See Precourt,* 18-CV-001864, Decision and Entry Denying

Defendants' Motion to Dismiss. The Defendants in that case also challenged the Statute's applicability, and the Franklin County court rejected those challenges. Although questions of the Statute's applicability were ultimately resolved in Columbus and the State's favor, *see id*., no other Ohio court has had an opportunity to consider those questions because the case settled after the Crew was sold to a group of local investors. *See* MLSsoccer staff, *Agreement reached for Haslam, Edwards families to operate Columbus Crew SC*, MLSsoccer.com, Dec. 28, 2018 available at https://perma.cc/F52Z-RJZB. The state law questions at issue in *Precourt* also were also different than those raised here and this is truly a case first impression under Ohio law.

This is only the second opportunity for an Ohio court to interpret and apply Ohio Rev. Code § 9.67. The Browns' request that this federal court do so instead is misplaced. Ohio courts should develop Ohio jurisprudence, especially when the opportunity to do so arises so infrequently. *Pullman* applies and this Court should abstain.

**B. Standard of Review**

If this Court does not abstain, it should still dismiss the Browns' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Fed. Civ. R. 12(b)(6) provides for dismissal based on failure to state a claim. To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In evaluating a motion to dismiss under Rule 12(b)(6), the Court "must accept all of Plaintiffs' well-pleaded factual allegations as true and construe them in a light most favorable to Plaintiffs." *Alshaibani v. Litton Loan Servicing, LP*, 528 F. App'x 462, 463-64 (6th Cir. 2013). However, the Court need not accept "legal conclusions or

unwarranted factual inferences," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotations omitted); *Doe v. Cummins*, 662 F. App'x 437, 454 (6th Cir. 2016) ("While it is true that, in considering a motion to dismiss, all well-pleaded factual allegations must be taken as true, a court need not indulge in unreasonable inference.").

### 1. The Browns failed to state a federal constitutional challenge.

The only Ohio court to have considered the *constitutional* questions at issue here has rejected them. *See Precourt* at 26–52. If this Court reaches those questions, it should do the same. Ohio Rev. Code § 9.67 is presumed to be constitutional in its entirety, and the Browns bear the burden of proving otherwise. *Stevens v. City of Columbus,* 2022 U.S. App. LEXIS 20829 *12 (6th Cir. 2022) (citing *United States v. Kernell,* 667 F.3d 746, 750 (6th Cir. 2012)). They cannot meet it here.

### <u>Vagueness</u>

A law will survive a void-for-vagueness challenge so long as it provides "'the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and offer[s] clear standards to judges, juries, and police that prevent discriminatory or arbitrary enforcement." *Stevens,* 2022 U.S. App. LEXIS 20829 *11 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972)). But "mathematical certainty" in statutory language is not required and "perfect clarity and precise guidance has never been required even of regulations that restrict expressive activity[.]" *Stevens* 2022 U.S. App. LEXIS 20829 *12, (citing *United States v. Williams,* 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989)). Further, "[i]n the absence of legislative intent to the contrary, the plain and ordinary meaning of the statute controls." *United States v. Edge,* 989 F.2d 871, 878 (6th Cir. 1993).

Ohio Rev. Code § 9.67 does not regulate expressive activity *and* it is a civil statute. This matters because "'[c]ivil laws not implicating the First Amendment are reviewed less stringently

than criminal laws 'because the consequences of imprecision are qualitatively less severe.'" *Stevens,* 2022 U.S. App. LEXIS 20829 *13 (quoting *Hoffman Estates v. Flipside,* 455 U.S. 489, 498 (1982)). Thus, "[c]ourts [] typically consider only as-applied challenges to civil laws." *Id.* (citing *Belle Maer Harbor v. Charter Twp. Of Harrison,* 170 F.3d 553, 557 (6th Cir. 1999); *see also, Burch v. USDA,* 174 F. App'x. 328, 333 (6th Cir. 2006) (quoting, *United States v. Mazurie,* 419 U.S. 544, 550 (1975) ("'vagueness challenges to statues which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand.'")).

Even then, "regulatory statutes governing business activities, where the acts limited are in a narrow category, [receive] greater leeway." *Burch,* 174 F. App'x. 328 * 12 (quoting *Papchristou v. City of Jacksonville,* 405 U.S. 156, 162 (1972)). Economic regulation is subject to a less stringent vagueness test "because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, (1982)). These businesses "may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. *Hoffman Estates,* 455 U.S. at 498.

The narrow application of the Art Modell Law is readily apparent. It applies only to 1) professional sports teams; 2) that use a taxpayer-supported facility for most of their home games and receive financial assistance from the state or political subdivision; and 3) who want to begin playing most of their home games somewhere other than the facility. Given this, the Browns' request that this Court consider its application to any Ohio professional sports team must be rejected. Doc. No. 12 ¶ 15, 86. Instead, the question is whether a person of ordinary intelligence would understand what Ohio Rev. Code § 9.67 requires of *the Browns* before the Team abandons HBF and plays at another location? The answer is an easy 'yes'.

*Elsewhere.*  Beginning with the term "elsewhere", the Statute provides that the owner of a professional sports team that uses a tax-supported facility and receives financial assistance from the state or a political subdivision cannot cease playing most of its home games at "the facility" and begin playing most of its home games "elsewhere" unless it satisfies one of the two conditions laid out in the law.  *See* Ohio Rev. Code § 9.67.  "Elsewhere" must be read in the context in which it is used, *see* Ohio Rev. Code § 1.42, which in this Statute is with reference to "the facility".  *See* Ohio Rev. Code § 1.42.  Rules of construction aside, a person of ordinary intelligence would understand that "elsewhere" refers to anywhere other than "the facility".  *See also* American Heritage Dictionary of the English Language, (5th ed. 2022) (defining "elsewhere" as "in or to a different or another place").  Here, "elsewhere" means anywhere other than Huntington Bank Field. If, as the Browns posit, "elsewhere" meant somewhere other than the political subdivision, the Statute would say so.  Doc. No. 12 ¶ 48.  It does not, and the Browns cannot read ambiguity into the law by changing its plain language.

*Financial Assistance.* The term "financial assistance" is equally understandable.  The Browns allege that upon the expiration of its lease with the City the Team will no longer be obligated to play at the City-owned stadium, "nor will there be any obligation for there to be taxpayer funds used to support [Huntington Bank Field], the Browns, or the Team's use of HBF." Id. ¶ 3.  Said differently, the Browns admit that for the duration of the Lease, taxpayer funds are being used to support the stadium in which they play, the Team itself, and the Team's use of the stadium.  Even without resorting to a dictionary definition, a person of ordinary intelligence would understand "financial assistance" to include the taxpayer support that the Browns admit they will receive through 2028.  *See* American Heritage Dictionary of the English Language (5th ed. 2022) (defining "financial" as "of, relating to, or involving finance, finances, or financiers" and "finances" as "monetary resources"; and "assistance" as "the act of helping" or "aid; help").

But even if (as it appears) the Browns do not have that understanding, their confusion is of no consequence. Because the question is not whether the *Browns* understand its use of taxpayer funds to be "financial assistance," it is whether a person of ordinary intelligence would understand that it is. He or she would. Its ordinary meaning is easily understandable and far from ambiguous.

*Political Subdivision.* The same holds true for the term "political subdivision." Notably, Ohio law's definition of "political subdivision" includes a "municipal corporation." Ohio Rev. Code § 2744.01(F). The Browns allege that the City of Cleveland is a municipal corporation. Doc. No. 12 ¶ 17. Applying the law to the Complaint, there is no ambiguity.

The Browns' claimed confusion as to whether and how the Statute would apply when a professional sports team receives support from more than one political subdivision does not alter this conclusion. Id. ¶ 47. The Browns do not claim to have received support from more than one political subdivision. They allege that they have received support from only one - the City of Cleveland. Id. ¶ 3. This Court should not consider a vagueness challenge beyond those facts. *See Burch,* 174 F. App'x. at 328 (vagueness challenge to a civil law that does not implicate the First Amendment should be considered only in light of the facts of the case).

*"Notice", "Opportunity" and "Area".* The Browns' challenge to the terms "notice", "opportunity" and "area" similarly fails. "The terms 'notice' and 'intention' are easily understood and thus not unconstitutionally vague." *Precourt* at 47. A person of ordinary intelligence would easily understand that Ohio Rev. Code § 9.67(B) requires the Browns to provide six months' notice to the City that it intends to play the majority of its home games at a location other than Huntington Bank Field. During the six months after the notice is given, the political subdivision, or a group of investors who reside in its area, must be given the opportunity to purchase the team.

If the word "notice" as used in Ohio Rev. Code § 9.67(B) were impermissibly vague, one could never meet the standard that the Browns correctly ask this Court to apply. Doc. No. 12 ¶ 71,

73.    Because the standard for vagueness *also* asks whether a challenged statute provides "notice." Id. (citing, *Memphis Ctr. For Reprod. Health v. Slatery,* No. 20-5969, 2020 U.S. App. LEXIS 36780 at *4-5 (6th Cir. Nov. 20, 2020) (quoting *Grayned,* 408 U.S. at 108-90)).    But if the term "notice" itself is so confusing, then how could a court ever determine that a person had "notice" for purposes of the vagueness doctrine?   Courts can enforce that doctrine because it is not.

   *Opportunity to Purchase.*    "Opportunity to purchase" is equally clear.    "Read in context, the phrase is clearly read by an individual of ordinary intelligence to mean a chance to buy." *Precourt* at 49. Even if there were ambiguity and statutory interpretation were necessary, the law would not support the Browns' absurd hypothesis that "opportunity to purchase" would require the Team to entertain a $25 offer.  See Doc. No. 12 ¶ 50; *see also Guzman v. U.S. Dep't of Homeland Sec.,* 679 F.3d 425, 435 (6th Cir, 2012) (quoting *Lockhart v. Napolitano,* 573 F.3d 251, 261 (6th Cir. 2009) ([i]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available)).    The Statute's "opportunity to purchase" requirement is straightforward, and is one used by courts in interpreting contracts.   *See United States ex rel. Martin v. Hathaway* 63 F.4th 1043, 1055 (6th Cir. 2023) (interpreting "remuneration" as including the opportunity to purchase company stock); *SEC v. G. Weeks Secur., Inc.* 678 F.2d 649, 652 (6th Cir. 1982) (stating a firm commitment contract offers the buyer the opportunity to purchase a commodity at some point in the future at or near current prices).

   Here, the General Assembly's intent to protect taxpayers' investment in professional sports teams controls, not the Browns' outlandish speculation.  On this point the Browns said it best: "[t]he Statute does not provide that the City gets to approve a successful buyer."  Doc. No. 12 ¶ 50.  They are correct.  It was not written to make a political subdivision the ultimate decision-maker as to who can purchase a team.  Instead, it safeguards taxpayer funds by providing a last ditch, 6-month opportunity for a political subdivision to protect its investment.  Nothing in Ohio Rev. Code §

9.67(B) requires that the opportunity actually lead to a sale to *anyone*, and a person of ordinary intelligence would understand that to be the case.

*Reside in the area.*  The meaning of "reside in the area" is similarly easy to understand and withstood an identical challenge in *Precourt*.  There, the court recognized that the term "area" is used in connection with "political subdivision" and these words must be read in context, as Ohio law requires.  *Precourt* at 50 (citing Ohio Rev. Code § 1.42).  Read together, a person of ordinary intelligence would understand this to mean the area around the City of Cleveland.

A final but important point:  no one forced the Browns to accept taxpayer money.  The Team could have avoided Ohio Rev. Code § 9.67 all together by not doing so.  Instead, the Browns entered into an Expansion Franchise Agreement with the NFL, were assigned the rights to HBF under the Lease and accepted taxpayer-funded financial assistance, all while Ohio Rev. Code § 9.67 was in effect.  Doc. No. 12 ¶ 40-41.  If the Browns can navigate the seemingly byzantine framework of NFL Team interdependency, complex stadium leases and NFL rules to become a part of the NFL, *id.* ¶ 22-42, they can certainly be expected to read, understand (or at a minimum inquire about) a three-paragraph Ohio law along the way.  *See Burch,* 174 F. App'x. 328 (businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action).  The Statute is not unconstitutional if they did not.

## Contract Clause

The Browns' Contract Clause claim falls similarly flat.  Article I, Section 10 of the United States Constitution prevents the State from passing laws that impair the obligation of contracts.  When considering a Contracts Clause claim, courts ask "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial."  *General Motors Corp. v. Romein,* 503 U.S. 181, 186 (1992).   Importantly, it is impossible for a statute to unconstitutionally impair a contract that did not exist when the statute

was enacted. *See Texaco, Inc. v. Short,* 454 U.S. 516, 531, (1982). Parties contract against the backdrop of the applicable law and "[t]he laws which subsist at the time and place of the making of a contract" form a part of it, even if not "expressly referred to or incorporated in its terms." *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 429-30 (1934).

This issue of timing is fatal. The Browns allege that Ohio Rev. Code § 9.67 "substantially impairs the Browns' NFL Franchise Agreement". Doc. No. 12. ¶ 100, 101. But the Team did not *have* a contractual relationship with the NFL in 1996 when Ohio Rev. Code § 9.67 was enacted. Id. ¶ 40, 90. It did not enter into the Expansion Franchise Agreement until September 1998. Id. ¶ 40. Thus, their claim fails the first prong under *General Motors.* 503 U.S. 181. Ohio Rev. Code § 9.67 could not impair a contract that did not exist when it was passed. Instead, the Browns entered into the Franchise Agreement against the backdrop of the Art Modell Law, and subject to its requirements. *See Home Bldg. & Loan Ass'n,* 290 U.S. at 429–30.

## Dormant Commerce Clause

The Commerce Clause empowers Congress "[t]o regulate Commerce…among the several States. U.S. Const. Art. I, § 8, cl. 3. From this, the United States Supreme Court "has inferred an additional judicially enforceable rule against certain, especially discriminatory, state laws adopted even against the backdrop of congressional silence." This rule, the dormant Commerce Clause, "prohibits the enforcement of state laws 'driven by…'economic protectionism-that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Nat'l Pork Producers Council v. Ross,* 598 U.S. 356, 368 (2023) (quoting *Department of Revenue of Ky. v. Davis,* 553 U.S. 328, 337-338 (2008) (quoting *New Energy Co. of Ind. V. Limbach,* 486 U.S. 269, 273-274 (1988)). For their claim to survive at this stage, the Browns must have "plead facts 'plausibly' suggesting a substantial harm to interstate commerce; facts that render that

outcome a 'speculative' possibility are not enough." *Nat'l Pork Producers,* 598 U.S. at 385 (citing *Twombly,* 550 U.S. at 555, 557). They fail on all fronts.

    **a. The dormant Commerce Clause does not apply to intrastate commerce.**

The Browns' first problem is that the Team intends to move from one Ohio city—Cleveland—to another—Brook Park. Doc. No. 12 ¶ 16. This is *intrastate* commerce, not *interstate* commerce. It does not trigger the dormant Commerce Clause and the as-applied challenge fails.

The Team's facial dormant Commerce Clause challenge fares no better. The Browns allege that the Statute advantages in-state economic actors and discriminates against out-of-state rivals. Id. ¶ 112. But the Browns' principal place of business is in Ohio. Id. ¶ 16; *and see Caption.* They are not—and do not claim to be—an out-of-state business against whom the Statute is able to discriminate. Thus, they failed to state a claim under the dormant Commerce Clause. Their attempt to assert the same claim on behalf of a hypothetical "out-of-state" rival falls similarly flat. The Browns do not claim to be an "out-of-state-rival" to anyone and lack standing to bring a facial challenge on behalf of a hypothetical one. *Warth v. Seldin,* 422 U.S. 490 (1975) (a party must generally assert his own legal rights and cannot rest his claim to relief on the legal rights and interests of third parties).

    **b. The dormant Commerce Clause does not apply because the government acts as a market participant when it provides taxpayer support for a sports stadium.**

The dormant Commerce Clause has no relevance when a government acts as a market participant: nothing "in the purposes animating the Commerce Clause prohibits a State . . . from participating in the market and exercising the right to favor its own citizens over others." *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 810 (1976) (footnotes omitted). A governmental entity need not "supply[] a uniquely public product" to qualify as a market participant. *Davis*, 553 U.S. at 348 n.16. A governmental entity acts as a market participant when it expends its own funds.

*White v. Mass. Council of Constr. Emplrs.*, 460 U.S. 204, 214-15 (1983). In such cases, the government is free to impose conditions on the receipt of its taxpayers' dollars or on how those dollars are used. "[T]he Commerce Clause establishes no barrier to conditions" that a governmental entity may demand for its participation as a financier. *See id.* at 210. That is all that the Art Modell Law does. It imposes conditions "on the receipt of … taxpayer[] dollars." The dormant Commerce Clause therefore simply does not apply to Ohio Rev. Code § 9.67.

**c.   The Art Modell Law nonetheless complies with the dormant Commerce Clause.**

Even if the Browns had pled a claim under the dormant Commerce Clause, it is identical to the one rejected in *Precourt* and would fail for similar reasons. "Under the modern approach to the dormant Commerce Clause, a law's validity largely depends on whether it discriminates against out-of-state businesses in favor of in-state ones." *Truesdell v. Friedlander,* 80 F.4th 762, 764 (6th Cir. 2023) (citing *Nat'l Pork Producers,* 598 U.S. 356). The legal inquiry is divided into two steps. *Truesdell,* 80 F.4th at 768 (citing *C & A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 390 (1994); and *Foresight Coal Sales, LLC v. Chandler,* 60 F.4th 288, 295 (6th Cir. 2023). Step one is to ask whether a challenged state law "discriminates" against out-of-state economic interests to benefit local economic interests." *Truesdell,* 80F.4th at 768. If it does not discriminate, step two is to ask "whether it nevertheless inflicts a 'substantial harm' on interstate commerce." *Id.*

The Art Modell Law easily satisfies the three-part inquiry for determining whether a state law discriminates against out-of-state businesses. *Id.* at 770. The *first question*, does Ohio Rev. Code § 9.67 discriminate on its face, is easily answered 'no'. *Id.* The Statute does not give Ohio political subdivisions and Ohio residents preferential treatment and special rights regarding the purchase a professional sports team that they have financially supported. Doc. No. 12 ¶ 112. It neither mentions, nor imposes restrictions on, who may purchase a team. Nor does it exclude who may have the "opportunity to purchase." Instead Ohio Rev. Code § 9.67 treats out-of-state

purchasers, in-state purchasers that are not from the area, the political subdivision, and investors in the area identically. The only point is that the political subdivision that expended taxpayer money, as well as investors in the area, must be given the same *chance* as everyone else. The Statute puts them in the running but does not remove anyone else from it.

It was on that basis that the court rejected the Defendants' identical argument in *Precourt. Precourt* at 33. There the court noted that "nothing in the plain text of Ohio Rev. Code § 9.67 excludes those from outside of Ohio to also participate in the same opportunity" as those from inside Ohio. *Id*. Rather "[t]he only residency distinction in Ohio Rev. Code § 9.67 is to at least give local purchasers the opportunity to buy the team, the same opportunity afforded to out-of-state purchasers." *Id*. The court then correctly concluded that the Statute is not facially discriminatory and does not favor in-state businesses to the detriment of those from out-of-state. *Id*. at 34.

The answer to the *second question*: does the law have a discriminatory effect on interstate commerce, is also 'no'. A statute that appears facially neutral may still discriminate against interstate commerce in its operation. *Truesdell,* 80 F.4th at 770. However, "a court must not confuse a law that has only a disparate impact on out-of-state businesses for one that has discriminatory effects on interstate commerce." *Id.* at 771. Disparate impact alone is not enough. *Id.* (citing *Exxon Corp. v. Governor of Md.,* 437 U.S. 117, 126 (1978)). Instead, "a facially neutral law has a discriminatory effect if it gives in-state entities a 'competitive advantage' that will lead consumers to shift market share to those entities." *Truesdell,* 80 F.4th at 770.

The Browns do nothing more than speculate that Ohio Rev. Code § 9.67 will advantage in-state economic actors and discriminate against out-of-state actors. Doc. No. 12 ¶ 112. Fed. Civ. R. 12(b)(6) requires more. *See Nat'l Pork Producers,* 598 U.S. at 385. The Browns cannot offer more because Ohio Rev. Code § 9.67 does not give in-state entities (of which the Browns are one) *anything* that is unavailable to out-of-state entities. At most, Ohio Rev. Code § 9.67(B) simply

levels the "opportunity" playing field between the City, investors in the area, and every other possible in- or out-of-state purchaser. But as the Browns acknowledge, it does not give the City, or anyone else, purchaser selection rights. Doc. No. 12 ¶ 50.

The Browns cannot credibly claim that the Statute has a discriminatory purpose when they also specifically state: "Ohio Passed the Modell Law in Response to the Abrupt Relocation of the Browns to Another State." Doc. No. 12, at p. 9. This admission matters, because the *third* question under *Truesdell* is whether the statute has a discriminatory purpose. *Truesdell,* 80 F.4th at 772. The Commerce Clause "concerns itself with protectionist 'effects, not motives,' and thus does not require courts to investigate the subjective mindsets of the legislators who passed the law." *Id.* (quoting *Foresight Coal,* 60 F.4th at 296). Though the Supreme Court precedent "leaves unclear how this purpose inquiry fits into the mix", *id.,* this Court need to look no further than the Browns' own statement to determine the purpose of the Statute. It was passed when the Browns previously—and abruptly—moved out of Ohio. The State agrees. The General Assembly passed Ohio Rev. Code § 9.67 to protect the State's and its political subdivisions' taxpayer investments into professional sports teams after the Browns reaped the benefits of one - and then moved. The Statute prevents *all* professional sports teams who take taxpayer money, including in-state businesses like the Browns, from doing the same. *See also Precourt* at 35 (holding that Ohio Rev. Code § 9.67 lacks a discriminatory purpose because it applies equally to in-state and out-of-state entities and relocations). It easily passes constitutional muster.

Given that Ohio Rev. Code § 9.67 does not discriminate between in-state and out-of-state businesses, the next question is "whether it nevertheless inflicts a 'substantial harm' on interstate commerce. *Truesdell,* 80 F.4th at 768 (citing *Nat'l Pork Producers,* 143 S.Ct. at 1162-63 (plurality opinion)). A law may still violate the Commerce Clause if "its interstate burden[s] clearly' exceed its 'local benefits' under a benefits-burdens balancing test that the Supreme Court adopted in *Pike."*

*Id.* (quoting *Pike v. Bruce Church,* 397 U.S. 137, 142 (1970)).   The United States Supreme Court's controlling plurality opinion in *Nat'l Pork Producers* recently imposed important constraints on the *Pike* balancing test.   *Truesdell,* 80 F.4th at 768 (citing *Nat'l Pork Producers,* 143 S.Ct. at 1161-64).   Now, courts "should not attempt to quantify a state law's local 'benefits' or compare those benefits to the law's costs unless the challenger has first shown that the law inflicts 'substantial burdens' on interstate commerce[.]'"   *Truesdell,* 80 F.4th at 768 (quoting *Nat'l Pork Producers,* 143 S.Ct. at 1161).   Even then, the court should consider only the interstate commerce burdens, not the costs allegedly incurred by specific businesses.   *Truesdell,* 80 F.4th at 768.

The Art Modell Law undeniably impacts only a small subset of specific businesses – professional sports teams in Ohio that play a majority of their home games in a tax-supported facility and receive financial assistance from the state or a political subdivision, that want to relocate and play the majority of their games somewhere other than the taxpayer-supported facility. Tellingly, the Browns admit that the Modell Law applies to only one type of business, "professional sports organizations" in Ohio.   Doc. No. 12 ¶ 112.   Even if that admission accurately captured the Statute's limited reach (and it does not), in light of *Nat'l Pork Producers'* limitation of *Pike,* it would still be wholly insufficient to allege an impact on *all* of interstate commerce.   *See Truesdell*, 80 F.4th at 773 (citing *Nat'l Pork Producers,* 43 S.Ct. at 1161-64 (plurality opinion)).

But even if the Browns had alleged a substantial impact on interstate commerce, the Statute's benefits easily outweigh any cost.   At its most basic level, the Statute places on professional sports teams that accept taxpayer money conditions which protect the public's investment.   But its benefits involve more than just money.   *See Precourt* at 39 (recognizing that a sports franchise is of significant value to the public and to the well-being of the community).   For example, the Browns allege that building a stadium in Brook Park "would drive significant economic activity in the City, County, Northeast Ohio region, and State".   Doc. No. 12 ¶ 9.   They

are correct.  That is true no matter where a stadium is located.  The point is that when public money is invested to drive economic activity, the political subdivision that made the investment gets the chance to protect it.  The Statute gives it that chance on the same footing as everyone else, whether from in- or out-of-state.

The burdens of providing that equal opportunity are correspondingly low to the scope and effect of Ohio Rev. Code § 9.67.  *Precourt* at 39.  Requiring the narrow sliver of businesses within the Statute's scope to be given a seat at the table does not substantially burden interstate commerce. This is of particular importance here, where Browns did not plead any facts to support the conclusion that their move to Brook Park *implicates* interstate commerce, much less substantially harms it.  Their challenge thus fails.

## 2. This Court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss them pursuant to Fed. Civ. R. 12(b)(1).

The State of Ohio is here to defend an important state law.  It takes no position as to where in Ohio the Browns should play their home games.  Either location–Cleveland or Brook Park– positively impacts Ohio.  But once the federal claims are dismissed, the only remaining claim arises under Ohio law.  *See* Doc. No. 12 ¶ 122-131.  This Court only has supplemental jurisdiction over that claim because it is related to the federal claims in Counts I through III.  *See* 28 U.S.C. § 1367. But a district court may decline to exercise supplemental jurisdiction over a state law claim if it raises a novel or complex issue of state law (which this does), or if it has dismissed all claims over which it has original jurisdiction (which it should).  28 U.S.C. § 1367(c)(1), (3).  The decision to exercise supplemental jurisdiction is discretionary and 1367(c) provides that it need not be exercised it in certain circumstances.  *Filing v. Phipps, No.* 5:07-cv-1712, 2008 U.S. Dist. LEXIS 142989, at *4 (N.D. Ohio Oct. 17, 2008) (quoting *Cemer v. Marathon Oil Co.,* 583 F.2d 830, 832 n.2 (6th Cir. 1978)).

This is one of those circumstances. Once the Browns' federal constitutional claims are rightfully dismissed, this Court's jurisdictional calculus should change. This is a "twice-in-twenty-eight-years" case. State law jurisprudence is far-from developed in this novel area, and Ohio courts should get the opportunity to develop it. See 28 U.S.C. § 1367(c)(1). This is especially true here, where the City has now filed suit against the Browns in an Ohio Court.[1]  Ohio has an interest in avoiding dueling federal and state court cases which could result in different interpretations and applications of Ohio law. Declining to exercise supplemental jurisdiction avoids that result.

## CONCLUSION

An Ohio court should have the opportunity to answer the important and unanswered questions of state law this case presents before the Browns' federal constitutional claims are considered. *Pullman* abstention is appropriate here. Even if it were not, the Browns' federal constitutional claims should be dismissed pursuant to Fed. Civ. R. 12(b)(6). Once the federal claims are dismissed this Court should decline to exercise supplemental jurisdiction over the state law claims, and they too should be dismissed pursuant to Fed. Civ. R. 12(b)(1).

<div style="margin-left:40%">

Respectfully submitted,

*/s/ Bridget C. Coontz*

_____

Bridget C. Coontz (0072919)
Chief Counsel and Ethics Officer
Bridget.coontz@ohioago.gov
Samuel C. Peterson (0081342)
Samuel.peterson@ohioago.gov
Deputy Solicitor General
Ohio Attorney General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Tel: 614-728-2035
*Counsel for the State of Ohio*

</div>

---

[1] *City of Cleveland v. Haslam Sports Group, LLC, et al.,* Cuyahoga County Common Pleas Court Case No. CV-25-110189 (Moore, J.), filed January 14, 2025.

## **NORTHERN DISTRICT OF OHIO LOC. R. 7.1(f) CERTIFICATION**

I certify that this case is assigned to a standard track. The Memorandum in Support of this Motion to Dismiss complies with the page limit for such cases.

*/s/ Bridget C. Coontz*

_____

Bridget C. Coontz (0072919)
Chief Counsel

*Counsel for the State of Ohio*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically using the Court's ECF system and sent to the following via email:

Mark Griffin, Esq.
Gilbert Blomgren, Esq.
City of Cleveland Law Department
601 Lakeside
Cleveland, Ohio 441144
Via email:
mgriffin@clevelandohio.gov
gblomgren@clevelandohio.gov

Gregory Hilbert, Esq.
James R. Saywell, Esq.
Samuel V. Lioi, Esq.
Tracy K. Stratford, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
ghilbert@jonesday.com
jsaywell@jonesday.com
jherdman@jonesday.com
slioi@jonesday.com

Kip T. Bollin, Esq.
Kyle A. Hutnick, Esq.
Robert F. Ware, Esq.
Thomas M. Ritzert, Esq.
Anthony C. White, Esq.
Thompson, Hine – Cleveland
3900 Key Tower
127 Public Square
Cleveland, Ohio 441144
Via Email:
Kip.bollin@thompsonhine.com
Kyle.hutnick@thompsonhine.com
Robert.ware@thompsonhine.com
Thomas.ritzert@thompsonhine.com
Anthony.white@thompsonhine.com

/s/ Bridget C. Coontz
_____
Bridget C. Coontz (0072919)
*Counsel for the State of Ohio*