**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLEVELAND BROWNS FOOTBALL COMPANY LLC, | ) | CASE NO. 1:24-CV-01857 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF CLEVELAND, | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| Defendant, | ) | |
| | ) | Memorandum in Support of Defendant's |
| STATE OF OHIO, | ) | Motion to Dismiss |
| | ) | |
| Intervenor. | ) | **ORAL ARGUMENT REQUESTED** |

---

**DEFENDANT CITY OF CLEVELAND'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

---

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.    Art Modell moves the team, but the City gets to keep the "Browns." ................... 3

    B.    The Browns accept taxpayer funding for a new stadium ...................................... 4

    C.    The Browns contract to comply with Ohio law. .................................................... 5

    D.    The current owners take over the Browns and plan to move them out of Cleveland. ............................................................................................................. 5

    E.    The Browns sue the City in federal court to try to avoid the Modell Law. ........... 6

    F.    The City sues the Browns to enforce the Modell Law ......................................... 7

STATEMENT OF ISSUES .................................................................................................. 7

SUMMARY OF ARGUMENT ............................................................................................. 8

ARGUMENT ..................................................................................................................... 9

I.    THIS COURT LACKS JURISDICTION. ................................................................... 9

    A.    The Amended Complaint Offers No Basis For Subject-Matter Jurisdiction. ........ 9

    B.    By Effectively Seeking Only An Advisory Opinion, The Browns Lack Article III Standing. ......................................................................................... 12

II.    THIS COURT SHOULD REFUSE TO EXERCISE ITS JURISDICTION EVEN IF IT HAD IT. ....................................................................................................... 14

    A.    This Court Should Decline Jurisdiction Under The Declaratory Judgment Act. ................................................................................................................... 14

    B.    The Pending State-Court Action Takes Precedence Over This Anticipatory Federal Lawsuit. ................................................................................................ 15

    C.    Abstention Principles, Including *Pullman*, Also Require Dismissal. ................. 17

CONCLUSION ................................................................................................................. 19

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Admiral Ins. Co. v. Fire-Dex, LLC,*
 2022 WL 16552973 (N.D. Ohio Oct. 31, 2022) ........................................................................14

*AmSouth Bank v. Dale,*
 386 F.3d 763 (6th Cir. 2004) ...............................................................................8, 16, 17, 19

*Arizona v. Biden,*
 40 F.4th 375 (6th Cir. 2022) .......................................................................................13

*Burford v. Sun Oil Co.,*
 319 U.S. 315 (1943) ..................................................................................................18

*California v. Texas,*
 593 U.S. 659 (2021) ..................................................................................................13

*Caterpillar Inc. v. Williams,*
 482 U.S. 386 (1987) ..................................................................................................11

*Cath. Health Partners v. CareLogistics, LLC,*
 973 F. Supp. 2d 787 (N.D. Ohio 2013) ...............................................................................17

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.,*
 511 F.3d 535 (6th Cir. 2007) .......................................................................................17

*City of Saginaw v. Serv. Emp. Int'l Union, Loc. 446-M,*
 720 F.2d 459 (6th Cir. 1983) .......................................................................................12

*Colo. River Water Conservation Dist. v. United States,*
 424 U.S. 800 (1976) ..................................................................................................18

*Davis v. United States,*
 499 F.3d 590 (6th Cir. 2007) .......................................................................................10

*Essex Grp., Inc. v. Cobra Wire & Cable, Inc.,*
 100 F. Supp. 2d 912 (N.D. Ind. 2000) ...............................................................................17

*Fowler v. Benson,*
 924 F.3d 247 (6th Cir. 2019) .......................................................................................18

ii

*Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
    463 U.S. 1 (1983) ................................................................................................12

*Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co. of Pittsburgh*,
    2009 WL 3518070 (N.D. Ohio Oct. 23, 2009) ................................................13

*Gully v. First Nat'l Bank*,
    299 U.S. 109 (1936) ............................................................................................11

*Haaland v. Brackeen*,
    599 U.S. 255 (2023) .......................................................................................8, 13

*Hedges v. Bittinger*,
    2019 WL 11097079 (N.D. Ohio Oct. 23, 2019) ........................................2, 8, 13

*Innovation Ventures, LLC v. CB Distribs., Inc.*,
    652 F. Supp. 2d 841 (E.D. Mich. 2009) ......................................................8, 16

*Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.-UAW v.*
    *Dana Corp.*,
    1999 WL 33237054 (N.D. Ohio Dec. 6, 1999) ..............................................19

*King v. Sloane*,
    545 F.2d 7 (6th Cir. 1976) ..................................................................................10

*Littler v. Ohio Ass'n of Pub. Sch. Emps.*,
    88 F.4th 1176 (6th Cir. 2023) ............................................................................10

*Louisville & Nashville R.R. v. Mottley*,
    211 U.S. 149 (1908) ............................................................................................11

*Marek v. Navient Corp.*,
    2016 WL 11264709 (N.D. Ohio Dec. 6, 2016) ....................................3, 8, 10, 13

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
    571 U.S. 191 (2014) ............................................................................................10

*Mich. Dep't of Env't v. STS Hydropower, LLC*,
    609 F. Supp. 3d 552 (W.D. Mich. 2022) ..........................................................11

*Mich. Sav. & Loan League v. Francis*,
    683 F.2d 957 (6th Cir. 1982) ............................................................................12

*Miller v. Bank of N.Y. Mellon ex rel. JPMorgan Chase Bank, Nat'l Ass'n*,
  2021 WL 5702331 (6th Cir. Dec. 1, 2021) ............................................................................10

*Miller v. Bruenger*,
  949 F.3d 986 (6th Cir. 2020) ...............................................................................8, 11, 12

*Moir v. Greater Cleveland Reg'l Transit Auth.*,
  895 F.2d 266 (6th Cir. 1990) .........................................................................................9

*Morrison v. Parker*,
  90 F. Supp. 2d 876 (W.D. Mich. 2000) .........................................................................15

*NanoLogix, Inc. v. Novak*,
  2013 WL 6443376 (N.D. Ohio Dec. 9, 2013) ...............................................................16

*Novia Commc'ns, LLC v. Weatherby*,
  798 F. App'x 890 (6th Cir. 2020) ...................................................................................9

*Okla. Tax Comm'n v. Graham*,
  489 U.S. 838 (1989) .......................................................................................................11

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .........................................................................................................15

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
  344 U.S. 237 (1952) .......................................................................................................17

*R.R. Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496 (1941) ..................................................................................9, 14, 17, 18

*Romine v. Compuserve Corp.*,
  160 F.3d 337 (6th Cir. 1998) .........................................................................................18

*Skelly Oil Co. v. Phillips Petrol. Co.*,
  339 U.S. 667 (1950) .................................................................................................10, 11

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) .......................................................................................................12

*Steel Co. v. Citizens for Better Env't*,
  523 U.S. 83 (1998) .........................................................................................................12

*Stein v. Thomas*,
  672 F. App'x 565 (6th Cir. 2016) ...................................................................................18

iv

*Toledo v. Jackson*,
    485 F.3d 836 (6th Cir. 2007) ........................................................................10, 11

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)....................................................................................12

*Traughber v. Beauchane*,
    760 F.2d 673 (6th Cir. 1985) ..............................................................18

*W. World Ins. Co. v. Hoey*,
    773 F.3d 755 (6th Cir. 2014) ..........................................................8, 14, 15

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)..............................................................................14, 15

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*,
    16 F. App'x 433 (6th Cir. 2001) ........................................................16

STATUTES

28 U.S.C. § 1331 .........................................................................................7, 9

28 U.S.C. § 1332 ...........................................................................................9

28 U.S.C. § 1367 .......................................................................................7, 12

28 U.S.C. § 2201 .........................................................................6, 7, 8, 10, 14

Ohio Rev. Code § 9.67.................................................................................1, 5

OTHER AUTHORITIES

26 C.J.S. Declaratory Judgments § 128, Westlaw (database updated Dec. 2024)........................15

Fed. R. Civ. P. 12 ......................................................................................14

Mary Kay Cabot, *Jimmy Haslam Promises He's In For The 'Long Haul' And*
    *Wouldn't Dream Of Moving Tradition-Rich Browns Out Of Cleveland*,
    Cleveland.com (Aug. 3, 2012), archived at https://perma.cc/3KN4-Z5NK ........................5, 6

Jeremy Pelzer, *Proposed $600M In State Funding For New Browns Stadium*
    *Would Dwarf Ohio's Past Pro Stadium Subsidies*, Cleveland.com (May 11,
    2024), archived at https://perma.cc/2A8U-2Q9K ..................................................4

Richard Sandomir, *A City Fights To Save The Browns*, N.Y. Times (Nov. 12, 1995), archived at https://perma.cc/N9GD-8EP6 ...................................................................1

Richard Sandomir, *N.F.L. Maps Out Cleveland-To-Baltimore Route*, N.Y. Times (Feb. 9, 1996), archived at https://perma.cc/M77G-7FHL ...........................................4

Steve Rushin, *The Heart of a City*, Sports Illustrated (December 4, 1995), archived at https://perma.cc/DM8V-D5U9....................................................................1

Tony Grossi, *Battle for the Browns: The Inside Story*, Cleveland Plain Dealer (Sept. 5, 1999), archived at https://perma.cc/F3BY-8JMS.......................................4

10B Wright & Miller, *Federal Practice and Procedure Civil* § 2759, Westlaw (database updated June 2024) ...............................................................................15

## INTRODUCTION

The Browns are trying to leave Cleveland—again.  The last time, they did so through secret handshake deals and backroom bargains, destroying community trust in the process.  This time, they are doing so under the cover of this federal lawsuit—not only again destroying Clevelanders' trust, but also violating the very Ohio law that was designed to prevent this.

The first time around, when Art Modell infamously moved the team to Baltimore, Clevelanders felt "spurned," "sad," and downright irate.[1]  And it was not just Clevelanders who felt that way.  Ohioans more generally came to the support of the City.[2]  They were determined to never let anything like that happen again.  And so, in the wake of Modell's move, the Ohio General Assembly enacted, and Governor Voinovich signed, a law limiting when Ohio teams can move.  *See* Ohio Rev. Code § 9.67.  This law, fittingly known as the Modell Law, has a simple command:  If you take taxpayer money and play in a taxpayer-funded stadium (as the Browns undisputedly do), then you must follow certain conditions before moving away from that stadium.  Those conditions to moving are just as straightforward:  either obtain the City's authorization to move elsewhere, or else give others the opportunity to purchase the team.  Never again, Ohio law thus provides, could the Browns' owners bilk the City and its taxpayers for millions only to turn around and unilaterally abandon what the City provided them.

But if Browns' owners Jimmy and Dee Haslam get their way, that is precisely what will happen again.  Despite taking hundreds of millions in taxpayer funding, and despite playing in a taxpayer-funded stadium for 25 years, the Browns have announced a general intention to leave

---

[1] *E.g.*, Steve Rushin, *The Heart of a City*, Sports Illustrated (December 4, 1995), archived at https://perma.cc/DM8V-D5U9.

[2] *See, e.g.*, Richard Sandomir, *A City Fights To Save The Browns*, N.Y. Times (Nov. 12, 1995), archived at https://perma.cc/N9GD-8EP6.

Cleveland for Brook Park. *See* Doc. 12 ¶ 1 ("Am. Compl."). And rather than comply with Ohio law in the process—either by obtaining the City's authorization or by putting the team up for sale (which is, by the way, how the Haslams themselves acquired the Columbus Crew)—the Browns are simply choosing not to follow the law. Through this lawsuit and otherwise, the Browns have flouted the Modell Law, demanding instead that this federal court declare them above the law.

This Court should decline the invitation. Eventually, the Browns' arguments will fail on the merits: The Modell Law both squarely applies to the Browns' planned move and is perfectly constitutional. Indeed, the whole point of the Modell Law was to protect the taxpayers and the public from the whims of billionaire owners. And no one can contract around Ohio law.

But those merits arguments are meant for a different time and a different place—they are improperly presented to this federal court. For three reasons, therefore, this Court should dismiss this federal lawsuit and let the dispute between the Browns and the City play out where it belongs: in state court.

*First*, this Court lacks jurisdiction over the Browns' complaint. The Browns invoke the federal Declaratory Judgment Act as their only purported federal cause of action. But this kind of declaratory-judgment-only lawsuit fails under well-established law, repeatedly recognized by this Court and others. Simply put, the Declaratory Judgment Act does not grant a freestanding federal cause of action, and a party cannot manufacture federal-court jurisdiction by invoking it.

*Second*, the Browns lack Article III standing in any event. Rather than requesting any sort of real relief (such as an injunction), the Browns merely want this Court to say what the law is. But that is an advisory opinion if there ever was one. And this Court refuses to entertain matters or issues that are, as here, "tantamount to an advisory opinion." *Hedges v. Bittinger*, 2019 WL

2

11097079, at *2 (N.D. Ohio Oct. 23, 2019) (Ruiz, J.); *see Marek v. Navient Corp.*, 2016 WL 11264709, at *3 (N.D. Ohio Dec. 6, 2016) (Ruiz, J.).

*Third*, even if this Court had jurisdiction, this case would not belong in federal court. It instead has "state court" written all over it: It involves a state enforcement action (which is now pending), by a state political subdivision, about the interpretation of a state law, which (depending on how that state law is interpreted) could obviate all federal issues in the case. Federal courts facing this kind of lawsuit—by the state-court defendant who preemptively sues in anticipation of the underlying enforcement action—consistently dismiss these "anticipatory" suits, deferring instead to the state court. This abstention policy could not apply more strongly here—where the Browns not only initiated this anticipatory lawsuit to try to preempt the City's state-court action, but also asked only for *discretionary* relief and sought an interpretation of *state law*. The City now has an actual enforcement action pending, which takes precedence over this federal filing.

Rather than permit the Browns' attempt at forum shopping, this Court should dismiss this case—either for lack of jurisdiction or as a matter of its sound discretion—and allow the state courts to entertain the parties' arguments on the merits.

## BACKGROUND

The Cleveland Browns Football Company LLC, referred to as the "Browns" here, characterizes itself as the company that owns and operates the National Football League franchise known as the Cleveland Browns. Am. Compl. ¶¶ 2, 16. This dispute centers on the Browns' (and their owners') legal obligations to the City of Cleveland, its residents, and its taxpayers.

### A.    Art Modell moves the team, but the City gets to keep the "Browns."

Soon after Art Modell announced his intention to move the team out of Cleveland, the City sued Modell in state court. *City of Cleveland v. Cleveland Browns Inc.*, No. CV-95-297833 (Ohio Ct. C.P. Cuyahoga Cnty. Nov. 6, 1995). Recognizing that the Browns are "an enduring source of

3

civic pride and tradition" for Cleveland, the City sought, and the court granted, a preliminary injunction to prevent Modell from moving the team.  *See* City of Cleveland's Memorandum in Support of its Motion for a Preliminary Injunction at 1, *Cleveland Browns, Inc.*, No. CV-95-297833 (Ohio Ct. C.P. Cuyahoga Cnty. Nov. 17, 1995); *Cleveland Browns, Inc.*, No. CV-95-297833 (Ohio Ct. C.P. Cuyahoga Cnty. Nov. 24, 1995) (order granting preliminary injunction). The parties eventually settled:  Modell could take the team to Baltimore, but he had to leave behind the Browns' intellectual property—including "the Browns' history, heritage, records and memorabilia"—and he had to pay the City damages.[3]  The City would thus keep the Browns' name, and a new Cleveland Browns team would begin playing in 1999.

### B.    The Browns accept taxpayer funding for a new stadium.

To prepare for the 1999 season, the Browns needed a stadium.  As part of the efforts to keep the Browns in Cleveland, the City committed to building a new stadium for its team.  *See* Am. Compl. ¶ 34.  The City financed construction of the stadium through taxpayer dollars, including from the State, as well as from other funding sources.[4]  The team and ownership accepted this funding with open arms.  And so the City and the Browns, via an affiliate, are parties to a lease agreement under which the City constructed that stadium—now called Huntington Bank Field—where the team plays its home games.  *See* Am. Compl. ¶¶ 2, 32, 34.

Over the years, the Browns and their owners have continued to take money from the City.  *See* Compl. ¶¶ 25–31, *City of Cleveland v. Haslam Sports Group, LLC*, CV-25-110189 (Ohio Ct.

---

[3] *See* Richard Sandomir, *N.F.L. Maps Out Cleveland-To-Baltimore Route*, N.Y. Times (Feb. 9, 1996), archived at https://perma.cc/M77G-7FHL.

[4] Tony Grossi, *Battle for the Browns: The Inside Story*, Cleveland Plain Dealer (Sept. 5, 1999), archived at https://perma.cc/F3BY-8JMS; Jeremy Pelzer, *Proposed $600M In State Funding For New Browns Stadium Would Dwarf Ohio's Past Pro Stadium Subsidies*, Cleveland.com (May 11, 2024), archived at https://perma.cc/2A8U-2Q9K; *see also* Sandomir, *N.F.L. Maps Out Cleveland-To-Baltimore Route*, *supra*.

C.P. Cuyahoga Cnty. Jan. 14, 2025).  Indeed, just last month, the Browns demanded additional payments from Cleveland for allegedly necessary repairs to the stadium, demonstrating their continued demand for public support.  *Id.* ¶ 30 (citing Compl. Exs. B, C).

### C. The Browns contract to comply with Ohio law.

In part in exchange for all this money—and in part because Ohio law so requires—the Browns and its owners became subject to certain conditions about where they would play their home games.  Most relevant here, the Browns agreed by contract to comply "with all present and future laws, statutes, [and] ordinances."  Lease § 17, Ex. A of Compl., *City of Cleveland v. Haslam Sports Group, LLC*, CV-25-110189; *see* Am. Compl. ¶ 41.  One such Ohio statute limits the Browns' ability to leave Cleveland.  It prescribes two specific alternatives before an owner stops using a tax-supported facility for the team's home games.  The owner must either (A) obtain the City's authorization to move or (B) provide an opportunity for the City or individuals in the area to purchase the team.  Ohio Rev. Code § 9.67.  This statute was enacted in 1996, and is commonly known as the "Modell Law."  *See* Am. Compl. ¶¶ 11, 43.

### D. The current owners take over the Browns and plan to move them out of Cleveland.

In 2012, years after the Modell Law went into effect, the current owners acquired the team. *Id.* ¶ 54.  From the beginning, the current owners (led by the Haslams) assured the City and its citizens that the Browns would not leave Cleveland.  They went out of their way to "re-assure fans that the franchise isn't going anywhere."[5]  They expressed this commitment in simple terms:

---

[5] Mary Kay Cabot, *Jimmy Haslam Promises He's In For The 'Long Haul' And Wouldn't Dream Of Moving Tradition-Rich Browns Out Of Cleveland*, Cleveland.com (Aug. 3, 2012), archived at https://perma.cc/3KN4-Z5NK.

"We're not moving the Cleveland Browns."[6]  And their commitment was emphatic.  "Why would we move? . . . That thought never, ever entered our minds."[7]

But recently, the owners have hinted at going back on their word.  *See* Am. Compl. ¶¶ 55–58.  Rather than continuing to play in the taxpayer-funded facility as the Modell Law would require, they "indicated to the City that they would be focusing on a domed stadium option in the city of Brook Park, Ohio."  *Id.* ¶ 56.

As a result of what appeared to be a breach of the Browns' owners' obligations under the Modell Law—or an intent to breach those obligations—the City's legislative body authorized and instructed the City's Director of Law to enforce the Modell Law to protect the City and its citizens from the detrimental effects of the Browns leaving (again).  *See id.* ¶¶ 57–58.  This ordinance, Emergency Ordinance 391-2024, passed on May 6, 2024—setting up the City to sue in state court to enforce the Modell Law against the Browns.  *See id.* ¶ 14.

### E.    The Browns sue the City in federal court to try to avoid the Modell Law.

But the Browns tried to cut off that state-court enforcement action by filing this lawsuit.  Before the City had the opportunity to enforce its legal rights in state court, the Browns preemptively sued here—seeking (only) an anticipatory declaratory judgment that the Modell Law does not apply to the Browns and, if it does, is unconstitutional.  Doc. 1.

The Browns quickly amended their complaint—but still asserted only claims for federal and state declaratory judgment.  Doc. 12.  Specifically, the Amended Complaint asserts three claims under the Declaratory Judgment Act (28 U.S.C. § 2201), seeking a court declaration that the Modell Law is unconstitutional (Counts I through III) and a claim for a declaratory judgment

---

[6] *Id.*

[7] *Id.*

that the Modell Law does not apply to the owners' proposed relocation out of the City of Cleveland (Count IV).  *See id.* ¶¶ 68–131.  The Amended Complaint invokes only federal-question jurisdiction (28 U.S.C. §§ 1331 and 2201), and it asserts § 1367(a) as the basis for supplemental jurisdiction over Count IV (*id.* ¶¶ 18–19).

### F.    The City sues the Browns to enforce the Modell Law.

Especially given this federal lawsuit seeking to preemptively declare the Modell Law inapplicable or unconstitutional, the City sought assurances from the Browns that they would change course and comply with the Modell Law and their contractual obligations.  Specifically, on December 30, 2024, Mayor Justin M. Bibb sent the Browns and its owners a letter to this effect. Compl. ¶¶ 46–47, *City of Cleveland v. Haslam Sports Group, LLC*, CV-25-110189.  The Browns did not, however, provide any such assurances.  To the contrary, by letter dated January 9, 2025, the Browns simply pointed to this federal lawsuit—which, of course, seeks a declaration that the law does not apply to them or that the law is unconstitutional.  *Id.* ¶ 48.  Because this response letter, if anything, only *confirmed* the Browns' violation of the Modell Law and the parties' contract, the City had no choice but to sue the Browns in Cuyahoga County Common Pleas Court. *Id.* ¶¶ 49–50.  This state-court enforcement action of the Modell Law, which seeks to protect the City's and public's interests, was filed on January 14, 2025.

## STATEMENT OF ISSUES

1.      Whether a federal court lacks jurisdiction when the plaintiff's only purported cause of action is declaratory judgment, and the only federal aspects of the case are anticipated *defenses* to the other party's future state-court lawsuit.

2.      Whether a party seeks an impermissible advisory opinion by failing to request any real relief (such as an injunction) and instead demanding only a declaration of what the law is.

**3.** Whether a federal court should abstain from addressing the merits of a case when: (a) the plaintiff brought only a discretionary declaratory-judgment suit, (b) the lawsuit seeks to preempt a state-court enforcement action, and (c) resolution of the state issues by a state court can eliminate all federal issues from the case.

## SUMMARY OF ARGUMENT

**1.** This Court lacks subject-matter jurisdiction. The Browns do not plead or invoke diversity jurisdiction. Instead, they attempt to secure jurisdiction based exclusively on the federal Declaratory Judgment Act—their only purported federal cause of action. But the Declaratory Judgment Act does not create jurisdiction. It supplies no cause of action, and a party cannot manufacture jurisdiction based on federal *defenses* to a would-be state-court lawsuit. *See Miller v. Bruenger*, 949 F.3d 986, 991 (6th Cir. 2020).

**2.** The Browns also lack standing. Rather than requesting any sort of binding relief, the Browns merely want this Court to say what the law is. But that advisory opinion will not redress the Browns' purported injuries. *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). And this Court refuses to entertain issues "tantamount to an advisory opinion"—which is all this complaint demands. *Hedges*, 2019 WL 11097079, at *2; *see Marek*, 2016 WL 11264709, at *3.

**3.** Even if this Court had jurisdiction, this case does not belong in federal court. Federal courts enjoy discretion on whether to entertain cases brought under the Declaratory Judgment Act. 28 U.S.C. § 2201(a). And all the discretionary considerations counsel *against* resolving this lawsuit in federal court. *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014). When federal-court plaintiffs (like the Browns) sue to preempt anticipated state-court lawsuits, federal courts consistently dismiss those "anticipatory actions." *See, e.g.*, *AmSouth Bank v. Dale*, 386 F.3d 763, 786, 791 n.8 (6th Cir. 2004); *Innovation Ventures, LLC v. CB Distribs., Inc.*, 652 F. Supp. 2d 841, 844 (E.D. Mich. 2009). This is especially proper when abstention

8

doctrines apply, as they squarely do here.  *See, e.g.*, *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941) (federal courts abstain when, as here, the interpretation of state law could avoid any need to address the federal issues).  Especially with the City's enforcement action now pending, the state courts are far better suited than this federal court to resolve this dispute.

## ARGUMENT

This case does not belong in federal court.  Although the Browns attempt to enmesh this Court in the merits—on the interpretation of state law and, depending on that interpretation, on a series of constitutional challenges to the Modell Law—that puts the cart before the horse.  This Court must first determine whether it even has jurisdiction to proceed.  It does not.  Plus, even if it had jurisdiction, this Court should decline to exercise it here—where state courts are far better suited to interpret state law.  Either way, therefore, this Court should dismiss.

## I.     THIS COURT LACKS JURISDICTION.

This Court lacks jurisdiction twice over.  First, there is no legitimate federal question that would give this Court federal-question jurisdiction—the only asserted basis for subject-matter jurisdiction.  Section I.A, *infra*.  And second, the Browns lack standing anyway.  Section I.B, *infra*.

### A.     The Amended Complaint Offers No Basis For Subject-Matter Jurisdiction.

The Browns, as the party invoking jurisdiction, bear the burden to prove its existence.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  This happens in one of two ways:  diversity jurisdiction (where the parties are citizens of different States) or federal-question jurisdiction (where the plaintiff's complaint asserts a federal cause of action).  28 U.S.C. §§ 1331, 1332.  But the Browns, as an LLC with members in Ohio, rightfully do not claim diversity jurisdiction—indeed, they refuse to even provide the citizenship of their members.  Doc. 3 at 2; *see Novia Commc'ns, LLC v. Weatherby*, 798 F. App'x 890, 893 (6th Cir. 2020).

So that leaves federal-question jurisdiction as the Browns' only possible avenue for jurisdiction. But for two reasons, that does not work either. *First*, the Browns fail to assert a substantive federal cause of action, resting instead only on the Declaratory Judgment Act. *See* Am. Compl. ¶ 18 (citing 28 U.S.C. § 2201). But that "does not create an independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007); *see, e.g.*, *Marek*, 2016 WL 11264709, at *3. And *second*, the Court must assess jurisdiction by looking at *the City's enforcement action* of the Modell Law, not at the Browns' defenses to that enforcement action.

**1.** "A declaratory judgment is not an independent cause of action." *Miller v. Bank of N.Y. Mellon ex rel. JPMorgan Chase Bank, Nat'l Ass'n*, 2021 WL 5702331, at *6 (6th Cir. Dec. 1, 2021). Rather, "the Declaratory Judgment Act is procedural only," conferring discretion on a federal court to adjudicate the rights and obligations only of parties to an "actual controversy within its jurisdiction." *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950) (second quote of 28 U.S.C. § 2201(a)); *see Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 196–98 (2014). To proceed in federal court, therefore, plaintiffs invoking the Declaratory Judgment Act must show an underlying "controversy within [the Court's] jurisdiction," 28 U.S.C. § 2201(a); they cannot rely solely on the Declaratory Judgment Act to create jurisdiction. Federal courts thus "must have jurisdiction already under some other federal statute" before a plaintiff can "invok[e]" the Declaratory Judgment Act. *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007) (citation omitted); *see, e.g.*, *King v. Sloane*, 545 F.2d 7, 8 (6th Cir. 1976).

The Browns, however, invoke no other federal cause of action—alone warranting dismissal. *See, e.g.*, *Littler v. Ohio Ass'n of Pub. Sch. Emps.*, 88 F.4th 1176, 1180 n.1 (6th Cir. 2023); *N.Y. Mellon*, 2021 WL 5702331, at *6; *Marek*, 2016 WL 11264709, at *3. They rely exclusively on the Declaratory Judgment Act. Am. Compl. ¶ 18. But like countless plaintiffs

before them, the Browns' attempt to manufacture jurisdiction through that Act fails.  *See, e.g.*, *Toledo*, 485 F.3d at 839; *Mich. Dep't of Env't v. STS Hydropower, LLC*, 609 F. Supp. 3d 552, 558 (W.D. Mich. 2022).  This Court can stop here and dismiss the complaint.

**2.**  Independently, the Browns' suit is not cognizable in federal court.  The Browns brought a preemptive lawsuit—seeking a declaration of what the law *would be if* the City sued to enforce the Modell Law.  They presumably think jurisdiction exists because of their federal defenses.  But they are wrong.  For these kinds of anticipatory lawsuits, federal courts look past the plaintiff's defenses to the enforcement action (here, the Browns' constitutional defenses to the Modell Law).  "To sanction suits for declaratory relief as within the jurisdiction of the District Courts merely because, as in this case, artful pleading anticipates a [federal] defense" would "contravene the whole trend of jurisdictional legislation by Congress, disregard the effective functioning of the federal judicial system and distort the limited procedural purpose of the Declaratory Judgment Act."  *Skelly Oil Co.*, 339 U.S. at 673–74; *see also Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989); *Gully v. First Nat'l Bank*, 299 U.S. 109, 116 (1936); *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908).  Federal courts instead "look to the [state-law] claim underlying the request for declaratory relief"—"in this case, [the City's] claim" that the Modell Law applies to the Browns' planned move.  *Miller v. Bruenger*, 949 F.3d 986, 991 (6th Cir. 2020).  And courts ask whether "the face of *that claim* could arise under federal law."  *Id.* (emphasis added).

Stripped of the Browns' federal defenses, nothing about this case is federal.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987).  It concerns a state enforcement action, brought by a state political subdivision, against entities based or operating in the State, involving the interpretation of state law.  The Browns' preemptive federal suit—which "seeks in essence to assert a defense to an impending state-court action"—thus "does not 'arise under' federal law."

11

*City of Saginaw v. Serv. Emp. Int'l Union, Loc. 446-M*, 720 F.2d 459, 461 (6th Cir. 1983); *see also Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 20 n.19 (1983) ("[A] declaratory judgment plaintiff could not get original federal jurisdiction if the anticipated lawsuit by the declaratory judgment defendant would *not* 'arise under' federal law"). The Browns' "defenses invoking federal law," in short, "do not transform a state-law claim into a federal case." *Bruenger*, 949 F.3d at 992–93; *see also, e.g.*, *Saginaw*, 720 F.2d at 461; *Mich. Sav. & Loan League v. Francis*, 683 F.2d 957, 960 (6th Cir. 1982).

Accordingly, this Court is doubly without federal-question jurisdiction over the complaint. And without any original federal jurisdiction, of course, this Court also lacks jurisdiction over the Browns' state-law claim. 28 U.S.C. § 1367(a). The Court therefore lacks subject-matter jurisdiction and should dismiss the Browns' complaint.

> **B.     By Effectively Seeking Only An Advisory Opinion, The Browns Lack Article III Standing.**

In addition to the lack of subject-matter jurisdiction, this Court also lacks jurisdiction under Article III because the Browns lack standing. The Browns fail to request real relief (*e.g.*, an injunction), asking instead essentially for an impermissible advisory opinion alone.

Article III confines the federal judicial power to the resolution of "Cases" and "Controversies." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A foundational tenet of Article III is that the plaintiff must have standing, which ensures that federal courts resolve only those disputes "traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 102 (1998). To establish its standing, a plaintiff must show (1) a concrete and particularized injury, (2) caused by the defendant, (3) that is redressable by the relief sought. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

The Browns' lawsuit falters at the last step:  redressability.  Redressability requires courts to consider the "relationship between 'the judicial relief requested' and the 'injury' suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (citation omitted).  The Browns assert "injury" from the City's use of the Modell Law against them.  *See* Am. Compl. ¶¶ 56–67.  But when it comes to relief from that state-court enforcement action, the Browns request only a declaration—they want this Court merely to say what the law is.  They seek no injunction, no damages, nothing to accompany their bare request for an opinion by this Court.  *See* Am. Compl., at p. 23.

This requested relief flunks the redressability test.  "[R]edressability requires that the court be able to afford relief through the exercise of its power, not through the persuasive or even awe-inspiring effect of the opinion explaining the exercise of its power."  *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (citation omitted).  "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability."  *Id.* A bare declaratory judgment—all the Browns want—would not alleviate the Browns' asserted injury; it would not stop a party from enforcing the Modell Law against the Browns (which the City now, in fact, has done).  The law would remain on the books, too, still being fully enforceable. *See Arizona v. Biden*, 40 F.4th 375, 396 (6th Cir. 2022) (Sutton, C.J., concurring).  Without a request to actually enjoin the lawsuit (a request that would run into many other problems), the Browns accordingly ask this Court "to issue what would amount to 'an advisory opinion.'" *California*, 593 U.S. at 673 (citation omitted); *see Haaland*, 599 U.S. at 293.  And this Court consistently refuses to render "advisory opinion[s]."  *Hedges*, 2019 WL 11097079, at *2; *see also, e.g.*, *Marek*, 2016 WL 11264709, at *3; *Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co. of Pittsburgh*, 2009 WL 3518070, at *4 (N.D. Ohio Oct. 23, 2009).

13

Again here, therefore, this Court lacks jurisdiction to do what the Browns demand. It should dismiss the complaint under Rule 12(b)(1).

## II. THIS COURT SHOULD REFUSE TO EXERCISE ITS JURISDICTION EVEN IF IT HAD IT.

At the very least, even if this Court had jurisdiction, it should not exercise it here. The unusual posture of this dispute gives this Court the discretion to refuse to entertain the merits three times over. *First*, the Declaratory Judgment Act expressly provides that a court "*may* declare the rights" of the parties, not that it must do so. 28 U.S.C. § 2201(a) (emphasis added). *Second*, the pending state-court action, which will resolve this entire case, gives this Court discretion not to reach out and decide the issues involved. And *third*, abstention principles—especially the *Pullman* abstention doctrine—also counsel in favor of declining this complaint.

### A. This Court Should Decline Jurisdiction Under The Declaratory Judgment Act.

Courts "possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." *Admiral Ins. Co. v. Fire-Dex, LLC*, 2022 WL 16552973, at *3 (N.D. Ohio Oct. 31, 2022) (citation omitted); *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288; *see also W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (discussing discretionary factors for declaratory judgment actions).

All factors cut in favor of declining jurisdiction here. This action would neither "settle the controversy" nor "serve a useful purpose in clarifying" legal relations, *W. World Ins. Co.*, 773 F.3d at 759, because the Browns effectively seek only an advisory opinion declaring what the law is and because state-law issues would remain. The Browns' rush to preempt the City's state-court

14

action is also nothing more than a "race" to the Browns' apparent preferred forum (federal court rather than state court)—a well-recognized example of "unseemly . . . procedural fencing" that counsels against exercising jurisdiction.  *Id.* at 761 (citations omitted).

Proceeding here would also flout federalism principles.  This case concerns critical, state-law interpretative issues that properly belong in state court.  *Cf., e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (a federal court may not "instruct[] state officials on how to conform their conduct to state law").  Declining jurisdiction is thus "wise" when, as here, a declaratory-judgment action "involve[s] novel, unsettled, or complex issues of state law."  *W. World Ins. Co.*, 773 F.3d at 760.  To avoid being "counterproductive," federal courts should "step back" to "allow the state courts the opportunity to resolve unsettled state law matters."  26 C.J.S. Declaratory Judgments § 128, Westlaw (database updated Dec. 2024).  Relatedly, too, the City's state-court action presents "an alternative remedy that is better and more effective."  *Morrison v. Parker*, 90 F. Supp. 2d 876, 882 (W.D. Mich. 2000).  The parties can litigate, in state court, "all issues between" them in a "comprehensive proceeding," which is "certainly preferable to a federal declaratory judgment action"—like this one—where the "affirmative defenses" are the principal "matters at issue."  *Id.*  Federal courts appropriately "are reluctant to resolve important questions of public law in a declaratory action."  10B Wright & Miller, *Federal Practice and Procedure Civil* § 2759, Westlaw (database updated June 2024).  This Court should follow suit, as both "practicality and wise judicial administration" favor dismissing this declaratory-judgment-only lawsuit concerning an important Ohio law.  *Wilton*, 515 U.S. at 288.

**B.**    **The Pending State-Court Action Takes Precedence Over This Anticipatory Federal Lawsuit.**

Exercising this discretion is supported, too, by comity concerns.  Two lawsuits are now pending involving the exact same subject:  the application of the Modell Law to the Browns'

owners' planned move of the Browns away from their taxpayer-funded stadium.  The two courts—the state court and this federal court—need to decide which court will resolve the issues.  Federal law, however, supplies the answer:  The state-court lawsuit must take precedence.

"When a declaratory judgment suit is brought purely in anticipation of a filing by the defendant in another forum, that suit should be dismissed."  *Innovation Ventures, LLC v. CB Distribs., Inc.*, 652 F. Supp. 2d 841, 844 (E.D. Mich. 2009).  That precisely describes the Browns' lawsuit here.  The Browns filed the declaratory-judgment suit anticipating the City's enforcement action in state court.  Now that the City's state-court lawsuit has actually been filed, there is no need for the federal court to predict state law—the state courts will supply all the relevant answers.  As courts do when faced with this situation, this Court should refuse to "allow [the Browns] to secure" what they perceive as "a more favorable forum by filing an action for declaratory judgment when [the Browns] ha[d] notice that the other party intends to file suit involving the same issues in a different forum."  *Id.*; *see AmSouth Bank v. Dale*, 386 F.3d 763, 786, 791 n.8 (6th Cir. 2004) (collecting cases dismissing on this ground).

Nor does it matter that the Browns rushed to file first.  The so-called "first-to-file" rule—where ordinarily the first-filed lawsuit takes precedence—has an exception squarely on point here.  "[W]hen a putative defendant files a declaratory judgment action to stave off an unfavorable forum, courts will jettison the first-to-file rule in favor of the second-filed, coercive action."  *NanoLogix, Inc. v. Novak*, 2013 WL 6443376, at *2 (N.D. Ohio Dec. 9, 2013).  Parties that know they will soon be sued in state court thus cannot preempt the state suit by filing in federal court; "[a] plaintiff, even one who files first, does not have a right to bring a declaratory judgment action in the forum of his choosing."  *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001).  Much to the contrary, there is "a presumption that a first filed

declaratory judgment action should be dismissed or stayed in favor of the substantive suit"—here, the state-court enforcement action.  *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007); *see also AmSouth Bank*, 386 F.3d at 791 n.8.  And everything supports that presumption sticking here:  The City passed an ordinance providing that it would enforce the law; the Browns invoked that ordinance as its basis for bringing this anticipatory lawsuit, *see* Am. Compl. ¶¶ 56–67; and this federal lawsuit would rob the "natural plaintiff" (the City) of its ability to select its forum, *AmSouth Bank*, 386 F.3d at 786; *see also, e.g.*, *Essex Grp., Inc. v. Cobra Wire & Cable, Inc.*, 100 F. Supp. 2d 912, 915 (N.D. Ind. 2000).

In sum, the Browns' lawsuit represents the quintessential "misuse of the Declaratory Judgment Act to gain a procedural advantage and preempt the forum choice of the plaintiff in the coercive action"—which "militates in favor of dismissing the declaratory judgment action."  *Cath. Health Partners v. CareLogistics, LLC*, 973 F. Supp. 2d 787, 792 (N.D. Ohio 2013) (citation omitted).  "Federal courts will not seize litigations from state courts merely because [the] defendant[] goes to federal court to begin his federal-law defense before the state court begins the case under state law."  *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952).  They will instead dismiss those improper anticipatory federal lawsuits.

### C.    Abstention Principles, Including *Pullman*, Also Require Dismissal.

If all this were not enough, this federal lawsuit also runs headlong into abstention doctrines. At its core, this lawsuit asks whether the Modell Law applies to the Browns' planned move. Am. Compl. ¶¶ 122–131.  If it does not (as the Browns argue), then the Court would have no need (or ability) to opine on the law's constitutionality.  So the interpretation of state law is a threshold issue in this case—an issue that precedes any federal constitutional issue.

And when, as here, the federal issues in a case arise only depending on how the Court interprets a state law, the federal court will abstain under the *Pullman* abstention doctrine.  *Pullman*

17

"instructs courts to avoid exercising jurisdiction in cases involving an ambiguous state statute that may be interpreted by state courts so as to eliminate, or at least alter materially, the constitutional question raised in federal court." *Fowler v. Benson*, 924 F.3d 247, 255 (6th Cir. 2019).  That could not more perfectly describe this case.  Interpretation of the Modell Law (which has been interpreted only once before) could entirely "remove the federal issue by making unnecessary a constitutional decision." *Traughber v. Beauchane*, 760 F.2d 673, 682 (6th Cir. 1985).  The longstanding lesson of *Pullman* is that federal courts should not eagerly delve into tricky constitutional issues, especially when it could cause "needless friction with state policies." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941).  They should instead abstain—and let the state courts sort out the state law the Browns themselves call ambiguous. *See* Am. Compl. ¶¶ 46–51, 68–87.

Nor is it just *Pullman* abstention that applies here. *Burford* abstention, too, favors dismissal.  Under *Burford*, courts will dismiss federal lawsuits "where timely and adequate state-court review is available and (1) a case presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case at bar, or (2) the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Stein v. Thomas*, 672 F. App'x 565, 571 (6th Cir. 2016) (citation omitted); *see Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  Likewise for *Colorado River* abstention:  A court may dismiss "a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976); *see also Romine v. Compuserve Corp.*, 160 F.3d 337, 340–42 (6th Cir. 1998) (affirming abstention under *Colorado River*).  Dismissal here would be wise indeed.

These abstention doctrines capture the same idea: Federal courts must not needlessly wade into state or constitutional law, when the state courts are as or better equipped to do so. Federal courts should instead permit state courts to interpret their own laws, especially when (as here) that could eliminate the federal issues from the case. If this Court had jurisdiction, therefore, and if it felt the desire to exercise it, the abstention doctrines should keep this Court from doing so.

*   *   *

In the end, this Court has no legitimate authority to entertain this lawsuit. The Browns insist the City acted "[p]rematurely" (Am. Compl., at p. 11), but it turns out only the Browns— with their transparent attempt to seek a federal forum for resolving this state-law dispute—did so. Because this case has no business being in federal court, this Court should dismiss—either for lack of jurisdiction or out of its discretion. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.-UAW v. Dana Corp.*, 1999 WL 33237054, at \*5–6 (N.D. Ohio Dec. 6, 1999); *AmSouth Bank*, 386 F.3d at 791 n.8.

## CONCLUSION

For these reasons, this Court should grant the motion and dismiss the Amended Complaint.

Respectfully submitted,

Mark D. Griffin (0064141)
Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Email: MGriffin@clevelandohio.gov

Justin E. Herdman (0080418)
Tracy K. Stratford (0069457)
James R. Saywell (0092174)
Samuel V. Lioi (0100464)
Gregory E. Hilbert (0101242)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Phone: (216) 586-7108
Fax: (216) 579-0212
Email: jherdman@jonesday.com

tkstratford@jonesday.com
jsaywell@jonesday.com
slioi@jonesday.com
ghilbert@jonesday.com

*Attorneys for Defendant The City of Cleveland*

/s/ *Justin E. Herdman* _____

20

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed electronically on the 15th day of January, 2025.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

<u>*s/ Justin E. Herdman*</u>

*One of the Attorneys for Defendant The City of Cleveland*

**LOCAL RULE 7.1 CERTIFICATE**

I certify that this case is unassigned, and this memorandum complies with the 20-page limitation set forth in Local Rule 7.1.

<u>*s/ Justin E. Herdman*</u>

*One of the Attorneys for Defendant The City of Cleveland*