# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| **CLEVELAND BROWNS FOOTBALL COMPANY LLC,** | ) | **Case No. 1:24-CV-01857** |
|  | ) |  |
| **Plaintiff,** | ) | **Judge David A. Ruiz** |
|  | ) |  |
| **vs.** | ) | **ORAL ARGUMENT REQUESTED** |
|  | ) |  |
| **THE CITY OF CLEVELAND,** | ) |  |
|  | ) |  |
| **Defendant,** | ) |  |
|  | ) |  |
| **THE STATE OF OHIO,** | ) |  |
|  | ) |  |
| **Intervenor-Defendant.** | ) |  |

**PLAINTIFF CLEVELAND BROWNS FOOTBALL COMPANY LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT CITY OF CLEVELAND'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

**TABLE OF AUTHORITIES** ................................................................................. ii

**ISSUES PRESENTED** ...................................................................................... iii

**SUMMARY OF THE ARGUMENT** ................................................................... iii

**I.    INTRODUCTION** ....................................................................................... 1

**II.   STATEMENT OF FACTS** ......................................................................... 3

      A.    The Parties Entered Into the HBF Lease and FCA in April 1996 ....................... 3

      B.    The Modell Law Was Enacted in June 1996. ..................................................... 4

      C.    The City Seeks to Enforce the Modell Law Against the Browns ........................ 4

**III.  LAW AND ARGUMENT** ............................................................................ 5

      A.    The Browns' Claims Create Federal Question Jurisdiction ................................ 5

          1.   This Court Has Jurisdiction to Interpret and Apply the U.S. Constitution ..... 5

          2.   The City's Attempt to Recast the Browns' Well-Pleaded Federal Claims as Mere Affirmative Defenses Flunks the Law and Fact Test ........... 9

          3.   The Browns Seek Substantive Relief, Not an Advisory Opinion ................... 11

      B.    The Extraordinary Remedy of Abstention Is Not Warranted ............................... 12

          1.   *Pullman* Abstention Is Unwarranted ............................................................. 14

          2.   *Burford* and *Colorado River* Abstention Do Not Apply ................................ 17

              i.   *Burford* Abstention Is Improper ................................................................ 18

              ii.   *Colorado River* Abstention Is Improper .................................................. 18

**IV.   CONCLUSION** ........................................................................................ 20

**CERTIFICATE OF SERVICE** ........................................................................... 21

**LOCAL RULE 7.1 CERTIFICATE** ................................................................... 21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Admiral Ins. Co. v. Fire-Dex, LLC*,
No. 1:22-CV-1087-PAB, 2022 U.S. Dist. LEXIS 198034 (N.D. Ohio Oct. 31,
2022) ..................................................................................................................................9

*Afran v. McGreevey*,
115 Fed. Appx. 539 (3d Cir. 2004) ....................................................................................13

*American Motors Sales Corp. v. Runke*,
708 F.2d 202 (6th Cir. 1983) .............................................................................................16

*AmSouth Bank v. Dale*,
386 F.3d 763 (6th Cir. 2004) ...............................................................................................9

*Arizona v. Biden*,
40 F.4th 375 (6th Cir. 2022) ..............................................................................................12

*Associated Gen. Contractors of Ohio, Inc. v. Drabik*,
Case No. C2-98-943, 1998 U.S. Dist. LEXIS 22043 (S.D. Ohio Oct. 28, 1998)....................16

*Baggett v. Bullitt*,
377 U.S. 360 (1964)......................................................................................................13, 14

*Bennafield v. Canton Police Dep't*,
856 F.2d 192 (6th Cir. 1988) .............................................................................................13

*Burford v. Sun Oil Co.*,
319 U.S. 315 (1943)......................................................................................2, 14, 17, 18

*Caterpillar, Inc. v. Williams*,
482 U.S. 386 (1987).............................................................................................................10

*Catholic Health Partners v. CareLogistics*, *LLC*,
973 F. Supp. 2d 787 (N.D. Ohio 2013)................................................................................8

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp*.,
511 F.3d 535 (6th Cir. 2007) ...............................................................................................8

*Colorado River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)......................................................................2, 14, 17, 18, 19, 20

*Crum v. Mississippi Mun. Serv. Co*.,
No. 3:97cv212-D-A, 1998 U.S. Dist. LEXIS 1297 (N.D. Miss. Jan. 12, 1998)........................6

*Daniels Sharpsmart, Inc. v. Smith*,
 2017 U.S. Dist. LEXIS 90840 (E.D. Cal. June 13, 2017)......................................................16

*Dates v. Buchanan*,
 No. 1:23-cv-449, 2024 U.S. Dist. LEXIS 30485 (S.D. Ohio Feb. 22, 2024) ...........................5

*Davis v. United States*
 499 F.3d 590 (6th Cir. 2007) ......................................................................................................8

*Duke Power Co. v. Carolina Envtl. Study Grp.*,
 438 U.S. 59 (1978)......................................................................................................................5

*Energy Terminal Servs. Corp. v. New York State Dep't of Envtl. Conservation*,
 No. 77 C 1869, 1981 U.S. Dist. LEXIS 18415 (E.D.N.Y. June 19, 1981).......................10, 11

*Essex Grp., Inc. v. Cobra Wire & Cable, Inc.*,
 100 F. Supp. 2d 912 (N.D. Ind. 2000) .......................................................................................8

*Fowler v. Benson*,
 924 F.3d 247 (6th Cir. 2019) ....................................................................................................17

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*,
 463 U.S. 1 (1983)......................................................................................................................10

*Friends of Tims Ford v. TVA*,
 585 F.3d 955 (6th Cir. 2009) ....................................................................................................11

*Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co.*,
 No. 5:08CV1789, 2009 U.S. Dist. LEXIS 99233 (N.D. Ohio Oct. 23, 2009).........................12

*GTE North, Inc. v. Strand*,
 209 F.3d 909 (6th Cir. 2000) ....................................................................................................16

*Gully v. First Nat'l Bank*,
 299 U.S. 109 (1936)..................................................................................................................10

*Haaland v. Brackeen*,
 599 U.S. 255 (2023)..................................................................................................................12

*Hamdi v. Napolitano*,
 620 F.3d 615 (6th Cir. 2010) ..................................................................................................5, 6

*Harper v. PSC*,
 396 F.3d 348 (4th Cir. 2005) ....................................................................................................13

*Harris Cnty. Comm'rs Court v. Moore*,
 420 U.S. 77 (1975)....................................................................................................................12

*Hawaii Hous. Auth. v. Midkiff*,
    467 U.S. 229 (1984)...........................................................................................14, 15

*Hedges v. Bittinger*,
    No. 1:17-cv-00720, 2019 U.S. Dist. LEXIS 237444 (N.D. Ohio Oct. 23, 2019)...................12

*Hewitt v. Helms*,
    482 U.S. 755 (1987)...........................................................................................11

*Innovation Ventures, L.L.C. v. CB Distribs.*,
    652 F. Supp. 2d 841 (E.D. Mich. 2009)....................................................................8

*Jones v. Coleman*,
    848 F.3d 744 (6th Cir. 2017) .........................................................................12, 14

*Kendall-Jackson Winery, Ltd. v. Branson*,
    82 F. Supp. 2d 844 (N.D. Ill. 2000) .......................................................................16

*King v. Sloane*,
    545 F.2d 7 (6th Cir. 1976) ...................................................................................8

*Life Partners, Inc. v. Morrison*,
    484 F.3d 284 (4th Cir. 2007) ...............................................................................16

*Littler v. Ohio Ass'n of Pub. Sch. Emps.*
    88 F.4th 1176, 1181 (6th Cir. 2023) .......................................................................7

*Louisville & N. R. Co. v. Mottley*,
    211 U.S. 149 (1908)...........................................................................................10

*Marek v. Navient Corp.*,
    No. 1:16-cv-02031, 2016 U.S. Dist. LEXIS 180826 (N.D. Ohio Dec. 6, 2016) .....................8

*Martin-Marietta Corp. v. Bendix Corp.*,
    690 F.2d 558 (6th Cir. 1982) .........................................................................15, 16

*Medtronic, Inc. v. Mirowski Family Ventures, LLC*,
    571 U.S. 191 (2014)...........................................................................................8

*Mich. Dep't of Env't, Great Lakes, & Energy v. STS Hydropower, LLC*,
    609 F. Supp. 3d 552 (W.D. Mich. 2022) ..................................................................8

*Mich. Sav. & Loan League v. Francis*,
    683 F.2d 957 (6th Cir. 1982) ...............................................................................10

*Miller v. Bank of N.Y. Mellon*
    No. 21-1126, 2021 U.S. App. LEXIS 35755 (6th Cir. Dec. 1, 2021).................................7

iv

*Miller v. Bruenger*,
    949 F.3d 986 (6th Cir. 2020) ...................................................................................7, 10

*Morrison v. Parker*,
    90 F. Supp. 2d 876 (W.D. Mich. 2000) ............................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1970)................................................................................................13, 19

*Nanologix, Inc. v. Novak*,
    No. 4:13-CV-1000, 2013 U.S. Dist. LEXIS 172644 (N.D. Ohio Dec. 9, 2013) ......................8

*Noatex Corp. v. King Constr. of Houston LLC*,
    74 F. Supp. 3d 764 (N.D. Miss. 2014) .......................................................................6, 7, 10

*Oklahoma Tax Comm'n v. Graham*,
    489 U.S. 838 (1989)................................................................................................10

*PaineWebber, Inc. v. Cohen*,
    276 F.3d 197 (6th Cir. 2001) .......................................................................................19

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)..................................................................................................9

*Procunier v. Martinez*,
    416 U.S. 396 (1974) ................................................................................................13

*Railroad Commission v. Pullman Co.*,
    312 U.S. 496 (1941)..............................................................2, 14, 15, 16, 17, 18

*Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*,
    53 F.4th 1014 (6th Cir. 2022) .......................................................................................11

*Saginaw v. Serv. Emps. Int'l Union, Local 446-M*,
    720 F.2d 459 (6th Cir. 1983) .......................................................................................10

*Saint Vil v. Perimeter Mortg. Funding Corp.*,
    630 Fed. Appx. 928 (11th Cir. 2015).................................................................................6

*Santa Fe Springs Realty Corp. v. City of Westminster*,
    906 F. Supp. 1341 (C.D. Cal. 1995) ...............................................................................15

*Skelly Oil v. Phillips Petroleum Co.*
    339 U.S. 667 (1950)................................................................................................10

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013)................................................................................................13

*Toledo v. Jackson*,
    485 F.3d 836 (6th Cir. 2007) ................................................................8

*Traughber v. Beauchane*,
    760 F.2d 673 (6th Cir. 1985) ..............................................................17

*Western World Ins. Co. v. Hoey*
    773 F.3d 755 (6th Cir. 2014) ................................................................9

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995) .............................................................................9

*Wisconsin v. Constantineau*,
    400 U.S. 433 (1971) ...........................................................................17

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*,
    16 Fed. Appx. 433 (6th Cir. 2001) .......................................................8

*Zwickler v. Koota*,
    389 U.S. 241 (1967) .................................................................12, 13, 17

## Statutes

28 U.S.C. § 1331 ......................................................................................7

R.C. 9.67 ....................................................................................... *passim*

## ISSUES PRESENTED

1. Whether the Amended Complaint sufficiently alleges that a federal question exists to confer subject matter jurisdiction where Count I expressly invokes the Due Process Clause, Count II expressly invokes the Contract Clause, and Count III expressly invokes the Dormant Commerce Clause of the U.S. Constitution.

2. Whether it is incorrect to characterize the Browns' request for declaratory relief which seeks to vindicate their rights under the U.S. Constitution and find that the Modell Law, R.C. 9.67, is unconstitutional and unenforceable, as requesting an "advisory opinion."

3. Whether this Court should exercise its jurisdiction over the Browns' federal constitutional challenges to the Modell Law where the City's later-filed state court action will not moot the Browns' constitutional challenges and the principles of comity and/or important state interests do not favor abstention.


## SUMMARY OF THE ARGUMENT

1. The Amended Complaint confers federal question jurisdiction because, on its face, it alleges violations of federal laws under the U.S. Constitution.

2. The Browns' substantive constitutional claims seek a binding ruling from this Court regarding the U.S. Constitution, namely, that the Modell Law does not pass constitutional muster and is unenforceable both on its face and as applied to the Browns. Those claims seek to strike down the Modell Law and vindicate the Browns' constitutional rights. They do not seek an advisory opinion, nor are they mere affirmative defenses.

3. This Court should exercise its jurisdiction and not abstain because federal courts are obligated to rule on the substantive federal questions before them, even when a related state court case is subsequently filed. No matter how broadly or narrowly the state court applies the Modell Law or rules on the City's breach of lease claims, the Browns' constitutional claims will remain. No principles of comity or important state interests favor abstention.

## I.    INTRODUCTION

The Browns seek to build a transformational stadium development on land in Cuyahoga County, immediately adjacent to the City and just twelve miles from the current stadium. This move from downtown Cleveland—which will occur *after* the natural expiration of the Browns' lease with the City—is nothing like Art Modell's sudden departure to Baltimore in the 1990s. Modell's move broke the stadium lease and left the region with no NFL team. The Browns' move to Brook Park presents a generational opportunity to transform the region with over $2 billion in private investment and an estimated $1.3 billion in annual economic impact. The move will bring major international events to the region, significant activity to the City's downtown, and $12 million more to the City each year than the current stadium can generate. Moreover, removing the aging lakefront stadium will open up the lakefront for more impactful year-round public use and development (development the Browns have offered to directly support), will save the City hundreds of millions of dollars in future capital repair, renovation, and other Browns-related costs, and will solve the operational challenges of the current stadium.

Unfortunately for Cleveland citizens and the region, rather than transcend local politics and work toward a win-win solution, the City has chosen to expend resources on unnecessary lawsuits and to focus exclusively on enforcing the unconstitutional and inapplicable Modell Law. Like its public posturing on these critical stadium and economic development issues, the City's motion to dismiss does not withstand scrutiny. Its arguments rest on tortured readings of cases that, on closer inspection, do not stand for the propositions cited. The City's motion should be denied.

This lawsuit presents three straightforward federal claims for this Court to resolve: does the Modell Law run afoul of the United States Constitution where it:

> (1)    is unconstitutionally vague—leaving the Browns and the general public to guess as to which individuals are to have a six-month opportunity to purchase the team, what

that opportunity involves, and what facts trigger that six-month period of time (Count I);

(2)     violates the Contract Clause—interfering with contractual arrangements, such as the Browns' Lease for Huntington Bank Field and the Franchise Commitment Agreement with the NFL, that *predate* passage of the Modell Law, and makes no exceptions for instances where it may interfere with these pre-existing contractual rights and obligations (Count II); and

(3)     violates the Dormant Commerce Clause because it discriminates against out-of-state potential buyers in favor of those in Ohio and inflicts substantial harm (Count III)?

These claims are not "federal defenses." They are well-recognized substantive claims that this Court has the jurisdiction and authority to rule on. The City implicitly acknowledges that these claims are well pled and colorable, as it does not move to dismiss them for failure to state a claim.

Instead, in a transparent attempt to avoid federal court—where the Browns' constitutional claims belong—the City argues that the Browns are merely asking for an advisory opinion as to what the Modell Law means. Not so. The Browns seek a concrete, binding declaration that the Modell Law is unconstitutional, invalid, and unenforceable under federal law.

The City also points to highly disfavored and inapplicable abstention doctrines to argue that this Court should ignore its duty to apply the U.S. Constitution and address the federal issues before it. But the Browns have properly brought constitutional claims under the Declaratory Judgment Act, and there is no basis for *Pullman* abstention where, as here, issues under the U.S. Constitution are presented to the federal court. The City's later-filed state court case, *The City of Cleveland v. Haslam Sports Group, LLC, et al.*, Cuyahoga Cty. No. CV-25-110189 (the "State Court Action") will not moot any of the Browns' constitutional challenges, as no construction or interpretation of the Modell Law can remedy its constitutional defects. Similarly, *Burford* and *Colorado River* abstention simply do not apply. Resolution of the State Court Action is not helpful, or necessary, for this Court to adjudicate the Browns' federal claims.

2

In the end, the City's strained jurisdictional and procedural arguments are as contrived as its rhetorical posturing. The Motion should be denied, and this case should proceed.

## II.     STATEMENT OF FACTS

### A.     The Parties Entered Into the HBF Lease and FCA in April 1996.

In November 1995, Art Modell announced that he was moving the Browns from Cleveland to Baltimore.[1] Amd. Compl. at ¶ 30. The NFL promptly announced that it would approve a new team to play in Cleveland, and on April 26, 1996, the City and the NFL entered into two agreements necessary to create a new team and stadium: the lease agreement between the City and the NFL, as nominee for a to-be-found New Owner (the "HBF Lease"), and the Franchise Commitment Agreement ("FCA"). *Id*. at ¶¶ 31-34.

The HBF Lease expires in 2029 and does not automatically renew. *Id.* at ¶ 41. When it expires, neither the City nor the Browns have any obligation to renew it, and the premises are surrendered to the City. *Id*. In the FCA, the NFL agreed to approve a new NFL franchise in Cleveland that would participate in the NFL's league structure and be subject to all of the NFL's bylaws and other rules, including the NFL's franchise agreement (the "NFL Franchise Agreement"), which provides the terms under which teams are permitted to play as an NFL team. *Id*. at ¶¶ 33-36.

Under the NFL Franchise Agreement, the Browns became subject to certain contractual obligations to the NFL concerning the ability to sell the Team, such as ultimate approval by other NFL team owners of such a potential sale. *Id*. at ¶ 37. The Franchise Agreement requires the NFL to approve any decision to change stadiums or move the teams outside their home territory. *Id*. at

---

[1] These facts are taken from the Browns' November 15, 2024 Amended Complaint (Doc. 12, "Amd. Compl.") and are presumed to be true for purposes of a motion to dismiss.

¶¶ 38-39. In September 1998, pursuant to the FCA, the Browns entered into the Expansion Franchise Agreement, with the right to operate as a new member of the NFL. *Id*. at ¶ 40. The Browns intend to fully perform their obligations under the HBF Lease and all other agreements, including playing home games at HBF until the lease expires in 2029. *Id*. at ¶ 42.

**B.      The Modell Law Was Enacted in June 1996.**

In response to the team's move to Baltimore, R.C. 9.67, informally known as the "Modell Law," was enacted in June 1996. *Id*. at ¶¶ 12, 43. The Modell Law does not contain or incorporate definitions of operative terms, many of which are vague and undefined. *Id*. at ¶ 45. For example, the Modell Law does not specify what is meant by "financial assistance," "political subdivision," "elsewhere," "notice," "opportunity," or "area." *Id*. at ¶¶ 46-51. The Modell Law does not require owners to actually sell the team to a local buyer, just to give an "opportunity" to purchase it. *Id*. at ¶ 50. The Modell Law contains no exceptions for interference with the terms of any contract, such as the terms of a lease agreement with a negotiated end date, or a franchise agreement with a national sports league governing or restricting the sale or relocation of a team. *Id*. at ¶ 52. It discriminates against interstate commerce by providing only "individuals who reside in the area" (i.e., in Ohio) with an opportunity to purchase the Team, to the exclusion of individuals outside Ohio. *Id*.

**C.      The City Seeks to Enforce the Modell Law Against the Browns.**

As early as 2017, the Browns began working with the City to explore options to renovate HBF or explore other future stadium options. *Id*. at ¶ 55. After years of analysis and negotiation, the renovation and other lakefront options were shown not to be feasible, and the Browns began exploring a domed-stadium option in Brook Park. *Id*. at ¶¶ 7, 8, 56. The domed-stadium option is projected to support approximately five times more event days per year (from the current 10-12 at

the existing HBF to 50-70 in Brook Park), bringing significant economic activity to the region, and opening up the HBF lakefront location for development and year-round activity. *Id*. at ¶ 9.

In May 2024, the City passed an ordinance authorizing its law director to enforce the Modell Law against the Browns—years before the HBF Lease expiration in 2029. *Id.*, ¶ 14. The City Law Director admitted the purpose of such enforcement is to give local purchasers a preference over individuals located in states other than Ohio, stating that the City was prepared to file a lawsuit to require the Browns to make their team available for local purchasers. *Id*.

On January 14, 2025, months after the Browns initiated this action, the City filed the State Court Action, alleging that the Browns breached the HBF Lease with the City and violated the Modell Law. The following day, the City moved to dismiss this case, arguing that this Court should abstain from adjudicating the Browns' constitutional challenges to the Modell Law in favor of the later-filed State Court Action, even though the State Court Action involves the enforcement of the Lease and the Modell Law, rather than the Browns' challenges under the U.S. Constitution.

## III.    LAW AND ARGUMENT

### A.    The Browns' Claims Create Federal Question Jurisdiction.

#### 1.    This Court Has Jurisdiction to Interpret and Apply the U.S. Constitution.

The primary question before this Court is whether it has the power to interpret and apply the United States Constitution. It undoubtedly does. "A plaintiff properly invokes [federal question] jurisdiction when she pleads a colorable claim arising under the Constitution or laws of the United States." *Hamdi v. Napolitano*, 620 F.3d 615, 624 (6th Cir. 2010) (citation omitted); *see also Duke Power Co. v. Carolina Envtl. Study Grp*., 438 U.S. 59, 71-72 (1978) (affirming appellees' standing to challenge constitutionality of a statute through the Declaratory Judgment Act); *Dates v. Buchanan,* No. 1:23-cv-449, 2024 U.S. Dist. LEXIS 30485, at *9 (S.D. Ohio Feb.

22, 2024) ("[C]laims [arising] under federal statutes and the federal constitution . . . grant[] this Court federal question jurisdiction."); *Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 Fed. Appx. 928, 932 (11th Cir. 2015) ("The complaint alleges that Georgia's foreclosure statute is unconstitutionally vague…. Rais[ing] a federal question."); *Crum v. Mississippi Mun. Serv. Co.*, No. 3:97cv212-D-A, 1998 U.S. Dist. LEXIS 1297, at *4 (N.D. Miss. Jan. 12, 1998) ("[T]he plaintiffs seek recovery which arises under 'the Constitution, treaties or laws of the United States.' This court possesses original subject matter jurisdiction over the case at bar, and has no discretion to remand these claims to state court.") (internal citation omitted).

A claim is "colorable" so long as it is not "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Hamdi*, 620 F.3d at 624. Dismissal for lack of jurisdiction is proper "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Id.* Here, the Browns have brought three well-pled claims under the Declaratory Judgment Act expressly invoking the U.S. Constitution and asking this Court to determine whether the Modell Law is constitutional. *See* Browns' Opposition to Doc. 24 (Intervenor-Defendant The State of Ohio's Motion to Dismiss), filed concurrently with this opposition.

*Noatex Corp. v. King Constr. of Houston LLC*, 74 F. Supp. 3d 764 (N.D. Miss. 2014), is illustrative. In *Noatex*, the plaintiff filed an action under the Declaratory Judgment Act challenging the facial constitutionality and as-applied constitutionality of Mississippi's "Stop Notice" statute. *Id.* at 767-68. The State of Mississippi intervened to defend the constitutionality of the statute. *Id.* at 768. The court found that federal question jurisdiction existed under the ordinary well-pleaded complaint rule because plaintiff's "allegations ask whether Mississippi's Stop Notice statute is facially unconstitutional and unconstitutional as applied in violation of due process under the

United States Constitution." *Id*. at 773-74. The court further determined that "Noatex's claim that Mississippi's Stop Notice statute violated due process under the United States Constitution <u>could</u> exist without considering the threatened coercive action, as a challenge to the constitutionality of a state statute often presents a federal question, giving federal courts jurisdiction under 28 U.S.C. § 1331." *Id*. at 773. The same conclusions are merited here.

In contrast to the common-sense conclusion of *Noatex*, the City takes the illogical position that it is impossible to bring a declaratory judgment claim based on a state law's violation of the U.S. Constitution. Mot. at p. 15 (arguing that the Browns' Constitutional claims are affirmative defenses). Taken as true (and it is not), the City's position would mean that no federal court could weigh in on the constitutionality of a state law. This is patently false, as demonstrated by the City's inability to cite even one relevant case to support its argument.

The City cites cases holding that a wholly-duplicative claim for declaratory judgment cannot survive summary judgment when all other claims have failed. Mot. at pp. 10-11. For example, in *Littler v. Ohio Ass'n of Pub. Sch. Emps*., the court determined at summary judgment that the plaintiff's request for declaratory relief failed because her substantive § 1983 claims failed. 88 F.4th 1176, 1181 (6th Cir. 2023). Similarly, in *Miller v. Bank of N.Y. Mellon*, where the declaratory judgment claim was also decided on summary judgment and not a motion to dismiss, the Sixth Circuit affirmed on the basis that the plaintiff's "other claims have all been dismissed[.]" No. 21-1126, 2021 U.S. App. LEXIS 35755, at *16 (6th Cir. Dec. 1, 2021). In both *Littler* and *Miller,* the fact that the declaratory judgment claims survived to summary judgment cuts against the City's jurisdictional argument here. And unlike *Littler* and *Miller*, the Browns' claims are independent and substantive in seeking a ruling as to the constitutionality of the Modell Law. Amd.

7

Compl. at ¶¶ 87, 104, 121. There has been no ruling on the merits for duplicative claims that would warrant dismissing the Browns' claims for declaratory judgment.

The City's other cited cases involve no federal question at all. Mot. at pp. 10-11. *See Marek v. Navient Corp.*, No. 1:16-cv-02031, 2016 U.S. Dist. LEXIS 180826, at * 4 (N.D. Ohio Dec. 6, 2016) (plaintiff pointed to no underlying substantive cause of action but simply requested a declaratory judgment stating that he should be allowed to pay no more than twenty percent of his gross monthly income towards a loan); *Toledo v. Jackson*, 485 F.3d 836, 838-39 (6th Cir. 2007) (plaintiffs improperly "used the federal-question statute to bring a [state law] claim for breach of contract"); *King v. Sloane*, 545 F.2d 7 (6th Cir. 1976) (no jurisdiction over plaintiff's constitutional challenge to a state taxing scheme because a federal statute required those claims to be brought in state court).[2] No such federal requirement exists with respect to challenging the constitutionality of the Modell Law.

The City further argues that federalism principles require this Court to decline to exercise jurisdiction. Mot. at pp. 14-15. Again, the City's cited cases offer no support for its argument and do not even involve constitutional challenges.[3] Many of the City's cases involve preemptive

---

[2] The City's reliance on *Davis v. United States* is inapposite because, unlike here, that case did not challenge the constitutionality of a statute under the U.S. Constitution. 499 F.3d 590 (6th Cir. 2007) (involving declaration of amount of financial support owed to a spouse under an affidavit required by federal law as part of the immigration process). Finally, in *Mich. Dep't of Env't, Great Lakes, & Energy v. STS Hydropower, LLC*, the primary issue was whether removal was proper where the complaint asserted only state law claims in addition to the claim for declaratory judgment. 609 F. Supp. 3d 552, 558 (W.D. Mich. 2022). Removal is not at issue here, and the sole state law claim is pled in the alternative to the Browns' three substantive federal claims.

[3] *See Innovation Ventures, L.L.C. v. CB Distribs.*, 652 F. Supp. 2d 841 (E.D. Mich. 2009) (involving declaratory judgment action to declare non-liability under a statute without any constitutional challenge); *Catholic Health Partners v. CareLogistics*, *LLC*, 973 F. Supp. 2d 787 (N.D. Ohio 2013) (involving declaratory judgment action to declare non-liability under a contract and not involving any constitutional challenge); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535 (6th Cir. 2007) (involving a declaratory judgment action involving obligations under a franchise agreement and not any constitutional challenge); *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs.*, 16 Fed. Appx. 433 (6th Cir. 2001) (involving declaratory judgment action to declare non-liability for intellectual property infringement and not any constitutional challenge); *Essex Grp., Inc. v. Cobra Wire & Cable, Inc.*, 100 F. Supp. 2d 912 (N.D. Ind. 2000) (same); *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191 (2014) (same); *Nanologix, Inc. v. Novak*, No. 4:13-CV-1000, 2013 U.S. Dist. LEXIS 172644 (N.D. Ohio

declaratory judgment actions to decide insurance coverage, which is not relevant here. *See e.g.,* *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Admiral Ins. Co. v. Fire-Dex, LLC*, No. 1:22-CV-1087-PAB, 2022 U.S. Dist. LEXIS 198034 (N.D. Ohio Oct. 31, 2022); *AmSouth Bank v. Dale*, 386 F.3d 763 (6th Cir. 2004). In fact, *Western World Ins. Co. v. Hoey* actually undermines the City's argument since the District Court *properly* exercised jurisdiction in that case to declare coverage under an insurance policy. 773 F.3d 755 (6th Cir. 2014). And *Pennhurst State Sch. & Hosp. v. Halderman* does not apply because that case involved claims against the state itself, and cases "challenging the federal constitutionality of a state official's action is not one against the State." 465 U.S. 89 (1984).

The Browns' Amended Complaint is unlike any of the cases the City relies upon. As set forth on the face of the Amended Complaint, the primary issue before this Court concerns whether the Modell Law is constitutional under the U.S. Constitution, a quintessential federal question. Amd. Compl. at ¶¶ 87, 104, 121.

> 2.    The City's Attempt to Recast the Browns' Well-Pleaded Federal Claims as Mere Affirmative Defenses Flunks the Law and Fact Test.

The City attempts to mischaracterize the Browns' substantive federal claims as mere "affirmative" or "federal" defenses. Mot. at p. 11. But the City cannot simply wave a wand and recast the Browns' well-pleaded constitutional claims as federal defenses. To find otherwise would set a dangerous precedent that no one can challenge the constitutionality of a state law in a federal court action—such claims could only be asserted as defenses to a claim by the government. This outcome cannot withstand minimal scrutiny.

Unsurprisingly, the City's cases do not state that a declaratory judgment action challenging

---

Dec. 9, 2013) (involving claims over legal fees and not any constitutional challenge); *Morrison v. Parker*, 90 F. Supp. 2d 876 (W.D. Mich. 2000) (involving personal injury declaratory judgment action filed in federal court despite a first-filed negligence case in state court).

the constitutionality of a statute is merely a "federal defense." Mot. at p. 11. Many of the City's cases **do not even involve constitutional challenges**.[4] And the City's star case, *Skelly Oil v. Phillips Petroleum Co.*, is inapposite because it involved state law contract claims masquerading as declaratory judgment claims. 339 U.S. 667, 670-71 (1950) (plaintiff sought a declaration that a contract was still in effect and binding). As the *Skelly Oil* court noted, "[i]f [plaintiff] sought damages from petitioners or specific performance of their contracts . . . such a suit would 'arise' under the State law governing the contracts." *Id*. at 672.[5] Here, in contrast, this lawsuit concerns a state law and the Browns' affirmative, substantive federal claims challenging it under the United States Constitution. Moreover, courts have retreated from the "somewhat narrow stance" taken in *Skelly. See e.g.*, *Energy Terminal Servs. Corp. v. New York State Dep't of Envtl. Conservation*, No. 77 C 1869, 1981 U.S. Dist. LEXIS 18415 (E.D.N.Y. June 19, 1981) (finding federal question jurisdiction existed where plaintiff brought a declaratory judgment action seeking a ruling as to the constitutionality of a New York statute); *see also Noatex*, 74 F. Supp. 3d at 772. As the *Noatex* court stated, "the law is not certain as to whether *Skelly Oil* always controls in declaratory judgment actions premised on federal question jurisdiction." *Id.* And at least one court has questioned

---

[4] *See e.g.*, *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987) (breach of employment agreement did not implicate Labor Management Relations Act to support removal); *Saginaw v. Serv. Emps. Int'l Union, Local 446-M*, 720 F.2d 459 (6th Cir. 1983) (involving second-filed declaratory judgment action alleging that a first-filed arbitration enforcement lawsuit was contrary to federal law); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) (a state court declaratory judgment claim regarding employee welfare benefit plan was not removable where ERISA issues were raised as defenses and not in the complaint); *Miller v. Bruenger*, 949 F.3d 986 (6th Cir. 2020) (no federal question where plaintiff's rights to life insurance proceeds were governed by a divorce decree and not a federal statute); *Mich. Sav. & Loan League v. Francis*, 683 F.2d 957 (6th Cir. 1982) (no federal question in declaratory judgment claim where no federal law completely preempted the Michigan Mortgages Lending Act).

[5] The City cites several other cases involving only state law claims. *See e.g.*, *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936) (finding no federal question on the face of complaint filed by state tax collector for taxes owed under state law); *Louisville & N. R. Co. v. Mottley*, 211 U.S. 149 (1908) (plaintiff's complaint against railroad company for breach of contract did not arise under federal law); *Oklahoma Tax Comm'n v. Graham*, 489 U.S. 838, 841 (1989) (only implication of a federal statute concerned a potential defense by the defendant of tribal immunity, which is governed by state law).

whether *Skelly Oil* has tacitly been overruled. *See Energy Terminal Servs. Corp.*, 1981 U.S. Dist. LEXIS 18415 at 12, n. 3.

### 3.  The Browns Seek Substantive Relief, Not an Advisory Opinion.

The City argues the Browns lack standing under Article III because the Amended Complaint seeks an "advisory opinion" as to what the Modell Law means. Mot. at pp. 12-13. As discussed above, the Browns seek nothing of the sort. A plain reading of the well-pleaded Amended Complaint makes it apparent that the relief requested by the Browns is a declaration that the Modell Law is unconstitutional under the U.S. Constitution. Amd. Compl. at ¶¶ 87, 104, 121. In any event, once again, the City's arguments rest on tortured readings of cases that, on closer inspection, do not stand for the propositions cited.

A court may issue declaratory relief within the jurisdictional limits of Article III when a plaintiff demonstrates "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issue of a declaratory judgment." *Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1021 (6th Cir. 2022). In other words, the declaratory judgment must settle "some dispute which affects the behavior of the defendant towards the plaintiff." *Friends of Tims Ford v. TVA*, 585 F.3d 955, 971 (6th Cir. 2009) (quoting *Hewitt v. Helms*, 482 U.S. 755, 761 (1987)).

For nearly a year, the City has expressed its present intention to immediately invoke the Modell Law to deprive the Browns of their constitutional rights. Amd. Compl. at ¶ 14. A declaratory judgment settling the constitutionality of the Modell Law would prevent the City from blocking the team's lawful transition to the new Brook Park stadium after the natural expiration of the HBF Lease. Amd. Compl. at ¶¶ 87, 104, 121. In addition, the City's tactics thus far demonstrate that it will take steps to prolong the instant lawsuit in an effort to prevent the Browns from

11

exercising their contractual rights. There is also certainly immediacy here where the City has filed an affirmative case of its own to enforce the Modell Law and affirmatively made those arguments in this lawsuit. Mot. at pp. 1-2, 7. This Court may therefore issue the requested declaratory relief.

The City relies heavily on *Haaland v. Brackeen*, 599 U.S. 255 (2023), to argue that a ruling from this Court "would not stop a party from enforcing the Modell Law against the Browns[.]" Mot. at p. 13. However, the issue in *Haaland* was that the state officials that primarily controlled the adoption/foster process would not be bound by the judgment. 599 U.S. at 292-293. This is not an issue here where the City freely admits it has taken steps to "enforc[e] the Modell Law against the Browns" and would be subject to any ruling issued by this Court.[6] Mot. at p. 13. The relevant and applicable case law compels the opposite conclusion. *See supra* pp. 5-6.

### B.     The Extraordinary Remedy of Abstention Is Not Warranted.

Having established that this Court has jurisdiction over the Browns' claims, which raise overwhelming federal interests, this Court should adjudicate the claims before it and not abstain. Abstention under any theory is disfavored. "[A]bstention … is an extraordinary and narrow exception to the duty of a district court to adjudicate a controversy properly before it." *Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017). Abstention should only be invoked in "special circumstances," *Harris Cnty. Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975), and "cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim." *Zwickler v. Koota,* 389 U.S. 241, 251 (1967). In deciding whether to abstain, the balance weighs "heavily"

---

[6] Similarly inapplicable is *Hedges v. Bittinger*, No. 1:17-cv-00720, 2019 U.S. Dist. LEXIS 237444 (N.D. Ohio Oct. 23, 2019), in which this Court declined to opine as to whether privilege was waived in relevant communications because "[t]he underlying motion to compel is moot and Defendants have cited no authority contemplating such a 'declaration' untethered from a discovery dispute." *Id.* at *5. Nor do *Arizona v. Biden*, 40 F.4th 375 (6th Cir. 2022) or *Goodyear Tire & Rubber Co. v. Nat'l Union Ins. Co.*, No. 5:08CV1789, 2009 U.S. Dist. LEXIS 99233 (N.D. Ohio Oct. 23, 2009) have any relevance here. *Biden* involved a District Court's purported "nationwide injunction" attempting to block the application of federal immigration policies in all states, even those that were not involved in the lawsuit, and Goodyear involved a declaratory judgment action regarding insurance coverage before the exhaustion provisions in the policy were satisfied.

in favor of exercising jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 16 (1970).

Federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, even in the face of "parallel state-court proceedings." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013). There is a "duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims." *Zwickler*, 389 U.S. at 248.

Moreover, "[t]he abstention doctrine is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). Therefore, "[a]mbiguity in state law will not, standing alone, require abstention." *Afran v. McGreevey*, 115 Fed. Appx. 539, 542 (3d Cir. 2004); *see also Bennafield v. Canton Police Dep't*, 856 F.2d 192 (6th Cir. 1988) ("[T]he mere difficulty of ascertaining or anticipating how state courts may rule on an issue is in and of itself an insufficient basis for a federal court to decline jurisdiction.").

Because the Modell Law violates the U.S. Constitution on at least three grounds—including violation of the Commerce Clause—and because the City is attempting to weaponize that unconstitutionality to prevent a transformative stadium development from moving forward, the Browns' claims raise an "overwhelming federal interest," and so there is no basis for abstention. *Harper v. PSC*, 396 F.3d 348, 355-56 (4th Cir. 2005) (recognizing that where an "overwhelming federal interest" exists, no state interest can be nearly as strong at the same time); *see also, Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989) (when a government regulation or practice

13

"offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights").

Further, the City's argument that the Court should abstain from exercising jurisdiction in this case because one of the Browns' claims involves interpretation of state law is highly misleading. The Amended Complaint sets forth three substantive counts seeking redress under the U.S. Constitution—quite clearly matters of federal interest—and one ancillary claim involving interpretation of the Modell Law. The City cites no case suggesting that the mere inclusion of a claim requiring interpretation of state law warrants abstention from a case that otherwise clearly presents an "overwhelming federal interest." Once again, the City's argument would unnecessarily restrict the ability of claimants to have their federal claims heard in federal court.

The City asserts that abstention is proper under the doctrines set forth in *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Mot. at pp. 17-18. None of those doctrines apply here.

1. *Pullman* Abstention Is Unwarranted.

*Pullman* abstention is based on the avoidance of "needless friction with state policies," and "a premature constitutional adjudication." *Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017) (citation omitted). Under *Pullman*, which is "a discretionary doctrine," abstention is appropriate "when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). Even then, abstention is not applied "whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). *Pullman* abstention does not apply if the state law "is not fairly subject

to an interpretation which will render unnecessary adjudication of the federal constitutional question." *See Midkiff*, 467 U.S. at 236 (internal quotation marks omitted). Nor does *Pullman* abstention apply where constitutional issues, not state law, "are at the core of the [ ] controversy." *Santa Fe Springs Realty Corp. v. City of Westminster*, 906 F. Supp. 1341, 1354 (1995).

*Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558 (6th Cir. 1982) is instructive, where plaintiff challenged Michigan's Take-Over Offers Act and Uniform Securities Act as violating the Commerce and Supremacy Clauses of the Constitution. *Id*. at 565. The district court abstained under *Pullman*, reasoning that whether plaintiff's acts constituted a "tender offer" under the statutes would moot plaintiff's constitutional claims. The Sixth Circuit reversed because there was "no construction which would remedy the constitutional defects which we find exist in the [Acts.]" *Id*. at 563. Importantly, the Acts imposed an "unconstitutional burden on interstate commerce" by setting requirements on tender offers that did not exist nationwide. *Id*. at 565. The court concluded "there is no constitutionally acceptable interpretation of the Michigan statute which would permit the state defendants to interfere" with nationwide tender offers. *Id*. at 563. Thus, even though "[a] Michigan circuit judge has now construed the Michigan statute to limit it … the Michigan statute, as applied, still impermissibly burdens interstate commerce." *Id*. at 567.

In Counts I-III, the Browns challenge the City's power to impose restrictions on the owners of professional sports teams (including the Browns), pursuant to a vague and ambiguous state law that does not provide fair notice as to those restrictions, in violation of the Due Process Clause, the Contract Clause, and the Commerce Clause of the U.S. Constitution. Amd. Compl. at ¶¶ 68-121). The constitutional questions the Browns have raised do not depend on the circumstances under which the City will carry out the Modell Law's directive. No matter how broadly or narrowly Ohio applies the Law, or defines its terms, so long as the statutory restrictions exist, they would raise

15

questions under the U.S. Constitution. Accordingly, abstention is not warranted. *See American Motors Sales Corp. v. Runke*, 708 F.2d 202, 208 (6th Cir. 1983) (*Pullman* abstention not warranted despite "disputes over the interpretation of a statutory term," as the state court "could not reasonably construe" the term in a manner to avoid constitutional problems); *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, Case No. C2-98-943, 1998 U.S. Dist. LEXIS 22043, at *7 (S.D. Ohio Oct. 28, 1998) (*Pullman* abstention not warranted in federal constitutional challenge to Ohio law: "While there may be undecided issues of statutory construction, such as the issue…of whether a person…falls within [the statute]… resolution of such issues would not dispose of the federal equal protection questions raised in this case."); *Kendall-Jackson Winery, Ltd. v. Branson*, 82 F. Supp. 2d 844, 860-61 (N.D. Ill. 2000) (*Pullman* abstention not warranted because "challenge based on the Commerce Clause does not raise difficult questions of state law."); *Life Partners, Inc. v. Morrison*, 484 F.3d 284, 300-01 (4th Cir. 2007) (district court did not abuse its discretion in declining to abstain on Commerce Clause claim); *Daniels Sharpsmart, Inc. v. Smith*, 2017 U.S. Dist. LEXIS 90840, at *11-17 (E.D. Cal. June 13, 2017) (finding that abstention on a Commerce Clause claim is generally unwarranted under any of the recognized abstention doctrines).

The Browns plead *in the alternative* that their actions do not trigger or violate the Modell Law (Count IV). This does not create any threshold question as the City claims. There is no construction "that would eliminate the need to reach the federal question." *GTE North, Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir. 2000). *Pullman* abstention is not appropriate because, as in *Martin-Marietta*, no interpretation of the Modell Law would render it constitutional. The City does not, and cannot, explain how a state court could clarify the Modell Law such that a ruling on the Browns' constitutional challenges would be unnecessary. Notwithstanding the Browns' claims that the Modell Law is ambiguous in its scope and applicability, the Modell Law is not susceptible

16

to a limiting or clarifying construction that would moot the federal constitutional questions at issue. There is no threshold question for a state court to decide.

The pendency of the City's later-filed state court action is also inapposite—"abstention should not be ordered merely to await an attempt to vindicate the claim in a state court." *Wisconsin v. Constantineau*, 400 U.S. 433, 439 (1971). While the City's state court claims may raise similar concerns for due process, contract rights, and interstate commerce, this Court should not stand down while a state court adjudicates a state law claim. *Zwickler*, 389 U.S. at 251.

The City's own authority evinces the inapplicability of *Pullman* abstention. (*See* Mot. at p. 18, citing *Fowler v. Benson*, 924 F.3d 247 (6th Cir. 2019) and *Traugber v. Beauchane*, 760 F.2d 673, 682 (6th Cir. 1985)). In *Fowler*, the court summarily rejected abstention based on the argument that "state courts might interpret the challenged law in a way that would eliminate the constitutional question" noting that "the Supreme Court has rejected applying *Pullman* abstention on those grounds." 924 F.3d at 255. Likewise, in *Traugber*, the Sixth Circuit reversed application of abstention, including under *Pullman,* which it characterized as "inapt." 760 F.2d at 682. There, plaintiffs sought a declaration that state laws providing for prejudgment seizure of plaintiffs' property were unconstitutional facially and as-applied. Rejecting abstention, the court emphasized that "no ruling by a state court interpreting the attachment statute has permitted the federal trial court to avoid ruling on whether [plaintiffs'] property had been seized, their livelihood restricted, and their business destroyed in violation of the procedural and substantive guarantees of the fourteenth amendment." *Id*. at 682. Both *Fowler* and *Traugber*, therefore, compel rejection of *Pullman* abstention.

17

2.       *Burford* and *Colorado River* Abstention Do Not Apply.

Apparently recognizing the problems with applying *Pullman*, the City tries to argue that abstention is also justified under two different—but equally inapplicable—abstention doctrines. Mot. at p. 18. Both arguments fail.

i.       *Burford Abstention Is Improper.*

*Burford* abstention is not warranted where, as here, there is no intricate state administrative system or risk of high-volume litigation. Mot. at p. 18. In *Burford v. Sun Oil Co.*, the Supreme Court discussed federal review of a Texas administrative scheme and rule regarding drilling permits. 319 U.S. 315, 317, 326 (1943). In abstaining from the case, the Supreme Court noted the potential "volume of litigation arising from the administration of the rule" and the importance of a unified body governing the expansive, complex state oil drilling industry at issue. *Id.* at 319, 324, 333-34. No such issues exist here. And, beyond a conclusory statement that *Burford* favors dismissal, the City does not apply the elements of *Burford* abstention it cites. The City does not identify "a difficult question of state law bearing on policy problems of substantial public import" or identify how the exercise of federal jurisdiction "would be disruptive of state efforts to establish a coherent policy." Mot. at p. 18. There are no principles underlying *Burford* abstention, namely, the "importance of a unified body making [] impactful decisions" and potential "conflict among interested parties" implicated to support abstention here.

ii.       *Colorado River Abstention Is Improper.*

This Court should not abstain under the *Colorado River* doctrine, which is disfavored and extraordinarily rare. Mot. at p. 18. "Only the clearest of justifications will warrant dismissal." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819 (1976). The factors considered in evaluating whether abstention under *Colorado River* is appropriate include: (1)

whether the state court has assumed jurisdiction over any *res* or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *PaineWebber, Inc. v. Cohen,* 276 F.3d 197, 206-07 (6th Cir. 2001) (citation omitted).

Regarding the first factor, the state court did not assert jurisdiction over any *res* or property, and thus this factor is not instructive. The second factor does not warrant abstention, as the federal forum is in the same location as the state forum. The third factor, the potential for piecemeal litigation, is not present. For example, in *Colorado River*, there was a "clear federal policy" that the state court systems were the preferred means for avoiding piecemeal litigation about water rights involving over 1,000 defendants. 424 U.S. at 819-20. Here, there is no such federal policy or numerous affected parties. To the contrary, as set forth above, adjudication of the Browns' Commerce Clause claims concerns an area of particular concern for the federal government. And the City has not explained why proceeding in federal court would generate additional litigation.

The City also does not draw support from the fourth factor regarding the order in which jurisdiction was obtained, or the seventh factor regarding the relative progress of the litigations. The Browns filed this action first. That the City filed a state action to buttress its abstention arguments does not give the City any unique interest in seeing its matter go forward at the expense of this action. As to the final two factors, federal law (the U.S. Constitution) entirely controls the Browns' chief claims and, thus, weighs heavily against abstention. *See Moses H. Cone*, 460 U.S. at 26 ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender."). Finally, the state court litigation may not adequately protect the Browns' interests.

19

Abstention by this Court could leave the Browns at risk of compliance obligations without any opportunity for this Court to address whether the Modell Law is constitutional in the first instance.

The City fails to justify the extraordinary step of surrendering jurisdiction to the state court under any abstention theory. The City offers nothing aside from a conclusory allegation that dismissal "would be wise indeed" under *Colorado River* and does not identify nor apply the relevant factors. Mot. at p. 18. But even if it had, the balance of factors does not present the extraordinary and "clear" circumstances warranting *Colorado River* abstention. 424 U.S. at 820.

**IV.    CONCLUSION**

For these reasons, this Court should deny the City's Motion to Dismiss.

DATED:        February 14, 2025

Respectfully submitted,

*/s/ Anthony C. White*
Anthony C. White (0062146)
Robert F. Ware (0055515)
Kip T. Bollin (0065275)
Thomas M. Ritzert (0085370)
Kyle A. Hutnick (0095673)
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Phone: (216) 566-5500
Fax: (216) 566-5800
Tony.White@ThompsonHine.com
Rob.Ware@ThompsonHine.com
Kip.Bollin@ThompsonHine.com
Thomas.Ritzert@ThompsonHine.com
Kyle.Hutnick@ThompsonHine.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically on February 14, 2025 and counsel of record will receive a notice of filing through the Court's electronic filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E) and this Court's Local Rules.

*/s/ Anthony C. White*
Anthony C. White (0062146)

## LOCAL RULE 7.1 CERTIFICATE

I certify that this case is unassigned and that this memorandum complies with the page limit of 20 pages pursuant to Local Rule 7.1.

*/s/ Anthony C. White*
Anthony C. White (0062146)