**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **CLEVELAND BROWNS FOOTBALL COMPANY LLC,** | ) | **Case No. 1:24-CV-01857** |
| | ) | |
| | ) | **Judge David A. Ruiz** |
| **Plaintiff,** | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| **v.** | ) | |
| | ) | |
| **THE CITY OF CLEVELAND,** | ) | |
| | ) | |
| **Defendant,** | ) | |
| | ) | |
| **THE STATE OF OHIO,** | ) | |
| | ) | |
| **Intervenor-Defendant.** | ) | |

**PLAINTIFF CLEVELAND BROWNS FOOTBALL
COMPANY LLC'S BRIEF IN OPPOSITION TO
INTERVENOR-DEFENDANT THE STATE OF OHIO'S MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u> <span style="float:right;">**Page**</span>

**TABLE OF AUTHORITIES** ......................................................................................... iv

**ISSUES PRESENTED** ............................................................................................... viii

**SUMMARY OF THE ARGUMENT** ........................................................................ ix

**I.    INTRODUCTION** ............................................................................................ 1

**II.   STATEMENT OF FACTS** ............................................................................. 3

    A.    The Parties Entered Into the HBF Lease and FCA in April 1996 ....................... 3

    B.    The Modell Law Was Enacted in June 1996. ...................................... 4

    C.    The City Seeks to Enforce the Modell Law Against the Browns ....................... 5

**III.  LAW AND ARGUMENT** ............................................................................... 5

    A.    The Extraordinary Remedy of Abstention Is Not Warranted .............................. 5

    B.    The Browns Properly State a Claim that the Modell Law Is Unconstitutional .... 10

        1.    The Browns Sufficiently State a Vagueness Challenge................................. 10

            *i.    "Elsewhere."* ......................................................................... 12

            *ii.    "Political Subdivision."* ......................................................... 13

            *iii.   "Opportunity."* ....................................................................... 14

            *iv.    "Reside in the Area."* ............................................................. 15

        2.    The Browns Sufficiently State a Claim that the Modell Law Violates the Contract Clause .................................................... 15

        3.    The Browns Properly State a Claim that the Modell Law Violates the DCC ................................................................. 16

    C.    The Browns' Claims Are Sufficient to Confer Supplemental Jurisdiction over Count IV .......................................................... 20

**IV.   CONCLUSION** ............................................................................................. 20

**LOCAL RULE 7.1 CERTIFICATE** ..................................................................... 21

**CERTIFICATE OF SERVICE** ............................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Afran v. McGreevey*,
115 Fed. App'x. 539 (3d Cir. 2004)........................................................................................6

*Allen v. McCurry*,
449 U.S. 90 (1980)......................................................................................................10

*Ambrose v. Village of Galena*,
2015-Ohio-3157 (5th Dist.) ..........................................................................................12

*American Motors Sales Corp. v. Runke*,
708 F.2d 202 (6th Cir. 1983) .........................................................................................8

*American Needle, Inc. v. NFL*,
560 U.S. 183 (2010).....................................................................................................18

*Associated Gen. Contractors of Ohio, Inc. v. Drabik*,
Case No. C2-98-943, 1998 U.S. Dist. LEXIS 22043 (S.D. Ohio Oct. 28, 1998).....................8

*AT&T Corp. v. Rudolph*,
No. 06-16, 2007 U.S. Dist. LEXIS 13962 (E.D. Ky. Feb. 27, 2007) ....................................19

*Baggett v. Bullitt*,
377 U.S. 360 (1964)......................................................................................................6

*Belle Maer Harbor v. Charter Twp. of Harrison*,
170 F.3d 553 (6th Cir. 1999) .......................................................................................12

*Bennafield v. Canton Police Dep't*,
856 F.2d 192 (6th Cir. 1988) .........................................................................................6

*Burch v. USDA*,
174 Fed. Appx. 328 (6th Cir. 2006).................................................................................11

*C & A Carbone v. Town of Clarkstown*,
511 U.S. 383 (1994).....................................................................................................16

*Camps Newfound/Owatonna, Inc. v. Town of Harrison*,
520 U.S. 564 (1977).....................................................................................................19

*City of Oakland v. Oakland Raiders*,
174 Cal. App. 3d 414 (Ct. App. 1985)......................................................................17, 18, 20

*Daniels Sharpsmart, Inc. v. Smith*,
No. l:17-cv-403-LJO-SAB, 2017 U.S. Dist. LEXIS 90840 (E.D. Cal. June 13,
2017) ....................................................................................................................................7

*Energy Reserves Group, Inc. v. Kansas Power & Light Co*.,
459 U.S. 400 (1983)...........................................................................................................15

*Foresight Coal Sales, LLC v. Chandler*,
60 F.4th 288 (6th Cir. 2023) .............................................................................................16

*Garber v. Menendez*,
888 F.3d 839 (6th Cir. 2018) .............................................................................................16

*General Motors Corp. v. Romein*,
503 U.S. 181 (1992)...........................................................................................................16

*GMC v. Tracy*,
519 U.S. 278 (1997)...........................................................................................................19

*Grayned v. City of Rockford*,
408 U.S. 104 (1972)...........................................................................................................11

*GTE North, Inc. v. Strand*,
209 F.3d 909 (6th Cir. 2000) ...............................................................................................8

*Guzman v. United States Dep't of Homeland Sec.*,
679 F.3d 425 (6th Cir. 2012) .............................................................................................14

*Harper v. PSC*,
396 F.3d 348 (4th Cir. 2005) ...............................................................................................7

*Harris Cnty. Comm'rs Court v. Moore*,
420 U.S. 77 (1975).............................................................................................................5

*Hawaii Hous. Auth. v. Midkiff*,
467 U.S. 229 (1984).............................................................................................................6

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982).........................................................................................................11

*Home Bldg. & Loan Ass'n v. Blaisdell*,
290 U.S. 398 (1934)...........................................................................................................16

*Houston v. Hill*,
482 U.S. 451 (1987).............................................................................................................9

*Hughes v. Alexandria Scrap Corp.*,
426 U.S. 794 (1976)......................................................................................................19, 20

iv

*Huish Detergents, Inc. v. Warren County*,
    214 F.3d 707 (6th Cir. 2000) ...............................................................19

*Jones v. Coleman*,
    848 F.3d 744 (6th Cir. 2017) ...............................................................5, 6

*Kendall-Jackson Winery, Ltd. v. Branson*,
    82 F. Supp. 2d 844 (N.D. Ill. 2000) .......................................................7

*Life Partners, Inc. v. Morrison*,
    484 F.3d 284 (4th Cir. 2007) .................................................................7

*United States ex rel. Martin v. Hathaway*,
    63 F.4th 1043 (6th Cir. 2023) ..............................................................14

*Martin-Marietta Corp. v. Bendix Corp.*,
    690 F.2d 558 (6th Cir. 1982) ..............................................................7, 8

*Memphis Ctr. for Reprod. Health v. Slatery*,
    No. 20-5969, 2020 U.S. App. LEXIS 36780 (6th Cir. Nov. 20, 2020) ...................................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1970).................................................................................6

*Nat'l Pork Producers Council v. Ross*,
    598 U.S. 356 (2023).......................................................................16, 17

*NCAA v. Alston*,
    141 S. Ct. 2141 (2021)........................................................................18

*NCAA v. Miller*,
    10 F.3d 633 (9th Cir. 1993) ............................................................18, 20

*New Energy Co. v. Limbach*,
    486 U.S. 269 (1988)...........................................................................20

*Oregon Waste Sys. v. Dep't of Envtl. Quality*,
    511 U.S. 93 (1994).............................................................................16

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970)...........................................................................17

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*,
    894 F.3d 235 (6th Cir. 2018) ..............................................................11

*Procunier v. Martinez*,
    416 U.S. 396 (1974)............................................................................7

*Railroad Comm'n of Texas v. Pullman Co.,*
    312 U.S. 496 (1941) ................................................................................................6

*Reeves, Inc. v. Stake,*
    447 U.S. 429 (1980) ..............................................................................................19

*Santa Fe Springs Realty Corp. v. City of Westminster,*
    906 F. Supp. 1341 (C.D. Cal. 1995) ....................................................................6

*SEC v. G. Weeks Secur., Inc.,*
    678 F.2d 649 (6th Cir. 1982) ..............................................................................14

*South-Central Timber Dev., Inc. v. Wunnicke,*
    467 U.S. 82 (1984) ..........................................................................................19, 20

*Sprint Commc'ns, Inc. v. Jacob,*
    571 U.S. 69 (2013) ................................................................................................5

*Traughber v. Beauchane,*
    760 F.2d 673 (6th Cir. 1985) ................................................................................8

*Truesdell v. Friedlander,*
    80 F.4th 762 (6th Cir. 2023) ..............................................................................17

*Tyler v. Collins,*
    709 F.2d 1106 (6th Cir. 1983) ........................................................................9, 10

*United States v. Edge,*
    989 F.2d 871 (6th Cir. 1993) ..............................................................................14

*Viviano v. City of Sandusky,*
    2013-Ohio-2813 (6th Dist.) ................................................................................13

*Wisconsin Dep't of Indus., Labor and Relations v. Gould Inc.,*
    475 U.S. 282 (1986) ............................................................................................20

*Ex parte Young,*
    209 U.S. 123 (1908) ..............................................................................................9

**Statutes/Other Authorities**

28 U.S.C. § 1367(a) ....................................................................................................20

28 U.S.C. § 2201 ........................................................................................................20

R.C. 9.67 .......................................................................................................... *passim*

R.C. 2744.01(F) ...............................................................................................13, 14, 15

**ISSUES PRESENTED**

1. Whether the Browns' constitutional challenges to the Modell Law, R.C. 9.67, should proceed before this Court notwithstanding the State's invocation of the inapplicable and inappropriate *Pullman* abstention doctrine when the City's state court complaint for breach of lease and to enforce the Modell Law does not involve any of the Browns' constitutional challenges, any ruling in the state case will not moot the Browns' constitutional challenges, and the Modell Law does not present any important state issues upon which the federal courts ought not to enter.

2. Whether the Amended Complaint sufficiently states a claim that the Modell Law is unconstitutionally vague when the statute fails to give guidance about what conduct the statute covers, when it is triggered, and what is required to comply, and invites or promotes arbitrary enforcement.

3. Whether the Amended Complaint sufficiently states a claim that the Modell Law violates the Contract Clause of the United States Constitution when the statute affects the Browns' rights under the relevant lease and franchise commitment agreement with the City and the NFL, respectively, both of which pre-date the enactment of the Modell Law.

4. Whether the Amended Complaint sufficiently states a claim that the Modell Law violates the Dormant Commerce Clause of the United States Constitution, facially and as-applied, when it alleges that the statute facially favors in-state economic interests by giving "individuals who reside in the area" special rights to purchase the Browns and creates substantial harm to interstate commerce by interfering with the symbiotic relationship among the Browns and other NFL teams and the nationwide uniformity of the NFL.

5. Whether this Court should exercise supplemental jurisdiction over Count IV in the Amended Complaint when the Browns' Amended Complaint sufficiently states claims in Counts I through III that the Modell Law is unconstitutional.

## SUMMARY OF THE ARGUMENT

1. This Court should decline the State's request for the disfavored and extraordinary remedy of abstention. The State Court Action will not moot the Browns' challenges to the Modell Law under the U.S. Constitution, as no construction of the Modell Law can remedy its constitutional defects. Resolution of the State Court Action is not helpful, or necessary, for this Court to adjudicate the Browns' federal claims.

2. The Modell Law is unconstitutionally vague because of its ambiguous and undefined terms. The terms of the Law are so unclear that a person of ordinary intelligence is not provided fair notice about what conduct is forbidden by the statute or how to comply with it. These ambiguities allow, even encourage, arbitrary enforcement by the government.

3. The Modell Law unconstitutionally infringes on the Browns' contract rights that existed before the Modell Law was enacted. The HBF Lease and the Franchise Commitment Agreement were effective as of April 26, 1996, and therefore predate the effective date of the Modell Law on June 20, 1996. The Modell Law substantially interferes with the Browns' rights under the HBF Lease, the FCA (and correspondingly the NFL Franchise Agreement) to relocate to a new stadium upon the natural expiration of the lease term, the non-relocation provisions in the Lease, and imposes requirements that interfere with the NFL Franchise Agreement.

4. The Modell Law violates the Dormant Commerce Clause by impermissibly favoring local prospective purchasers over others, and unconstitutionally interfering with interstate commerce and the interdependent relationship among NFL teams nationwide.

5. Since the Browns properly bring federal claims that the Modell Law is unconstitutional, this Court should exercise supplemental jurisdiction over the Browns' alternative state law claim that the Modell Law does not yet apply, and in any event, is satisfied by the HBF Lease because, as set forth in detail in the Amended Complaint, the HBF Lease contains freely bargained for contractual terms on relocation of the team, provides neither party to the lease the ability to unilaterally renew it, and calls for the leased premises to be surrendered to the City upon expiration.

## I.     INTRODUCTION

The Browns filed this action to protect the organization's rights guaranteed by the United States Constitution. Months later, the City filed suit in state court, in the case captioned *The City of Cleveland v. Haslam Sports Group, LLC, et al.*, Cuyahoga Cty. No. CV-25-110189 (the "State Court Action"), alleging that the Browns breached the HBF Lease with the City and violated the Modell Law. The following day, the State moved to dismiss this case, arguing that this Court should abstain from adjudicating the Browns' constitutional challenges to the Modell Law in favor of the State Court Action, even though the State is not a party to the State Court Action and even though the State Court Action involves the enforcement of the HBF Lease and the Modell Law, rather than the Browns' challenges under the U.S. Constitution. In the event this Court declines to abstain, the State nevertheless urges this Court to dismiss the Browns' constitutional claims. The State is wrong on both counts.

The State would have this Court avoid its duty and instead delegate the decision to the state court, by applying the disfavored and extraordinary remedy of abstention. But the State's favored state lawsuit (to which it is not even a party) cannot and would not clarify the Modell Law in a way that would resolve the Browns' federal constitutional claims. This Court should exercise its jurisdiction over this matter and address the constitutional claims.

When it does exercise that jurisdiction, the Court will ultimately find that the Amended Complaint more than satisfies the initial pleading requirements of Rule 12(b)(6). The Browns properly alleged the Modell Law is unconstitutionally vague, leaving the Browns and the general public to guess as to which individuals have a six-month opportunity to purchase the team, what that opportunity involves, and what facts trigger that six-month period of time. The Browns and the general public are left to guess at the whole point of such a requirement in the first instance, as

1

even the State concedes that the Modell Law does not require an actual sale of the team and does not confer purchaser-selection rights on the City. Moreover, even the State and City arrive at conflicting interpretations of the Modell Law in their initial filings.

The Browns properly state a claim under the Contract Clause of the United States Constitution based on contractual arrangements, such as the Lease for Huntington Bank Field and Franchise Commitment Agreement with the NFL, that predate passage of the Modell Law. The Modell Law makes no exceptions for instances where it may interfere with these pre-existing contractual rights and obligations. To illustrate the point, Attorney General Dave Yost was recently asked by local media about the Browns' argument that the Modell Law is not violated because the Browns plan to stay at Huntington Bank Field until the end of the term of the Lease. Attorney General Yost responded: "Well, hogwash … I don't think that that fundamentally changes the application. ***The law doesn't say anything about a lease***."[1] That comment effectively summarizes one of the Contract Clause violations at issue here—the Modell Law makes no exception for its interference with the terms of a freely negotiated, bargained for lease, which includes specific terms concerning relocation of the team, and which expires in 2029.

The Browns also properly state a claim that the Modell Law violates the Dormant Commerce Clause ("DCC") both on its face and as applied. The Modell Law facially discriminates against out-of-state potential buyers in favor of those in Ohio and inflicts substantial harm. Other courts, like in *Oakland Raiders*, discussed below, have recognized that government actions regulating NFL teams interfere with interstate commerce in violation of the DCC.

---

[1] https://fox8.com/news/i-team/ohio-attorney-general-speaks-out-on-browns-dome-legal-fight-i-team/ (last accessed Jan. 30, 2025) (emphasis added). The Browns cite to this article for illustrative purposes only, as the grounds for denying the State's 12(b)(6) arguments are rooted in the allegations set forth in the Browns' well-pleaded Amended Complaint as set forth herein.

Once again, Attorney General Yost's comments on this issue are telling. When asked about the fact that NFL rules require NFL owners to approve the sale of any team, and the Browns' arguments that the Modell Law interferes with NFL rules, Attorney General Yost responded: "You got it backwards. The law governs how people do business." *Id.* Thus, the Attorney General illustrates the Modell Law's violation of the Contract Clause, as the Franchise Commitment Agreement commits the team to abide by NFL rules (including rules governing sales and offers to sell NFL teams), as well as the DCC, as according to Attorney General Yost, the entire NFL (30 of the 32 franchises of which are located outside of Ohio) is bound by the Modell Law, which "governs how" they must "do business." The Motion should be denied.

## II.    STATEMENT OF FACTS

### A.    The Parties Entered Into the HBF Lease and FCA in April 1996.

In 1995, Art Modell moved the Browns from Cleveland to Baltimore.[2] Amd. Compl. at ¶ 30. In February 1996, the NFL announced it would approve a new NFL team to play home games in Cleveland. *Id.* at ¶ 31. On April 26, 1996, the City (as nominee for a to-be found New Owner (as defined in the HBF Lease) and the NFL entered into two agreements necessary to create a new team and stadium: the stadium lease (the "HBF Lease") and the Franchise Commitment Agreement ("FCA"). *Id.* at ¶¶ 32-34. The HBF Lease expires in 2029 and does not automatically renew, nor is any party obligated to renew it. *Id.* at ¶ 41. In fact, absent a mutually agreed renewal, the Browns' no longer have the right to use HBF in any way, as the Browns' only operational obligation upon expiration is to surrender the HBF premises to the City. *Id.*

---

[2] These facts are taken from the Browns' November 15, 2024 Amended Complaint (Doc. 12, "Amd. Compl.") and are presumed to be true for purposes of a motion to dismiss.

3

In the FCA, the NFL agreed to approve a new Cleveland NFL Franchise that would participate in the NFL's league structure and be subject to all of the NFL's bylaws and other rules, including the NFL's franchise agreement (the "NFL Franchise Agreement"). *Id*. at ¶¶ 33, 35-36. Under the NFL Franchise Agreement, the Browns are subject to contract terms concerning the ability to sell the team and ultimate approval by other NFL team owners of such a potential sale. *Id*. at ¶ 37. This agreement also requires the NFL to approve any decision to change stadiums or move the teams outside their home territory. *Id*. at ¶¶ 38-39. In September 1998, pursuant to the FCA, the Browns entered into the Expansion Franchise Agreement, providing rights to operate as a member of the NFL. *Id*. at ¶ 40. The Browns intend to perform all of their obligations under the HBF Lease, including the requirement to play all home games at HBF until they surrender the premises to the City when the HBF Lease expires in 2029. *Id*. at ¶ 42.

### B.    The Modell Law Was Enacted in June 1996.

In response to the team's move to Baltimore, R.C. 9.67, informally known as the "Modell Law," was enacted in June 1996. Amd. Compl. at ¶ 43. The Modell Law does not contain or incorporate any definitions of its vague operative terms. *Id.* at ¶ 45. For example, the Modell Law does not specify what is meant by "financial assistance," "political subdivision," "elsewhere," "notice," "opportunity," or "area." *Id.* at ¶¶ 46-47. Nor does the Modell Law require owners to actually sell the team, just to give the "opportunity" to purchase the team. *Id.* As the State points out, the government is not the final decision maker about who can purchase the team. Mot. at pp. 10-11. The Modell Law contains no exceptions for interference with any contract, like terms of a lease agreement with a negotiated end date, or a franchise agreement with a national sports league governing or restricting the sale or relocation of a team. Amd. Compl. at ¶ 52. It discriminates

against interstate commerce by providing "individuals who reside in the area" (i.e., in Ohio) with an opportunity to purchase the team, to the exclusion of individuals outside Ohio. *Id.* at ¶ 53.

C.    **The City Seeks to Enforce the Modell Law Against The Browns.**

In May 2024, the City passed an emergency ordinance authorizing its law director to enforce the Modell Law against the Browns. Amd. Compl. at ¶ 14. By October 2024, the City made clear that it would arbitrarily seek to enforce the Modell Law against the Browns years before the HBF Lease will expire in 2029. *Id.* The City Law Director admitted that the City's purpose in invoking the Modell Law is to give local purchasers a preference over those located in states other than Ohio, stating that the City was prepared to "file a lawsuit to require the Browns to make their team available for local purchasers who will keep the team in the City of Cleveland." *Id.* at ¶ 14.

III.    **LAW AND ARGUMENT**

A.    **The Extraordinary Remedy of Abstention Is Not Warranted.**

Abstention is not appropriate in this case. In Counts I-III, the Browns challenge the City's power to impose restrictions on the owners of professional sports teams (including the Browns), pursuant to a state law that does not provide fair notice as to those restrictions, in violation of the Due Process Clause, the Contract Clause, and the Commerce Clause of the U.S. Constitution. A central role of the federal judiciary is to adjudicate disputes—like this one—involving the United States Constitution. *Sprint Commc'ns, Inc. v. Jacob*, 571 U.S. 69, 77 (2013). Indeed, federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, even in the face of "parallel state-court proceedings." *Id.*

Abstention is "an extraordinary and narrow exception to the duty of a [d]istrict [c]ourt to adjudicate a controversy properly before it." *Jones v. Coleman*, 848 F.3d 744, 749 (6th Cir. 2017). Abstention should only be invoked in "special circumstances," *see Harris Cnty. Comm'rs Court*

*v. Moore*, 420 U.S. 77, 83 (1975), and "cannot be ordered simply to give state courts the first opportunity to vindicate the federal claim." *Zwickler*, 389 U.S. at 251. "[T]he mere difficulty of ascertaining or anticipating how state courts may rule on an issue is in and of itself an insufficient basis for a federal court to decline jurisdiction." *Bennafield v. Canton Police Dep't*, 856 F.2d 192 (6th Cir. 1988). This is because federal courts owe a duty to respect a plaintiff's "choice of a federal forum for the hearing and decision of his federal constitutional claims." *Zwickler*, 389 U.S. at 248. And questions of state law do not supersede "the primacy of the federal judiciary in deciding questions of federal law." *Id.* at 251-52. Thus, the balance weighs "heavily" in favor of exercising jurisdiction. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1970).

*Pullman* abstention exists to avoid "needless friction with state policies," and "a premature constitutional adjudication." *Jones*, 848 F.3d 744, 749 (citations omitted). Under *Railroad Comn'n of Texas v. Pullman Co.*, abstention is proper if the case involves a sensitive area of social policy where federal courts should not enter, 312 U.S. 496, 498 (1941), or "when difficult and unsettled questions of state law" must be resolved before the federal questions. *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984). *Pullman* abstention applies if the state law is subject to an interpretation that would make it unnecessary to decide a federal constitutional question. *Id.* Even then, abstention "is not an automatic rule applied whenever a federal court is faced with a doubtful issue of state law; it rather involves a discretionary exercise of a court's equity powers." *Baggett v. Bullitt*, 377 U.S. 360, 375 (1964). Therefore, "[a]mbiguity in state law will not, standing alone, require abstention." *Afran v. McGreevey*, 115 Fed. Appx. 539, 542 (3d Cir. 2004). And *Pullman* does not apply where constitutional issues, not state law, "are at the core of the [ ] controversy." *Santa Fe Springs Realty Corp. v. City of Westminster*, 906 F. Supp. 1341, 1354 (C.D. Cal. 1995).

When a government regulation or practice "offends a fundamental constitutional guarantee,

federal courts will discharge their duty to protect constitutional rights." *Procunier v. Martinez,* 416 U.S. 396, 404 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413-14 (1989); *see also Harper v. PSC*, 396 F.3d 348, 3557 (4th Cir. 2005) (The "Commerce power itself justifies a narrower view of state interests in the abstention context"); *Kendall-Jackson Winery, Ltd. v. Branson,* 82 F. Supp. 2d 844, 860-61 (N.D. Ill. 2000) (*Pullman* abstention not appropriate where challenge based on the Commerce Clause does not raise difficult questions of state law); *Life Partners, Inc. v. Morrison*, 484 F.3d 284, 300-01 (4th Cir. 2007) (no abuse of discretion in declining to abstain on Commerce Clause claim); *Daniels Sharpsmart, Inc. v. Smith*, No. l:17-cv-403-LJO-SAB, 2017 U.S. Dist. LEXIS 90840, at *11-17 (E.D. Cal. June 13, 2017) (abstaining from challenge under the Commerce Clause is generally inappropriate). Because there are no comity or federalism principles at issue here, and the Browns' claims raise "overwhelming federal interests," there is no basis for abstention.

*Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558 (6th Cir. 1982) is instructive. There, the plaintiff challenged Michigan's Take-Over Offers Act and Uniform Securities Act as violating the Commerce and Supremacy Clauses of the Constitution. *Id*. at 565. The district court abstained under *Pullman*, reasoning that whether plaintiff's acts constituted a "tender offer" under the statutes would moot plaintiff's constitutional claims. The Sixth Circuit reversed because there was "no construction which would remedy the constitutional defects which we find exist in the [Acts.]" *Id*. at 563. Importantly, the Acts imposed an "unconstitutional burden on interstate commerce" by setting requirements on tender offers that did not exist nationwide. *Id*. at 566. The court concluded "[t]here is no constitutionally acceptable interpretation of the Michigan statute which would permit the state defendants to interfere" with nationwide tender offers. *Id*. at 563. Thus, even though "[a]

7

Michigan circuit judge has now construed the Michigan statute to limit it … the Michigan statute, as applied, still impermissibly burdens interstate commerce." *Id*. at 567.

Similarly, in *Traughber v. Beauchane*, the Sixth Circuit reversed application of abstention, including under *Pullman,* which it characterized as "inapt." 760 F.2d 673, 681 (6th Cir. 1985). In *Traughber*, plaintiffs sought a declaration that state attachment laws providing for the prejudgment seizure of plaintiffs' property were unconstitutional on their face and as-applied. *Id.* at 675. In rejecting *Pullman* abstention, the court emphasized that "no ruling by a state court interpreting the attachment statute has permitted the federal trial court to avoid ruling on whether [plaintiffs'] property had been seized, their livelihood restricted, and their business destroyed in violation of the procedural and substantive guarantees of the fourteenth amendment." *Id*. at 682.

As in *Martin-Marietta* and *Traughber*, here there is "no constitutionally acceptable interpretation" of the Modell Law that would render it constitutional. *Martin-Marietta*, 690 F.2d at 563.[3] And as in *Traughber*, no ruling by an Ohio court interpreting the Modell Law will permit this Court to avoid ruling on whether the Browns' due process rights have been violated, their contract rights destroyed, and their business interests stifled, in violation of the Fourteenth Amendment, the Contract Clause and the Commerce Clause of the U.S. Constitution. 760 F.2d at 682. Simply put, there is no construction "that would eliminate the need to reach the federal question." *GTE North, Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir. 2000).

The State does not, and cannot, explain how a state court could clarify the Modell Law such that a ruling on the Browns' federal constitutional challenges would be unnecessary. The

---

[3] *See American Motors Sales Corp. v. Runke*, 708 F.2d 202 (6th Cir. 1983) (*Pullman* abstention not warranted despite disputes over the interpretation of a statutory term as the state court "could not reasonably construe" the term in a manner to avoid constitutional problems); *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, Case No. C2-98-943, 1998 U.S. Dist. LEXIS 22043, at *7 (S.D. Ohio Oct. 28, 1998) (*Pullman* abstention not warranted in federal constitutional challenge to Ohio statute: "While there may be undecided issues of statutory construction … a resolution of such issues would not dispose of the federal [constitutional] questions raised in this case.").

State, relying on *Pullman*, asks the Court to make the extraordinary decision to delegate application of the U.S. Constitution to an Ohio court, arguing that "[t]he Browns' federal questions are premised upon unanswered questions of state law" that should be decided by an Ohio court. Mot. at p. 4. But the State's argument relies on the Browns' *alternative* claim, mischaracterizes the Browns' complaint, is unsupported by *Pullman* and its progeny, and is overall without merit. This Court should not abstain from deciding this case.

In support of abstention, the State emphasizes that this "is only the second opportunity for an Ohio court to interpret and apply" the Modell Law, and that "Ohio courts should develop Ohio jurisprudence." Mot. at p. 5. But the fact that only one state court has interpreted the Modell Law does not change the abstention analysis. "If the statute is not obviously susceptible of a limiting construction, then even if the statute has never been interpreted by a state tribunal it is the duty of the federal court to exercise its properly invoked jurisdiction." *Houston v. Hill*, 482 U.S. 451, 468 (1987) (alterations omitted). Nor do "constitutional avoidance principles" (Mot. at p. 2) dictate that a state court ought to hear the claims first. The Supreme Court has long warned against surrendering jurisdiction simply because a constitutional issue is involved. *See Ex parte Young*, 209 U.S. 123, 143 (1908) ("The judiciary cannot, as the legislature may, avoid a measure because it approaches the confines of the Constitution.").

The State's citation to *Tyler v. Collins*, 709 F.2d 1106 (6th Cir. 1983) is inapposite. *Collins* involved challenges to Tennessee statutes that expanded the term "infamous crimes" in the existing disenfranchisement provision of Tennessee Constitution to those "convict[ed] by a jury of some infamous crime, previously ascertained and declared by law," and allowed for retroactive application. 709 F.2d at 1107-08. With respect to the first *Pullman* requirement, the unclear state law was the Tennessee constitution, and whether the phrase "previously ascertained and declared"

forbade retroactive application of the disenfranchisement statutes. *Id*. at 1108. The court emphasized that abstention was warranted where plaintiff "challenges the law under the state constitution" and such a case was pending before the Tennessee Supreme Court. *Id*. Moreover, the challenged "statute was part of an integrated scheme of constitutional provisions, statutes and regulations…[that,] as a whole, called for clarifying interpretation by the state courts." *Id*. As for the second *Pullman* requirement, the Tennessee Supreme Court decision would either entirely obviate or substantially modify the federal constitutional issues, as the federal claim argued that the Tennessee Constitution created a federal liberty interest. *Id*. at 1108. Finding both *Pullman* requirements satisfied, the Sixth Circuit held that principles of comity favored abstention. *Id*.

Unlike *Collins*, there is no "important issue of state constitutional law" warranting abstention or an "integrated scheme" of state statutes requiring a clarifying interpretation by a state court. There is just the Modell Law. Nor is there a state-court construction of the Modell Law that would eliminate or meaningfully change the constitutional challenge. The State fails to justify the extraordinary and generally disfavored step of surrendering its jurisdiction. If this Court finds abstention is nevertheless warranted, dismissal is not the proper remedy.[4]

## B.   The Browns Properly State a Claim that the Modell Law Is Unconstitutional.

### 1.   The Browns Sufficiently State a Vagueness Challenge.

The Browns properly state a claim that the Modell Law is unconstitutionally vague. It is a basic principle of due process that a statute is void for vagueness if its prohibitions are not clearly defined. *Memphis Ctr. for Reprod. Health v. Slatery*, No. 20-5969, 2020 U.S. App. LEXIS 36780,

---

[4] Notably, the Court in *Collins* found "appellants are still entitled to a federal forum for the adjudication of their federal claims, should the resolution of the state constitutional issue not obviate the need for such adjudication" and thus ordered a stay of the federal proceedings rather than a dismissal thereof. 709 F.2d at 1109; *see also Allen v. McCurry*, 449 U.S. 90, 101 n.17 (1980) (abstention under *Pullman* merely postpones the exercise of federal jurisdiction).

at *4-5 (6th Cir. Nov. 20, 2020) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)). The Browns challenge the constitutionality of R.C. 9.67 as applied.[5]

To properly state a vagueness challenge, the Browns need only allege that the relevant terms in the Modell Law either: (1) fail to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; or (2) authorize or even encourage arbitrary and discriminatory enforcement. *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court*, 894 F.3d 235, 452 (6th Cir. 2018). When determining whether a law provides sufficient notice to a person of ordinary intelligence, in the absence of state court guidance, courts examine "the words of the ordinance itself." *Id.*, 894 F.3d at 246.[6]

The Amended Complaint properly states a vagueness challenge sufficient to survive a motion to dismiss. The Browns allege that the Modell Law is unconstitutionally vague and does not provide the person of ordinary intelligence with notice as to what conduct is covered or what is required to comply. As the Browns allege, R.C. 9.67 vaguely requires the owner of a professional sports team that plays in a tax-supported facility, receives financial assistance, and relocates the team "elsewhere," to either: (i) enter into an agreement with the local political subdivision; or (ii) give "six months' advance notice of the owner's intention to cease playing most of its home games at the facility" and give individuals "who reside in the area" the "opportunity" to purchase the team. None of these terms provide a person of ordinary intelligence with sufficient notice as to

---

[5] As the Browns allege the Modell Law is unconstitutionally vague as applied, the State's discussion of criminal statutes and facial challenges to statutes implicating the first amendment are irrelevant. Mot. at pp. 7-8.

[6] The State's citation to *Burch v. USDA*, 174 Fed. Appx. 328 (6th Cir. 2006), only underscores the ambiguity in the Modell Law. The statute in *Burch* disqualified stores from the food stamp program if the store's personnel unlawfully trafficked food stamps. But the challenged term "trafficked" was defined in public assistance regulations. *Id.* at 333. Same with *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, where an ordinance requiring a license to sell items "designed or marketed" for use with illegal drugs contained guidelines explaining the types of products, like "roach clips," "pipes," and "paraphernalia." 455 U.S. 489 at syllabus, 493 (1982). Unlike these cases, the Modell Law does not have any definitions.

what conduct is covered by the statute or what is required to comply. Rather, such vague language invites the government to arbitrarily enforce the Modell Law.

        *i.*        *"Elsewhere."*

One term the Browns allege is unconstitutionally vague is "elsewhere." Courts within the Sixth Circuit have struck ordinances on vagueness grounds where they failed to sufficiently define the geographic scope of a statute. For example, in *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 555 (6th Cir. 1999), defendant township passed an ordinance that restricted the use of certain equipment used to prevent ice from forming around marinas within a "reasonable radius" around certain protected objects. *Id*. The court found the ordinance void for vagueness in part due to the "failure to include a definition of 'reasonable,'" making the law's scope vulnerable to subjective and "harsh and discriminatory enforcement." *Id*. at 558-59.

The Court in *Ambrose v. Village of Galena*, 2015-Ohio-3157 (5th Dist.), also struck down a zoning regulation as unconstitutionally vague. The Village's zoning law prohibited certain actions in "the triangle area" depicted upon an exhibit attached to the Village's Development Plan, but the phrase "triangle area" was not defined elsewhere in the zoning code. *Id*. at ¶¶ 34-35. In sustaining the vagueness challenge, the court took particular issue with the term "area" and noted that there was no clearly identified triangular subpart on the exhibit in question, which created "immediate uncertainty as to the extent of the restrictions." *Id*. at ¶ 36.

The Browns sufficiently allege that the term "elsewhere" is unconstitutionally vague. As the Browns allege, the Modell Law is not clear whether the term "elsewhere" refers to a team that relocates to any new stadium, or a different city, suburb, county, or state, and this complete lack of clarity leads to and even encourages its arbitrary enforcement against the Browns. Indeed, the City and the State demonstrate the statute's vagueness as they seemingly reached conflicting

12

opinions about the meaning of "elsewhere." The State concludes that "'elsewhere' means anywhere other than Huntington Bank Field." Mot. at p. 9. However, in its complaint in the State Court Action, the City suggests that the Modell Law would not apply, or at least would arbitrarily not have been enforced, if the Browns moved to another location in Cleveland. Specifically, the City indicated that it was discussing with the Browns an "alternative proposal to make a portion of the Burke Lakefront Airport available for construction of a new stadium and adjacent development. . ." Amd. Compl. at ¶ 38. The City, notably, does not mention the Modell Law in connection with the Burke option. According to the City's complaint, it was only when the Browns raised the Brook Park option that the City began invoking the Modell Law.[7] Compl. at ¶¶ 38-40. These conflicting interpretations by two parties ostensibly on the same side of this dispute show the exact kind of "unfettered discretion" that the vagueness doctrine prohibits. *See Viviano v. City of Sandusky,* 2013-Ohio-2813 (6th Dist.). Therefore, the Browns properly allege that "elsewhere" in the Modell Law is unconstitutionally vague for purposes of initial pleading.

ii.     *"Political Subdivision."*

The Browns also properly state a void for vagueness claim because the term "political subdivision" as used in the Modell Law is unclear and leads to or encourages discriminatory enforcement. The Modell Law is unconstitutionally vague as it is unclear which political subdivision(s) is or are relevant for purposes of receiving financial assistance and providing notice.

Again, the State's proffered definition of "political subdivision" demonstrates the statute's ambiguity even at the initial pleading stage. The State argues that the definition of "political subdivision" from R.C. 2744.01(F) applies. First, the Modell Law does not adopt the definition of

---

[7] The State and City implicitly argue that a new stadium 12 miles from the current location, in the same County, on land adjoining the City of Cleveland, and next to the City's main airport is "elsewhere." But they are of two minds about whether a buyer who happened to live at the new location would be from the "area," and thus a qualified purchaser under the law. *See infra.*

"political subdivision" from R.C. 2744.01(F) – or anywhere else in the Ohio Revised Code. Second, Chapter 2744 applies to tort liability and has no application here. Third, R.C. 2744.01(F) defines "political subdivision" to include *multiple* types of political subdivisions, including "a municipal corporation, township, county, or other body corporate. . . ." But the Modell Law requires an owner to give notice to "***the*** political subdivision in which the facility is located" and to give "***the*** political subdivision" or group of individuals the opportunity to purchase the team. R.C. 9.67 (emphasis added). The State's proffered definition leaves an open question of which political subdivision(s) is or are entitled to notice and an opportunity to purchase the team – here, that could mean the City or the County. The State's attempt to shoehorn a definition from elsewhere in the Revised Code underscores the Modell Law's ambiguity. Yet again the Browns have sufficiently alleged that the Modell Law is unconstitutionally vague for the 12(b)(6) stage.

### iii. *"Opportunity."*

The State claims that the "'opportunity to purchase' requirement is straight forward," yet fails to answer *any* of the uncertainties in the Amended Complaint, like how much a potential buyer must bring to the table, whether the buyer must keep the team in the same political subdivision or even same facility, or what exactly is the "opportunity" that must be afforded.[8] The State simply argues that the General Assembly's intent was to protect taxpayer investment – an unsupported allegation which, even if true, provides no clarity on what "opportunity to purchase" means.

---

[8] The State's citation to *United States ex rel. Martin v. Hathaway* 63 F.4th 1043, 1055 (6th Cir. 2023) is not relevant because that case involved the interpretation of "remuneration" in the Anti-Kickback Statute, not the term "opportunity." *SEC v. G. Weeks Secur., Inc.,* 678 F.2d 649, 652 (6th Cir. 1982). Similarly in *SEC v. G. Weeks Secur., Inc.,* 678 F.2d 649, 652 (6th Cir. 1982), the term "opportunity" was not defined nor even at issue beyond being tangentially mentioned in the context of a firm commitment contract. And *Guzman v. United States Dep't of Homeland Sec.,* 679 F.3d 425, 435 (6th Cir. 2012) did not involve any vagueness challenge at all. *United States v. Edge,* 989 F.2d 871, 878 (6th Cir. 1993) is irrelevant. There the court vacated a criminal drug sentence because the lower court used an overbroad definition of a marijuana "plant." *Edge* underscores how seemingly simple terms like "plant" or "opportunity" can become unclear when applied to a particular situation.

iv.     *"Reside in the Area."*

The Browns sufficiently allege that the term "reside in the area" is unconstitutionally vague. The Modell Law requires that an owner give an opportunity to purchase to "the political subdivision or any individual or group of individuals who reside in the area. . . ." R.C. 9.67. As the Browns allege, it is unclear whether that term applies to all residents of the City of Cleveland, Cuyahoga County, Northeast Ohio, or something else. Amd. Compl. at ¶ 80.

The State concludes that individuals who "reside in the area" are those who live in "the area around the City of Cleveland." As discussed above, the state's proffered definition of "political subdivision" from R.C. 2744.01(F) undermines that interpretation. HBF is located in two political subdivisions – the City and Cuyahoga County. So it is unclear which is "***the*** political subdivision" that applies. Potential buyers could "reside in the area" of the City, or "in the area" of Cuyahoga County. The City's approximate population is 362,000; the County's, 1.2 million.[9] Those are vastly different buyer pools (though both are exceedingly small pools when searching for potential purchasers of a multi-billion dollar organization), and the statute lends no guidance. The Browns have pointed to two possible definitions of this term, which lead to vastly different outcomes. This is sufficient to satisfy the Browns' burden at the initial pleading stage.

2.      The Browns Sufficiently State a Claim that the Modell Law Violates the Contract Clause.

The Browns sufficiently state a claim under the Contract Clause. Article I, Section 10 of the Constitution prohibits states from "impairing the Obligation of Contracts." To state a claim for violation of the Contract Clause, a plaintiff must allege that state law substantially impairs a contractual relationship. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400,

---

[9] https://www.census.gov/quickfacts/fact/table/clevelandcityohio/PST045224;
https://www.census.gov/quickfacts/fact/table/cuyahogacountyohio/PST045224.

411 (1983). The "substantial impairment" prong requires the plaintiff to allege (1) the existence of a contractual relationship; (2) a change in law that impairs that contractual relationship; and (3) that the impairment is substantial. *General Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992).

The Browns' Amended Complaint meets this standard. The Browns are a party, by assignment, to the April 26, 1996 HBF Lease and FCA pursuant to which the new team and stadium could be built. Both agreements pre-date the enactment of R.C. 9.67 in June 1996. The Browns alleged the existence of a contractual relationship in the HBF Lease and the FCA, and that both of those contracts predate the Modell Law (Amd. Compl. at ¶ 90), which substantially impairs those contracts. Amd. Compl. at ¶ 100. The State argues that the Browns have no Contract Clause violation because the Browns did not enter into the Expansion Franchise Agreement until September 1998. Mot. at p. 13.[10] But the Expansion Franchise Agreement is not the basis for the Browns' Contract Clause claim, nor is it even mentioned in that claim. Amd. Compl. at ¶¶ 89-104. The State somehow completely ignores the HBF Lease and FCA.

> 3.    The Browns Properly State a Claim that the Modell Law Violates the DCC.

To state a claim for a violation of the DCC, a plaintiff must allege that a statute discriminates against interstate commerce either: (1) facially, (2) purposefully, or (3) in practical effect. *C & A Carbone v. Town of Clarkstown*, 511 U.S. 383, 390 (1994); *Oregon Waste Sys. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99 (1994). This "antidiscrimination rule" is at the core of the DCC, *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 357 (2023), and if a law discriminates on its face, the courts apply strict scrutiny and will "almost always" find it invalid. *Garber v. Menendez*, 888 F.3d 839, 843 (6th Cir. 2018); *see also Foresight Coal Sales, LLC v. Chandler*, 60

---

[10] The State's citation to *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 429-30 (1934) is distinguishable because that case involved a statute designed to temporarily modify the time period for mortgage foreclosures during the Great Depression. The Modell Law does not implicate the same immediate safety and shelter needs.

F.4th 288, 295 (6th Cir. 2023) (discriminatory laws are "virtually *per se* invalid[.]").

As the Browns allege, the Modell Law discriminates against interstate commerce on its face, triggering the *per se* invalidity rule and application of strict scrutiny. The law expressly favors in-state economic interests by giving "individuals who reside in the area" special rights with respect to purchase of professional sports organizations (*see* R.C. 9.67), while not providing the same economic opportunities to individuals outside of the area and/or the state. *Nat'l Pork Producers*, 143 S. Ct. at 1153 (the Commerce Clause prohibits "the enforcement of state laws driven by economic protectionism – that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.") (internal marks omitted).

Even if a law is not facially discriminatory, a plaintiff can allege a violation of the DCC if the statute inflicts a "substantial harm" on interstate commerce. *Truesdell v. Friedlander*, 80 F.4th 762, 768 (6th Cir. 2023); *Nat'l Pork Producers*, 143 S. Ct. at 1162-63. A statute violates the DCC if its grasp is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970).

Statutes that interfere with professional and collegiate sports inflict substantial harm on interstate commerce. In *City of Oakland v. Oakland Raiders*, 174 Cal. App. 3d 414, 422 (Ct. App. 1985), the Raiders announced their intention to relocate to Los Angeles, and the City of Oakland began eminent domain proceedings to take ownership of the team. *Id*. In finding that the taking violated the DCC, the court reasoned that, since all of the teams in the NFL are part of a "joint venture," *id*. at 420, interfering with one team would impact all others, leading to interstate economic consequences. As evidence of the "interdependent character" of the NFL, the *Oakland* court highlighted how changes at the team level could affect "lease agreements, ticket prices, concessions, stadium amenities, scheduling conflicts, etc." on a national scale and "the threat of

its exercise elsewhere would seriously disrupt the balance of economic bargaining on stadium leases throughout the nation." *Id.* at 421. Similarly in *NCAA v. Miller*, 10 F.3d 633, 637 (9th Cir. 1993), a statute imposing due process requirements for student athletes violated the DCC because it regulated NCAA hearings. *Id.* at 641. The court emphasized the interstate nature of the NCAA and the importance for uniform rules of competition for a sports league. *Id.* at 639.

The Browns properly alleged that the Modell Law interferes with interstate commerce and that decisions about the Browns' future stadium will have an impact on interstate commerce. Amd. Compl. at ¶¶ 22-29. NFL teams have a symbiotic relationship where each member team's success or drawing power financially affects other teams in the national league. For example, decisions about the quality and capacity of NFL stadiums affect things like ticket sales and prices, which in turn affects other teams nationwide. As the *Oakland Raiders* court noted, the Modell Law interferes with this relationship in a way that could "seriously disrupt the balance of economic bargaining on stadium leases throughout the nation." *Id.* at 420. The need for uniform rules of competition in national sports has been consistently reaffirmed. *See, e.g., NCAA v. Alston*, 141 S. Ct. 2141, 2156 (2021) ("Without some agreement among rivals . . . the very competitions that consumers value would not be possible."); *American Needle, Inc. v. NFL,* 560 U.S. 183, 202 (2010) (declining to apply antitrust law to the NFL due to "the special characteristics of this industry [which] may provide a justification for many kinds of agreements.").[11]

The State claims that the Browns are asserting a claim on behalf of some hypothetical out-of-state rival.[12] But the Browns are asserting their own rights. The Browns are harmed by the

---

[11] The State simplistically claims that relocating from one city in Cuyahoga County to another is wholly intrastate commerce. Mot at p. 14. This ignores the allegations that the Modell Law discriminates against individuals who live outside Ohio by requiring "individuals who reside in the area" be provided with the opportunity to purchase the team. Amd. Compl. at ¶ 53. The Browns also alleged the financially interdependent nature of NFL teams. For example, the capacity and quality of a team's stadium impacts ticket sales and prices, which affects revenues for the other 31 NFL member teams nationwide. *Id.* at ¶¶ 22-29. The State ignores these facts in its argument.

Modell Law's requirement that they must provide an opportunity for buyers "in the area" to purchase the team. NFL teams are valued at and selling for many billions of dollars. Any law limiting the Browns' access to potential purchasers based upon residence, *i.e.*, limits purchasers to the 362,000 people who live in Cleveland, and detrimentally impacts the franchise's value. Such as an injury to an in-state resident like the Browns gives rise to a DCC claim.[13]

The State's market participant argument also cannot overcome the allegations in the Browns' DCC claim. Under the market participant doctrine, "a State acting in its proprietary capacity as a purchaser or seller may 'favor its own citizens over others.'" *Camps Newfound/Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 592-93 (1977) (quoting *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 810 (1976)); *see also Reeves, Inc. v. Stake*, 447 U.S. 429 (1980) (describing the state's action qualifying it for the market participant doctrine as a "proprietary action"). The State represents the market participant doctrine as some unlimited protection where "the government is free to impose conditions" however it chooses. This is incorrect. A state can "go no further" than imposing burdens "within the market in which it is a participant[.]" *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82 (1984). The government cannot be acting as a market participant in the context of the Modell Law because neither the City nor the State can buy the team. As the City's own Law Director acknowledges, NFL rules prohibit cities from purchasing NFL teams. Amd. Compl. at ¶ 60, n.3.

Further, the market participant doctrine does not apply where the government acts as a *market regulator*. A government is a market regulator if it imposes conditions that "have

---

[13] *See AT&T Corp. v. Rudolph*, No. 06-16, 2007 U.S. Dist. LEXIS 13962, *25 (E.D. Ky. Feb. 27, 2007) (in-state consumer whose access to out-of-state goods was restricted has been injured in a manner protected under the DCC) (citing *Huish Detergents, Inc. v. Warren County*, 214 F.3d 707, 710-11 (6th Cir. 2000) (waste generator subject to local regulation requiring it to send all of its waste to designated facility for processing had standing under the DCC because it sought "to protect its right to contract with a company that can transport its waste for out-of-state processing and/or disposal"); *GMC v. Tracy*, 519 U.S. 278, 286 (1997) (in-state consumer had standing to raise a DCC challenge where it was forced to pay a state tax only for products produced by out-of-state companies).

substantial regulatory effects outside of that particular market."[14] Here, the Modell Law codifies the State's discrimination against out-of-state potential buyers in favor of those in Ohio. This kind of discrimination goes far beyond the State's authority to act as a market participant. As demonstrated by cases like *Oakland Raiders* and *Miller*, this preference for in-state potential buyers has "substantial regulatory effects" nationally.[15] Therefore, the State's interference goes beyond permissible market participation and is impermissible market regulation.

### C.    The Browns' Claims Are Sufficient to Confer Supplemental Jurisdiction over Count IV.

Since the Browns sufficiently alleged constitutional challenges to the Modell Law in Counts I through III, this Court has supplemental jurisdiction over Count IV. In the alternative to the constitutional claims in Counts I through III, Count IV asks this Court to declare that the Modell Law does not apply. This Court has supplemental jurisdiction to hear Count IV pursuant to 28 U.S.C. §§ 1367(a) and 2201. Amd. Compl. at ¶ 19. As shown above, the Browns sufficiently pled Counts I through III, so this Court can exercise supplemental jurisdiction over Count IV.

## IV.    CONCLUSION

For these reasons, this Court should deny the State's Motion to Dismiss.

---

[14] *South-Central Timber Development, Inc. v. Wunnicke*, 467 U.S. 82, 97-98 (1984) (plurality opinion) ("A state may not 'impose substantial burdens on interstate commerce even if they act with the permissible purpose of fostering local industry.'"); *Wisconsin Dep't of Indus., Labor and Relations v. Gould Inc.*, 475 U.S. 282, 289 (1986) (finding the state was a market regulator, not a participant, when it prohibited state purchases from repeat labor law violators because such action was "tantamount to regulation"); *New Energy Co. v. Limbach*, 486 U.S. 269, 277-78 (1988) (finding Ohio's tax credit to ethanol producers was not a market participant activity).

[15] The Modell Law goes far beyond the market participant activity in *Hughes*, *White*, and *Davis*, cited by the State. In *Hughes*, the court upheld Maryland's financial incentive for scrap processed in Maryland in part because the state did not prohibit or regulate the flow of materials. Here, the Modell Law was passed when the Browns left Ohio and the State claims the statute prevents other teams "from doing the same." Mot. at p. 17. In *White*, the court affirmed the City of Boston's policy that public construction projects use at least 50% city residents of the city. However, the *White* court noted that a similar "Alaska Hire" law was struck down where Alaska's only role in the market was owner of natural resources. The City's role in the market (if any) is more akin to Alaska's ownership of natural resources. And in *Davis*, a tax exemption for in-state municipal bonds was affirmed because the government was a market participant in the market for public bonds. Unlike *Davis*, the Modell Law regulates the market of potential buyers of professional sports teams, where neither the State nor the City are potential buyers.

DATED:      February 14, 2025

                                                    Respectfully submitted,

                                                    */s/ Anthony C. White*
                                                    Anthony C. White (0062146)
                                                    Robert F. Ware (0055515)
                                                    Kip T. Bollin (0065275)
                                                    Thomas M. Ritzert (0085370)
                                                    Kyle A. Hutnick (0095673)
                                                    THOMPSON HINE LLP
                                                    3900 Key Center
                                                    127 Public Square
                                                    Cleveland, OH 44114
                                                    Phone: (216) 566-5500
                                                    Fax: (216) 566-5800
                                                    Tony.White@ThompsonHine.com
                                                    Rob.Ware@ThompsonHine.com
                                                    Kip.Bollin@ThompsonHine.com
                                                    Thomas.Ritzert@ThompsonHine.com
                                                    Kyle.Hutnick@ThompsonHine.com
                                                    *Attorneys for Plaintiff*

## LOCAL RULE 7.1 CERTIFICATE

I certify that this case is unassigned and that this memorandum complies with the page limit of 20 pages pursuant to Local Rule 7.1.

                                                    */s/ Anthony C. White*
                                                    Anthony C. White (0062146)

21

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically on February 14, 2025 and counsel of record will receive a notice of filing through the Court's electronic filing system in accordance with Fed. R. Civ. P. 5(b)(2)(E) and this Court's Local Rules.

*/s/ Anthony C. White*
Anthony C. White (0062146)