**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLEVELAND BROWNS FOOTBALL COMPANY LLC, | ) | CASE NO. 1:24-CV-01857 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF CLEVELAND, | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| Defendant, | ) | |
| | ) | Reply Brief in Support of Motion to Dismiss |
| STATE OF OHIO, | ) | |
| | ) | **ORAL ARGUMENT REQUESTED** |
| Intervenor. | ) | |

**REPLY BRIEF IN SUPPORT OF**
**DEFENDANT CITY OF CLEVELAND'S**
**MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 4

I.    THIS COURT LACKS JURISDICTION TWICE OVER. ................................. 4

    A.    The Amended Complaint Offers No Basis For Federal Jurisdiction. ................... 4

        1.    The Browns' pleaded basis for federal-question jurisdiction—the Declaratory Judgment Act—does not confer jurisdiction. ....................... 5

        2.    The Browns' opposition-brief theory for federal-question jurisdiction—the Constitution at large—does not confer jurisdiction. ....................................................................................... 6

    B.    The Browns Lack Article III Standing................................................................. 12

II.    THIS COURT SHOULD NOT REACH THE MERITS EVEN IF IT COULD. ............ 15

    A.    The Court Should Dismiss Under The Declaratory Judgment And For Comity....................................................................................................................... 16

    B.    Abstention Principles, Especially *Pullman*, Also Require Dismissal.................. 17

CONCLUSION...................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accord v. Anderson County*,
   2022 WL 16825411 (6th Cir. Nov. 8, 2022)...........................................................8, 9

*Am. Motors Sales Corp. v. Runke*,
   708 F.2d 202 (6th Cir. 1983) ...............................................................................19

*AmSouth Bank v. Dale*,
   386 F.3d 763 (6th Cir. 2004) ...............................................................................16

*Armatas v. Pulmonary Physicians, Inc.*,
   2021 U.S. App. LEXIS 35836 (6th Cir. 2021) .......................................................9

*Armatas v. Pulmonary Physicians, Inc. of Canton*,
   2021 WL 4339841 (N.D. Ohio Sept. 22, 2021).......................................................6

*Arpin v. Santa Clara Valley Transp. Agency*,
   261 F.3d 912 (9th Cir. 2001) ...............................................................................10

*Azul-Pacifico, Inc. v. City of Los Angeles*,
   973 F.2d 704 (9th Cir. 1992) .........................................................................2, 7, 9

*Baggett v. Bullitt*,
   377 U.S. 360 (1964)............................................................................................18

*Bennafield v. City of Canton Police Dep't*,
   856 F.2d 192 (6th Cir. 1988) .................................................................................9

*Brown v. Tidwell*,
   169 F.3d 330 (6th Cir. 1999) .........................................................................19, 20

*California v. Texas*,
   593 U.S. 659 (2021)......................................................................................6, 14

*Callahan v. Fed. Bureau of Prisons*,
   965 F.3d 520 (6th Cir. 2020) ...............................................................................11

*Cath. Health Partners v. CareLogistics, LLC*,
   973 F. Supp. 2d 787 (N.D. Ohio 2013)................................................................16

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
  511 F.3d 535 (6th Cir. 2007) ................................................................16

*City of Saginaw v. Serv. Emps. Int'l Union, Loc. 446-M*,
  720 F.2d 459 (6th Cir. 1983) ..................................................................6

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013).............................................................................15

*Crum v. Miss. Mun. Serv. Co.*,
  1998 U.S. Dist. LEXIS 1297 (N.D. Miss. Jan. 12, 1998).....................11

*Dates v. Buchanan*,
  2024 U.S. Dist. LEXIS 30485 (S.D. Ohio Feb. 22, 2024).....................11

*Davis v. United States*,
  499 F.3d 590 (6th Cir. 2007) ..................................................................5

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
  438 U.S. 59 (1978)................................................................................11

*Dyck-O'Neal, Inc. v. Smith*,
  2023 WL 5021186 (N.D. Ohio July 21, 2023) ........................................6

*Egbert v. Boule*,
  596 U.S. 482 (2022)..........................................................................9, 11

*Energy Terminal Servs. Corp. v. N.Y. State Dep't of Envtl. Conservation*,
  1981 U.S. Dist. LEXIS 18415 (E.D.N.Y. June 19, 1981) ........................5

*Fialka-Feldman v. Oakland Univ. Bd. of Trustees*,
  639 F.3d 711 (6th Cir. 2011) ..........................................................13, 14

*Foster v. Michigan*,
  573 F. App'x 377 (6th Cir. 2014) ...................................................1, 2, 9

*Gulf Offshore Co. v. Mobil Oil Corp.*,
  453 U.S. 473 (1981)..............................................................................17

*Haaland v. Brackeen*,
  599 U.S. 255 (2023)........................................................................12, 13

*Hamdi v. Napolitano*,
  620 F.3d 615 (6th Cir. 2010) ........................................................5, 6, 11

iii

*Harris Cnty. Comm'rs Ct. v. Moore*,
420 U.S. 77 (1975)........................................................................................19

*Harrison v. NAACP*,
360 U.S. 167 (1959)....................................................................................2, 18

*Hearth, Inc. v. Dep't of Pub. Welfare*,
617 F.2d 381 (5th Cir. 1980) ........................................................................10

*Hernandez v. Mesa*,
589 U.S. 93 (2020)........................................................................................11

*Huish Detergents, Inc. v. Warren County*,
214 F.3d 707 (6th Cir. 2000) ..........................................................................9

*Innovation Ventures, LLC v. CB Distribs., Inc.*,
652 F. Supp. 2d 841 (E.D. Mich. 2009).........................................................17

*Jett v. Dallas Indep. Sch. Dist.*,
491 U.S. 701 (1989).........................................................................................7

*Kaminski v. Coulter*,
865 F.3d 339 (6th Cir. 2017) ...........................................................................8

*Kentucky v. Graham*,
473 U.S. 159 (1985).........................................................................................8

*Lawson v. Hill*,
368 F.3d 955 (7th Cir. 2004) .........................................................................14

*Louisville & Nashville R.R. Co. v. Mottley*,
211 U.S. 149 (1908).........................................................................................6

*Marek v. Navient Corp.*,
2016 WL 11264709 (N.D. Ohio Dec. 6, 2016) ...............................................5

*Martin-Marietta Corp. v. Bendix Corp.*,
690 F.2d 558 (6th Cir. 1982) .........................................................................18

*Martinez v. California*,
444 U.S. 277 (1980).......................................................................................10

*McLemore v. Gumucio*,
2023 WL 4080102 (6th Cir. June 20, 2023) ..................................................18

*Mich. Corr. Org. v. Mich. Dep't of Corr.*,
  774 F.3d 895 (6th Cir. 2014) ....................................................................2, 7, 9, 12

*Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n*,
  287 F.3d 568 (6th Cir. 2002) .................................................................................6

*Miller v. Bruenger*,
  949 F.3d 986 (6th Cir. 2020) .................................................................................6

*Mitchell v. City of Houston*,
  2003 WL 147729 (5th Cir. 2003) .........................................................................10

*Mitchum v. Foster*,
  407 U.S. 225 (1972) ...............................................................................................8

*Monell v. Dep't of Soc. Servs. of City of New York*,
  436 U.S. 658 (1978) ...............................................................................................7

*Montero v. Davis*,
  283 F. App'x 206 (5th Cir. 2008) .........................................................................10

*Musson Theatrical, Inc. v. Fed. Exp. Corp.*,
  89 F.3d 1244 (6th Cir. 1996) ...............................................................................10

*NanoLogix, Inc. v. Novak*,
  2013 WL 6443376 (N.D. Ohio Dec. 9, 2013) ......................................................16

*Noatex Corp. v. King Const. Co. of Hous., LLC*,
  609 F. App'x 164 (5th Cir. 2015) .........................................................................10

*Noatex Corp. v. King Constr. of Hous. LLC*,
  74 F. Supp. 3d 764 (N.D. Miss. 2014) .................................................................10

*Pennzoil Co. v. Texaco, Inc.*,
  481 U.S. 1 (1987) .................................................................................................19

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
  344 U.S. 237 (1952) .............................................................................................16

*R.R. Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496 (1941) ..................................................................................... *passim*

*Roath v. Lee*,
  2019 WL 3066533 (M.D. Tenn. July 12, 2019) .....................................................9

*Saint Vil v. Perimeter Mortg. Funding Corp.*,
630 F. App'x 928 (11th Cir. 2015) ..................................................................11

*Sanders v. Prentice-Hall Corp.*,
1999 WL 115517 (6th Cir. Feb. 8, 1999) ..........................................................9

*Santa Fe Springs Realty Corp. v. City of Westminster*,
906 F. Supp. 1341 (C.D. Cal. 1995) .............................................................9, 20

*Skelly Oil Co. v. Phillips Petrol. Co.*,
339 U.S. 667 (1950) ..............................................................................5, 6, 10

*Smith v. Kentucky*,
36 F.4th 671 (6th Cir. 2022) ..................................................................8, 9, 10

*Spector Motor Serv. v. McLaughlin*,
323 U.S. 101 (1944) ...................................................................................3, 15

*State v. Burnett*,
755 N.E.2d 857 (Ohio 2001) .........................................................................13

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) .........................................................................................13

*Steffel v. Thompson*,
415 U.S. 452 (1974) .........................................................................................8

*Thomas v. Shipka*,
818 F.2d 496 (6th Cir. 1987) .......................................................................2, 8

*Tice v. Bos. Sci. Corp.*,
2023 WL 360983 (N.D. Ohio 2023) ................................................................8

*Toledo v. Jackson*,
485 F.3d 836 (6th Cir. 2007) ...........................................................................5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .......................................................................................14

*Traughber v. Beauchane*,
760 F.2d 673 (6th Cir. 1985) .........................................................................18

*Vonderhaar v. Vill. of Evendale*,
906 F.3d 397 (6th Cir. 2018) .........................................................................13

*Warthman v. Genoa Twp. Bd. of Trustees*,
  549 F.3d 1055 (6th Cir. 2008) ...........................................................8

*Wax'n Works v. City of St. Paul*,
  213 F.3d 1016 (8th Cir. 2000) .........................................................10

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989)..............................................................................7

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*,
  16 F. App'x 433 (6th Cir. 2001) .......................................................16

*Ziglar v. Abbasi*,
  582 U.S. 120 (2017)...........................................................................11

*Zwickler v. Koota*,
  389 U.S. 241 (1967)...........................................................................20

**STATUTES**

28 U.S.C. § 1331............................................................................................4

28 U.S.C. § 1343............................................................................................7

28 U.S.C. § 2201..............................................................................5, 15, 16

42 U.S.C. § 1983...................................................................................*passim*

Ohio Rev. Code § 9.67..................................................................................3

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12..........................................................................................9

17A Wright & Miller, Fed. Prac. & Proc. Juris. § 4242 (3d ed. July 2024 update) ...............18, 19

# INTRODUCTION

The Browns rushed to federal court to try to preempt the City of Cleveland from enforcing the Modell Law where this dispute belongs: in state court. Their race to the federal courthouse resulted in a facially defective complaint that fails to even allow this Court to reach the merits. The Browns are not used to being a plaintiff, true enough—far less a plaintiff in a federal case claiming violations of their constitutional rights. But that can be no excuse for the Browns' failure to grasp the basics of Federal Courts. The Browns are reportedly worth more than $5 billion, they have retained counsel, and yet their pleading failures are fundamental.

Rash filing of a complaint, moreover, is one thing; the Browns' strident opposition to the City's motion to dismiss is quite another. The Browns should have confessed error on their amended complaint's basic mistakes and duked it out with the City in state court. But rather than showing that humility, the Browns doubled down—and doubled down some more. Hastiness cannot explain away the Browns' contortion—and outright omission—of the governing law in their attempt to explain away the complaint's deficiencies. This Court should promptly dismiss.

***Jurisdiction.*** Inexplicably, the Browns' operative complaint relied *only* on the Declaratory Judgment Act as a basis for federal jurisdiction under § 1331. Am. Compl. ¶ 18. But when the City pointed out that the Supreme Court, Sixth Circuit, and this Court have all held that the Declaratory Judgment Act does not confer jurisdiction on federal courts (Doc. 25 (Mot.) at 10–12), the Browns tried to constructively amend their complaint—not by moving for leave but by arguing for a different theory in their opposition brief. The Browns' new theory, though, is perhaps worse than their first. They now insist that there is federal-question jurisdiction because their complaint, "on its face, [] alleges violations of . . . the U.S. Constitution." Doc. 26 (Opp.) at vii. But that theory has been dead for decades. The Supreme Court and Sixth Circuit have "long held" that plaintiffs cannot have their constitutional claims answered simply by invoking the

1

Constitution. *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014) (collecting cases). They need a valid and existing right of action. *Id.* For lawsuits against a city alleging a violation of constitutional rights, that right of action is § 1983. *Thomas v. Shipka*, 818 F.2d 496, 503 (6th Cir. 1987) (overruled on other grounds). But the Browns failed to invoke § 1983 or any other right of action. "No private right of action means no underlying lawsuit"—and "[n]o underlying lawsuit means no jurisdiction." *Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014); *see, e.g.*, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992).

***Abstention.*** It turns out, too, that the Browns' pleading failures on jurisdiction are just the tip of the iceberg. The Browns apparently cannot make up their mind about whether to admit they are in open violation of the Modell Law—and so they continue to maintain that this state law does not even *apply* to them. *See* Am. Compl. ¶¶ 122–31 (Count IV). But this hedging creates an independent problem: If a court (and it would need to be an Ohio state court) were to agree with them that the Modell Law does not apply here, the Browns would win—and be able to abandon the City and move to Brook Park unimpeded by state law. Any other determinations on any other claims by the Browns would not only be unnecessary, but would be *improper*, with the Browns having no injury left to be remedied. All this is to say that *Pullman* abstention could not apply more plainly: according to the Browns themselves, the Modell Law "might then not even apply to [them]." *Harrison v. NAACP*, 360 U.S. 167, 177 (1959). Especially with a state court geared up to resolve these potentially dispositive state-law issues, *City of Cleveland v. Haslam Sports Group, LLC*, CV-25-110189 (Ohio Ct. C.P. Cuyahoga Cnty.), why should—indeed, *how can*—this Court rush to decide the constitutional claims? Doing so would violate the "one doctrine more deeply rooted than any other in the process of constitutional adjudication": that courts should not "pass

on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 104–05 (1944). It is anything but unavoidable here.

**Merits.** And none of this even gets into the merits—on which, to be clear, the City agrees with the State. Just because the City chose to move to dismiss on the simplest-to-resolve, threshold grounds (jurisdiction, declaratory-judgment discretion, and abstention) does *not* mean that the City "implicitly acknowledges" that the Browns' constitutional claims are "well pled and colorable." *Contra* Opp. 2. They absolutely are not, for the reasons explained by the State (and then some). *See* Doc. 24. Take, as just one example, the Browns' argument that "elsewhere" in the statute is not just ambiguous but *void for vagueness*. The Modell Law provides that an Ohio professional sports team that plays in "a tax-supported facility" shall not "cease playing most of its home games at the facility and begin playing most of its home games *elsewhere*" without complying with the Modell Law's requirements (such as obtaining the City's consent). Ohio Rev. Code § 9.67 (emphasis added). That provision is not even *ambiguous*, much less unconstitutionally vague. "Elsewhere" *obviously* means any place other than the "tax-supported facility." *Id.*; *see* Doc. 24 at 9. (And so, yes, the Browns would have to comply with the Modell Law if they moved "elsewhere" in Cleveland (such as to Burke), *contra* Doc. 27 (State Opp.) at 13; but such a move *would* comply with the Modell Law because the City would "permit[]" them to play at *that* location. Ohio Rev. Code § 9.67(A).) Shockingly, this is the Browns' lead argument, suggesting they think it is their strongest. That is an indictment on their whole case. For present purposes, though, suffice it to say that the Browns' constitutional arguments—which will be fully litigated as the Browns' defenses to the state-court lawsuit, *contra* Opp. 5—are half-baked at best.

So in the end, the Browns have made it easy on this Court. Their rush to find what they perceived to be a more favorable forum backfired, badly. They have not even presented this Court

with a complaint it can entertain.  And they have not given this Court any reason to needlessly forge ahead.  This Court should instead dismiss and let the state courts sort out whether the Browns' unwillingness to follow a duly enacted Ohio law—one the Haslams themselves used to buy the Columbus Crew—comes with any consequences.

## ARGUMENT

This Court lacks jurisdiction.  And even if it had jurisdiction, two lines of precedent—under the Declaratory Judgment Act and under the Supreme Court's abstention doctrines—weigh dispositively against this Court resolving the potentially unnecessary constitutional issues.  None of the Browns' contrary arguments fixes these defects; in fact, they only make them worse.

## I.  THIS COURT LACKS JURISDICTION TWICE OVER.

The Browns barely dispute the ground on which the City moved to dismiss—that the Declaratory Judgment Act does not confer jurisdiction.  Instead, apparently now realizing this defect, the Browns offer a new basis for jurisdiction—that they are suing *directly* under the Constitution.  But that unpled ground is foreclosed by binding precedent:  A plaintiff needs a legitimate right of action to sue a city under the Constitution.  And this is not the Browns' only problem:  Seeking only a declaration that will not redress their injury, the Browns lack standing.

### A.  The Amended Complaint Offers No Basis For Federal Jurisdiction.

The Browns agree that they bear the burden to convince this Court that it has jurisdiction.  Mot. 9.  They agree that their only pleaded basis for jurisdiction is federal-question jurisdiction, not diversity.  *See* 28 U.S.C. § 1331.  And they agree (as they must) that, in the complaint's only paragraph on § 1331, the Browns invoke only the Declaratory Judgment Act.  Am. Compl. ¶ 18.

**1.    The Browns' pleaded basis for federal-question jurisdiction—the Declaratory Judgment Act—does not confer jurisdiction.**

The question thus becomes:  Does the Declaratory Judgment Act confer federal-question jurisdiction as the Browns allege?  The answer, under decades of binding precedent, is a resounding *no*.  As the Browns' lone Sixth Circuit case in this section holds, the Declaratory Judgment Act "does not provide subject-matter jurisdiction" for constitutional claims.  *Hamdi v. Napolitano*, 620 F.3d 615, 623 n.7 (6th Cir. 2010).  Or, as the Supreme Court put it in the seminal case on which *Hamdi* relied:  "[T]he Declaratory Judgment Act is procedural only," permitting a federal court to adjudicate claims only when there is an independent "controversy within its jurisdiction."  *Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950) (second quote of 28 U.S.C. § 2201(a)).  The statute on which the Browns rest their entire complaint, therefore, does not permit the Browns to sue in federal court—making this an easy case for quick dismissal.  *See, e.g.*, *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007); *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007); *Marek v. Navient Corp.*, 2016 WL 11264709, at *3 (N.D. Ohio Dec. 6, 2016).

For a page or two, the Browns seem to suggest that this decades-old caselaw—which dates back to at least 1950 in *Skelly Oil* and is almost as old as the team itself—no longer applies.  Opp. 9–11.  But the way the Browns make this argument says it all.  They feature a footnote from a 1981 unpublished case out of the Eastern District of New York.  Opp. 10–11 (citing *Energy Terminal Servs. Corp. v. N.Y. State Dep't of Envtl. Conservation*, 1981 U.S. Dist. LEXIS 18415, at *12 n.3 (E.D.N.Y. June 19, 1981)).  That opinion—which tellingly misidentifies *Skelly Oil* as "Shelby Oil," which talks glowingly of implied rights of actions, and which appears to have been never cited by a single court since it came out in 1981—speculates that, perhaps, *Skelly* (or "*Shelby*") has been "overruled *sub silentio*."  1981 U.S. Dist. LEXIS 18415, at *12 n.3.  But that was a horrible (and lawless) guess.  Suffice it to say that this Court, the Sixth Circuit, and the

Supreme Court continue to view *Skelly Oil* as binding—as they must—including in the context of constitutional claims. *See, e.g.*, *California v. Texas*, 593 U.S. 659, 672 (2021) ("The Declaratory Judgment Act . . . does not provide a court with jurisdiction" or "permit litigants to invoke the power of [federal courts] to obtain constitutional rulings."); *Mich. S. R.R. Co. v. Branch & St. Joseph Cntys. Rail Users Ass'n*, 287 F.3d 568, 575 (6th Cir. 2002) (calling this rule "well-settled" and collecting cases); *Hamdi*, 620 F.3d at 623 & n.7; *Armatas v. Pulmonary Physicians, Inc. of Canton*, 2021 WL 4339841, at *3 (N.D. Ohio Sept. 22, 2021). Thus, when the plaintiff tries to get federal-question jurisdiction based on the Declaratory Judgment Act—as the Browns did here, *see* Am. Compl. ¶ 18—that plaintiff's complaint must be dismissed. And so it is here.[1]

> ## 2. The Browns' opposition-brief theory for federal-question jurisdiction—the Constitution at large—does not confer jurisdiction.

Rather than defending this pleaded basis for jurisdiction, the Browns pivot to a much broader theory. They suggest that *of course* they can sue in federal court, because they assert violations of the Constitution. Whatever the vehicle for those claims (here, the Declaratory Judgment Act), all that matters is that the Browns raised "substantive" constitutional claims. Opp. 2, 8. The Browns "expressly invoke[]" the Constitution, and their complaint, "on its face," alleges violations of three constitutional provisions. Opp. vii (summary of argument). It is that simple: This Court has jurisdiction and can move to the merits.

---

[1] Confirming this result, if the Court looked to the underlying action on which the Browns' lawsuit is based—the City's invocation of the Modell Law in state court—no federal question appears. *See* Mot. 11–12; *Miller v. Bruenger*, 949 F.3d 986, 991 (6th Cir. 2020). That underlying claim involves a state enforcement action, brought by a state political subdivision, against entities based or operating in the State, involving the interpretation of state law. The Browns could not remove that state case—because there would be no federal jurisdiction. And that remains so even though the Browns will surely raise their constitutional claims as *defenses* to that lawsuit. *See, e.g.*, *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908); *City of Saginaw v. Serv. Emps. Int'l Union, Loc. 446-M*, 720 F.2d 459, 461 (6th Cir. 1983); *Dyck-O'Neal, Inc. v. Smith*, 2023 WL 5021186, at *2 (N.D. Ohio July 21, 2023); *contra* Opp. 8–10.

**a.**     Would that it were so.  It turns out, though, that simply asserting constitutional claims has never been enough for this kind of case.  The Browns need a *private right of action* to sue in federal court.  *See Mich. Corr. Org.*, 774 F.3d at 902.  The Declaratory Judgment Act does not do it.  *Id.* at 907.  And the Browns pleaded no other right of action.  "No private right of action means no underlying lawsuit"—and "[n]o underlying lawsuit means no jurisdiction."  *Id.*; *see, e.g.*, *Azul-Pacifico*, 973 F.2d at 705.  Dismissal follows.

The Browns quickly retort that this conclusion is "illogical" and "patently false," because it would lead to the result that "it is impossible" to assert federal constitutional claims against a city in federal court.  Opp. 7.  The City, the Browns thus insist, is arguing for "a dangerous precedent" whereby "no one can challenge the constitutionality of a state law in a federal court action."  *Id.* at 9.  The City's motion thus "cannot withstand minimal scrutiny."  *Id.*

But the Browns miss an obvious path to federal court for most constitutional violations: § 1983.  The Browns' concerns were therefore resolved *154 years ago* by the 42nd Congress—which, at the urging of President Ulysses S. Grant, enacted § 1983.  The City is thus *obviously* not arguing that "no one can challenge" city action (or state law) in federal court.  *Contra* Opp. 9.  It is arguing only that, for this Court to entertain the merits of those claims, plaintiffs must avail themselves of an appropriate private right of action.  *See Mich. Corr. Org.*, 774 F.3d at 907.

The appropriate right of action for a plaintiff alleging violations of most constitutional rights by a city is § 1983.  That statute provides a right of action to sue "[e]very person"—including a city, *see Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978)—who allegedly deprived the plaintiff of "any rights" secured by the Constitution.  42 U.S.C. § 1983; *see also* 28 U.S.C. § 1343(a)(3) (granting jurisdiction over such claims).  This was an "expansion of original jurisdiction."  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 725 (1989); *see also Will v.*

*Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (providing a "federal forum" for constitutional claims was "a principal purpose behind the enactment of § 1983"). Section 1983 thus "opened the federal courts to private citizens, offering a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." *Mitchum v. Foster*, 407 U.S. 225, 239 (1972).

The Browns' complaint, however, nowhere mentions § 1983. Nor, really, does their opposition brief. (And "it is well established," anyway, "that a plaintiff cannot use [a brief] to amend the pleadings." *Tice v. Bos. Sci. Corp.*, 2023 WL 360983, at *2 n.5 (N.D. Ohio 2023).)

This sinks the Browns' claims. "Put simply, parties can[]no[t] bring a direct constitutional action"; instead, "§ 1983 provides *the only recourse* for constitutional claims against a municipality." *Accord v. Anderson County*, 2022 WL 16825411, at *4–5 (6th Cir. Nov. 8, 2022) (collecting cases); *see Thomas*, 818 F.2d at 503. The Browns theoretically could have sought "injunctive or declaratory relief" against the City "directly" by using § 1983. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985); *see Steffel v. Thompson*, 415 U.S. 452, 454, 475 (1974). But instead, for whatever reason—whether done negligently or deliberately (because of other substantive defects under § 1983, *see, e.g.*, *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017))—the Browns made the decision not to sue under § 1983. And the Sixth Circuit has made clear that when "[§] 1983 [is] not mentioned anywhere . . . in [a] complaint filed by a plaintiff represented by counsel," there is no federal jurisdiction. *Warthman v. Genoa Twp. Bd. of Trustees*, 549 F.3d 1055, 1062–63 (6th Cir. 2008). (Indeed, a party's failure to recognize the need for § 1983 can *warrant costs*. *See id.* at 1064.) The Browns "simply missed" whatever opportunity they might have had under § 1983. *Smith v. Kentucky*, 36 F.4th 671, 675 (6th Cir. 2022).

Nor, to the extent the Browns suggest that this Court should *infer* a right of action directly under the Constitution, would such an implied-right-of-action theory work. The existence of a congressionally created right of action (such as § 1983) forecloses any attempt to imply one directly under the Constitution. Federal courts cannot just entertain "federal claims" of whether state laws or actions "run afoul of the United States Constitution." *Contra* Opp. 1. They need a right of action to do so. *See Egbert v. Boule*, 596 U.S. 482, 491 (2022). And when it comes to suing cities for constitutional-rights violations, Congress did its job 154 years ago with § 1983. The Browns, though, did not do their job. Their claims run into the "long-held" prohibition against direct constitutional claims, *Foster*, 573 F. App'x at 391—meaning to the extent they try to wriggle out from their jurisdictional problems, they move right into lack-of-right-of-action problems under Rule 12(b)(1) and Rule 12(b)(6). *See, e.g.*, *Accord*, 2022 WL 16825411, at *4–5; *Smith*, 36 F.4th at 675; *Armatas v. Pulmonary Physicians, Inc.*, 2021 U.S. App. LEXIS 35836, at *3 (6th Cir. 2021); *Sanders v. Prentice-Hall Corp.*, 1999 WL 115517, at *1 n.2 (6th Cir. Feb. 8, 1999); *Roath v. Lee*, 2019 WL 3066533, at *7–8 (M.D. Tenn. July 12, 2019).

Indeed, case after case that *the Browns themselves* cite involves constitutional-rights claims against cities specifically invoking § 1983. *See* Opp. 13, 15 (citing *Bennafield v. City of Canton Police Dep't*, 856 F.2d 192 (6th Cir. 1988); *Santa Fe Springs Realty Corp. v. City of Westminster*, 906 F. Supp. 1341 (C.D. Cal. 1995)); State Opp. 19 (citing *Huish Detergents, Inc. v. Warren County*, 214 F.3d 707 (6th Cir. 2000)). So it is baffling that the Browns pretend to ignore this binding precedent in their opposition brief. Whatever their reasons, though, the Browns' rush to this Court resulted in a facially deficient complaint. The Browns failed to so much as allege a valid or existing right of action—leading to dismissal for lack of jurisdiction, *Mich. Corr. Org.*, 774 F.3d at 907; *see, e.g.*, *Azul-Pacifico*, 973 F.2d at 705; or under Rule 12(b)(6), *Accord*, 2022

WL 16825411, at \*4–5; *see also Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254–255 (6th Cir. 1996) (no supplemental jurisdiction here).

**b.**     Given that *this* is the state of the controlling law in the Supreme Court and Sixth Circuit—which have "*never* recognized a cause of action arising directly under the Constitution in a case where § 1983 was available as a remedy," *Smith*, 36 F.4th at 674 (emphasis added)—it should come as no surprise that the Browns' lead case (supposedly to the contrary) is a district-court case from the Northern District of Mississippi.  Opp. 6–7, 10 (citing *Noatex Corp. v. King Constr. of Hous. LLC*, 74 F. Supp. 3d 764 (N.D. Miss. 2014)).  It is hard to believe that it gets worse for the Browns from that starting point—from the glaring red flag of featuring a district-court case from Mississippi rather than any of the near-countless cases from the Supreme Court, Sixth Circuit, or this Court rejecting their theory.  But it does get worse.  The district court in *Noatex* explained that, "[u]nder the *Skelly Oil* rule, it appears no federal jurisdiction existed in this case." 74 F. Supp. 3d at 772.  The *only* reason it retained jurisdiction was based on a case brought under § 1983, *id.* at 774 (citing *Martinez v. California*, 444 U.S. 277, 279 (1980)); and as the plaintiff later explained, "'everyone knew' that it was pursuing a lawsuit under § 1983," *Noatex Corp. v. King Const. Co. of Hous., LLC*, 609 F. App'x 164, 167 (5th Cir. 2015).  Yet still, the Fifth Circuit did not "countenance such legalistic legerdemain." *Id.* at 171.  And the Fifth Circuit has elsewhere adopted the same rule as the Sixth Circuit (and every other circuit): that "Congress has provided" § 1983 as the "means of seeking relief against [non-federal officials and cities] who violate the Constitution." *Hearth, Inc. v. Dep't of Pub. Welfare*, 617 F.2d 381, 382 (5th Cir. 1980); *see also, e.g.*, *Montero v. Davis*, 283 F. App'x 206, 207 (5th Cir. 2008); *Mitchell v. City of Houston*, 2003 WL 147729, at \*1 (5th Cir. 2003); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001); *Wax'n Works v. City of St. Paul*, 213 F.3d 1016, 1019 (8th Cir. 2000).

To add to their outlier, nonbinding, and overtaken N.D. Mississippi case, the Browns throw in (at 5) a single citation of a Supreme Court case: *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59 (1978). But there is a reason this is a "see also" citation. The Browns cite *Duke Power* for a standing proposition not at all on point here. *Id.* at 70. As for the issue here, *Duke Power* specifically reserved the question "whether appellees' cause of action under the Constitution is one generally to be recognized." *Id.* at 71. Since *Duke Power*, however, the Supreme Court has definitively decided the issue—and has cut off attempts like the Browns' to assert a right of action directly under the Constitution. *See, e.g.*, *Egbert*, 596 U.S. at 491; *Hernandez v. Mesa*, 589 U.S. 93, 108–09 (2020); *Ziglar v. Abbasi*, 582 U.S. 120, 134–35 (2017). For the few circumstances (from a past era) in which the Supreme Court has permitted a lawsuit directly under the Constitution—*Bivens*, etc.—the Court has strictly limited such rights of actions to the context of federal officials and recently refused to expand those categories one inch. *See Egbert*, 596 U.S. at 491; *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020).

The *Hamdi* case does not prove otherwise. *Contra* Opp. 5–6. While the court suggested that jurisdiction existed, those claims arose in the context of *injunctive* (not declaratory) relief, and they arose against *federal* officials (not a city). *Hamdi*, 620 F.3d at 624. Nor, of course, does *Hamdi* purport to overturn any of the precedent above—which *does* involve state and local parties subject to § 1983. The rest of the Browns' scattered cases, too, are either inapposite (do not involve cities) or are non-binding and responding to arguments unlike the ones here. *See, e.g.*, *Dates v. Buchanan*, 2024 U.S. Dist. LEXIS 30485, at *3 (S.D. Ohio Feb. 22, 2024) (pro se claims related to bankruptcy and foreclosure proceedings against federal officials); *Saint Vil v. Perimeter Mortg. Funding Corp.*, 630 F. App'x 928, 932 (11th Cir. 2015) (per curiam) (pro se claims against non-government defendant); *Crum v. Miss. Mun. Serv. Co.*, 1998 U.S. Dist. LEXIS 1297, at *2 (N.D.

Miss. Jan. 12, 1998) (removal context, cursory, and never cited by other court). Unsurprisingly, then, none of these cases can upend the binding caselaw from the Supreme Court and Sixth Circuit on these questions—holding that a plaintiff must assert a valid and existing right of action for a federal court to even entertain its federal claims. *Mich. Corr. Org.*, 774 F.3d at 907.

*     *     *

The Browns boast that "the City's strained jurisdictional and procedural arguments are as contrived as its rhetorical posturing." Opp. 3. But that finger points the wrong way. The Browns think the key question presented is whether this Court "has the power to interpret and apply the United States Constitution." Opp. 5. That, though, is a red herring. *Of course* this Court can interpret the Constitution—but only in a "Case" or "Controversy" when the plaintiff has sued using an appropriate right of action. So the real question is whether the Browns' amended complaint has invoked any appropriate right of action to get into federal court—any proper basis for bringing their claims here. Their complaint has not. The Browns' failure to recognize (or act on) this reality, whether negligent or intentional, reflects the Browns' own litigation choices (or mistakes) rather than any crack in well-established federal jurisprudence. This Court should dismiss.

### B.     The Browns Lack Article III Standing.

The Browns' failure to raise their only possibly viable right of action (§ 1983)—and thus their failure to properly invoke this Court's jurisdiction to even *reach* the constitutional merits— is not the only head-scratcher about their amended complaint. For relief, the Browns also demand *only* a bare declaration of what the law is—no injunction, nothing else. And they demand this bare declaration *only* against the City of Cleveland. This means there is no redressability.

**1.**     The Browns do not dispute that redressability "requires that the court be able to afford relief through the exercise of its [legitimate] power," not just through its opinions, no matter how "persuasive or even awe-inspiring" they may be. *Haaland v. Brackeen*, 599 U.S. 255, 294

(2023). This Court issues opinions and "says what the law is" only as a *means to an end*. The end must be giving some definitive, binding relief that will itself fix the plaintiff's asserted injury.

The Browns, though, seek no such relief. They seek only a declaration that the Modell Law either does not apply to them (their state-law count) or, if it does apply to them, that this state law is unconstitutional (their constitutional counts). *See* Am. Compl., at p. 23. Having those answers might give the Browns a moral victory. But such "psychic satisfaction" does not qualify for redressability. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106–07 (1998). The Browns' sought relief will not "settl[e] the constitutionality of the Modell Law" or permit "the team's lawful transition to the new Brook Park stadium." *Contra* Opp. 11. Only the U.S. Supreme Court can bind a state court's determination—and only for federal law. *See State v. Burnett*, 755 N.E.2d 857, 862 (Ohio 2001). A federal court's bare declaration of the law does not itself "afford relief." *Haaland*, 599 U.S. at 294. Instead, when unaccompanied by any sort of binding relief (*e.g.*, an injunction), a declaration does not halt ongoing disputes in state court. And far less would a declaration stop *others* (the Attorney General, for example) from suing to enforce the Modell Law. This means that the Browns' asserted injury—being stopped by the Modell Law from abandoning Cleveland for Brook Park—would remain even if the Browns won here. And when an injury remains even after a lawsuit ends favorably for the plaintiff, there is no redressability— and thus no federal-court jurisdiction to merely say what the law is. *Steel Co*, 523 U.S. at 106–07.

This is why the Browns are, no matter how much they protest, seeking an advisory opinion—a "ghost[] that slay[s]." *Vonderhaar v. Vill. of Evendale*, 906 F.3d 397, 399 (6th Cir. 2018). They are seeking an *opinion* only, one they can wave around to the public—which has a "keen interest" in this case—about its important consequences. *Fialka-Feldman v. Oakland Univ. Bd. of Trustees*, 639 F.3d 711, 715 (6th Cir. 2011). But "[m]atters of great public interest are

precisely the kinds of issues that demand the federal courts to be most vigilant in this area—vigilant that the powers they exercise are powers the Constitution gives them." *Id.* The Constitution does not give this Court the authority to tell the Browns (but not actually order any sort of relief) whether it thinks the Modell Law is constitutional.

**2.** The Browns could have confessed error here too and simply litigated the same constitutional issues in the pending state-court case. That state case, after all, unlike this one, *does* seek real relief and *will* end with a judgment that either requires the Browns' compliance with the Modell Law or excuses it. But in the Browns' desperation to keep this federal case alive, the Browns instead felt like they must argue *something* in defense of their declaratory-only complaint. So they insist that they are challenging the mere *existence* of the Modell Law (rather than trying to enjoin the City's enforcement of that statute). *See* Opp. 9. So long as that law is on the books, the Browns believe, this Court may provide its views on the constitutionality of the Modell Law. This Court, the Browns excitedly contend, might even "strike down the Modell Law"! Opp. vii.

A plaintiff, though, no matter how badly it wants it, does not have standing simply to seek a declaration that a law is unconstitutional. This Court is not a council of revision; the Framers rejected that idea 236 years ago. And now, in 2025, that means that the Browns' request for "a judicial statement that the provision they attacked is unconstitutional" does not give them standing. *California*, 593 U.S. at 671. Again, such federal-court declarations must be only a *means to an end* (an end such as an injunction). "Federal courts do not possess a roving commission to publicly opine on every legal question." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The Browns are therefore not entitled to attack "the mere existence of [a] [state] statute" they think is unconstitutional—any more than the Guardians or Cavs would be permitted to bring this same lawsuit. *E.g.*, *Lawson v. Hill*, 368 F.3d 955, 957 (7th Cir. 2004).

In sum, then, plaintiffs need concrete injury to sue, and the only concrete injury the Browns could possibly allege is that the enforcement of the Modell Law prevents them from moving to Brook Park. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). But the lawsuit the Browns brought will not save them from that injury: Because this Court is not even *asked* to do any sort of enjoining, the City's state lawsuit will go forward no matter what this Court declares.

*     *     *

Either because the Browns sued only under the Declaratory Judgment Act (not under any jurisdiction-conferring right of action—or any other existing right of action, for that matter) or because the Browns seek a mere declaration, this Court should dismiss.

## II.     THIS COURT SHOULD NOT REACH THE MERITS EVEN IF IT COULD.

There will be a time and place to litigate the merits. But now is not that time or place. For a century or more, there is "one doctrine more deeply rooted than any other in the process of constitutional adjudication." *McLaughlin*, 323 U.S. at 104–05. And that doctrine is that courts should not "pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Id.* Federal courts should use *restraint*, resolving constitutional questions only when they must.

This Court need not resolve the constitutional questions here. All the considerations under the Declaratory Judgment Act—which provides that courts "*may* declare the rights" of the parties, not they *must* do so, 28 U.S.C. § 2201(a) (emphasis added)—counsel against reaching the merits, in a case brought by a plaintiff that is also a *defendant* in state court. Mot. 14–17. And separately, too, you could not script a better case for abstention principles—especially under *Pullman*. Mot. 17–19. Reaching the merits would indeed be an abuse of discretion.

**A.      The Court Should Dismiss Under The Declaratory Judgment And For Comity.**

The City explained, separate and apart from abstention, why this Court should "not [] reach out and decide the issues involved."  Mot. 14; *see id.* at 14–17.  But the Browns, in focusing exclusively on abstention, act as though these arguments did not exist.  That is a mistake.

**1.**      "[W]hen a putative defendant files a declaratory judgment action to stave off an unfavorable forum"—as the Browns tried to do here to avoid the City's state-court suit, *see* Am. Compl. ¶¶ 56–67—federal courts step back and let the natural plaintiff sue in state court. *NanoLogix, Inc. v. Novak*, 2013 WL 6443376, at *2 (N.D. Ohio Dec. 9, 2013); *see, e.g.*, *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007); *AmSouth Bank v. Dale*, 386 F.3d 763, 786, 791 n.8 (6th Cir. 2004); *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001).  "Federal courts will not seize litigations from state courts merely because [the] defendant[] goes to federal court to begin his federal-law defense before the state court begins the case under state law." *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952); *see, e.g.*, *Cath. Health Partners v. CareLogistics, LLC*, 973 F. Supp. 2d 787, 792 (N.D. Ohio 2013).

**2.**      The Browns have no answer to this dispositive line of precedent and so all but pretend it does not exist.  They group it all together in a couple of sentences and a footnote, insisting that these cases do not apply because they did not "involve constitutional challenges."  Opp. 8 & n.3.  But the Browns offer no reason—and no case—why that should matter.  Nor could they. The Declaratory Judgment Act provides that courts "may declare the rights" of the parties no matter the kind of "right" at issue, constitutional or otherwise.  28 U.S.C. § 2201(a).  The only reason why courts do not have to grapple with the quandary presented by the Browns—a litigant rushing to federal court with constitutional claims under the Declaratory Judgment Act—is because those litigants would ordinarily sue under § 1983 (or some other existing right of action),

not the Declaratory Judgment Act. None of the analysis in any of the cases hinges on whether the claims involve the Constitution. Rather, the animating concern—refusing to "allow [the Browns] to secure" what they perceive as "a more favorable forum by filing an action for declaratory judgment when [the Browns] ha[d] notice that the other party intends to file suit involving the same issues in a different forum"—applies equally even when constitutional issues are invoked. *Innovation Ventures, LLC v. CB Distribs., Inc.*, 652 F. Supp. 2d 841, 844 (E.D. Mich. 2009). This is especially so here, where the Browns will invoke those same constitutional issues in state court. While the Browns belittle the state court's ability to hear their constitutional arguments (Opp. 19–20), a state court is just as capable of resolving them as a federal court. *See, e.g.*, *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 477–78 (1981). Indeed, that was precisely the posture when the Haslams previously *benefited* from the Modell Law—and when the state court rejected all the constitutional arguments against the statute at that time. *State v. Precourt Sports Ventures, LLC*, No. 18-cv-001864 (Ohio Ct. C.P. Franklin Cnty.) (Dec. 3, 2018 order). The Browns' choice to ignore these realities further confirms that this lawsuit was designed as nothing more than "procedural fencing" to artificially secure their preferred forum.

### B. Abstention Principles, Especially *Pullman*, Also Require Dismissal.

**1.** If the fact pattern of this lawsuit appeared on a final exam for an abstention question in Federal Courts, the professor would have to rewrite the question because it would be too easy. A plaintiff in federal court, the exam question would go, brings two sets of claims: one set alleging that some state law does not apply to it (Count IV here) and another set alleging that, if the state law did apply, the law would be unconstitutional (Counts I–III here). Even that would already be too easy, but then the exam question would further provide that a lawsuit exists in *state* court, with the same parties, that will answer the threshold state-law question (namely, whether the state law

17

even applies to the federal-court plaintiff). If a student answered that the federal court should forge ahead and resolve the constitutional questions, the student would flunk the exam.

Yet that is the Browns' answer. If the Browns were right, *Pullman* would be wrong. Mot. 17–18. In *Pullman* itself, the plaintiffs argued that the challenged state action was, first, "unauthorized by Texas law"; and, second, "violative of the Equal Protection, the Due Process[,] and the Commerce Clauses of the Constitution." *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 498 (1941). Those are precisely the conditions when a federal court should abstain—and precisely the conditions that obtain here. The Browns allege, under their state-law Count IV, that the Modell Law does "not even apply to [them]." *Harrison*, 360 U.S. at 177; *see* Am. Compl. ¶ 131. If they were right about that, this case would end; the Browns would be victorious and could abandon Cleveland for Brook Park. A federal court would never—indeed, *could* never—go on to reach the constitutional merits. The resolution of the state-law count "would have mooted plaintiffs' constitutional claims," meaning (according to the Browns' own lead case) that the case is "squarely covered by the *Pullman* doctrine." *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 563 (6th Cir. 1982); *see also, e.g.*, *McLemore v. Gumucio*, 2023 WL 4080102, at *2 (6th Cir. June 20, 2023); *Traughber v. Beauchane*, 760 F.2d 673, 682 (6th Cir. 1985). If the Browns were right on Count IV, in short, a "definitive ruling on the state issue would terminate the controversy." *Pullman*, 312 U.S. at 498. Resolving that state issue would "end [] the litigation" and mean "the constitutional issue does not arise." *Id.* at 501. This is heartland *Pullman*.

These principles, too, have only hardened over the years. In "the bulk of abstention cases," the "unsettled issue of state law" is, as here, "the applicability of the challenged statute to a certain person" or "defined course of conduct." *Baggett v. Bullitt*, 377 U.S. 360, 376–77 & nn. 12–13 (1964); *see* 17A Wright & Miller, Fed. Prac. & Proc. Juris. § 4242 (3d ed. July 2024 update).

Far from "extraordinary" (Opp. 12), therefore, when these conditions obtain, courts "regularly order[] abstention." *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975); *see also, e.g.*, *Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) (Abstention is "especially" appropriate and "regularly" applied when the state-law question "would moot the plaintiffs' constitutional claim" and "settle [the] case" without ever having to reach the constitutional merits.); Wright & Miller, *supra* § 4242 (collecting cases).  And other abstention doctrines, too, only reinforce these principles.  *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11 n.9 (1987) ("The various types of abstention are not rigid pigeonholes" but instead "reflect a complex of considerations designed to soften the tensions inherent" parallel judicial "system").  It would be beyond the pale to disregard nearly a century of precedent and rush to the constitutional merits.

**2.**      So how do the Browns respond?  They assert that "there is no basis for *Pullman* abstention" when "issues under the U.S. Constitution are presented to the federal court."  Opp. 2.  That is incredible.  *Definitionally*, in *every Pullman* case (including *Pullman* itself), a federal court is presented with constitutional issues.  That is the whole point of the doctrine—to tell a federal court when it should abstain from resolving the constitutional issues presented to it.  The doctrine provides that a federal court should abstain when, as here, the constitutional claims can be avoided with an authoritative state-law answer—an answer here to whether "the Browns' actions . . . trigger or violate" the Modell Law at all.  Am. Compl. ¶ 131.  The Browns, by continuing to maintain that the Modell Law does not even *apply* to them, thus argue themselves right out of federal court—and right into state court where this case belongs.

The Browns' contrary case citations are far off-base.  This is not a case in which the federal-court *defendant* is coming up with a creative interpretation of state law to try to avoid federal-court jurisdiction.  Opp. 15–16 (citing, *e.g.*, *Am. Motors Sales Corp. v. Runke*, 708 F.2d 202, 208 (6th

Cir. 1983)). Quite the opposite: It is a case in which the federal-court *plaintiff* itself argues for an interpretation of state law whereby the Court could rule for it and avoid all the constitutional claims. Nor does abstention turn on some sort of nose-counting exercise of the number of state-versus-federal counts (one state-law count here versus three federal-law counts). *Contra* Opp. 14–15 (citing *Santa Fe Springs Realty*, 906 F. Supp. at 1354). *Pullman* instead turns only on whether resolving the state-law issue would enable the court to avoid the federal-law issues in this case (however many there are)—as it does here. *Brown*, 169 F.3d at 332; *see also Pullman*, 312 U.S. at 498 (three constitutional issues versus one state-law issue). And the Browns reveal their misunderstanding of the argument when they suggest that the City seeks abstention merely so that a state court can hear the Browns' federal constitutional claims. Opp. 12, 17 (citing, *e.g.*, *Zwickler v. Koota*, 389 U.S. 241, 251 (1967)). It is again the opposite: Abstention is proper not so that the state court can resolve the constitutional claims; but so that the state court can resolve the *state* claims—potentially making it so that *no court* needs to ever resolve the constitutional claims presented by the Browns here.

At bottom, abstention is appropriate here because a "definitive ruling on the state issue [c]ould terminate th[is] controversy" while avoiding "the friction of a premature constitutional adjudication." *Pullman*, 312 U.S. at 498, 500. If it had jurisdiction, this Court should abstain.

## CONCLUSION

The Browns accuse the City of using "tactics" and "tak[ing] steps to prolong the instant lawsuit." Opp. 11–12. But it is hard to see how that is so. After retaining counsel, the City promptly moved to dismiss and, as should be clear, very much believes that binding law requires this federal lawsuit to end. For those legal reasons, the City respectfully requests that this Court promptly dismiss this case so that the dispute can proceed in the proper posture: in state court.

Respectfully submitted,

/s/ *Justin E. Herdman*
_____

Mark D. Griffin (0064141)
Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Email: MGriffin@clevelandohio.gov

Justin E. Herdman (0080418)
Tracy K. Stratford (0069457)
James R. Saywell (0092174)
Samuel V. Lioi (0100464)
Gregory E. Hilbert (0101242)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Phone: (216) 586-7108
Fax: (216) 579-0212
Email: jherdman@jonesday.com
     tkstratford@jonesday.com
     jsaywell@jonesday.com
     slioi@jonesday.com
     ghilbert@jonesday.com

*Attorneys for Defendant The City of Cleveland*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed electronically on the 24th day of February, 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Justin E. Herdman*

*One of the Attorneys for Defendant The City of Cleveland*


**LOCAL RULE 7.1 CERTIFICATE**

I certify that this case is unassigned, and this brief complies with the 20-page limitation set forth in Local Rule 7.1.

*s/ Justin E. Herdman*

*One of the Attorneys for Defendant The City of Cleveland*