UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **CLEVELAND BROWNS FOOTBALL COMPANY, LLC,** | : : : | Case No. 1:24-cv-01857 |
| **Plaintiff,** | : : | **Judge David A. Ruiz** |
| vs. | : : | |
| **THE CITY OF CLEVELAND, et al.** | : : | |
| **Defendants.** | : | |

**REPLY IN SUPPORT OF INTERVENOR-DEFENDANT THE STATE OF OHIO'S MOTION TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................**Error! Bookmark not defined.**

INTRODUCTION ........................................................................................................................ 1

    A.    The Browns failed to overcome Pullman. ........................................................................ 2

    B.    The Modell Law is not vague. ......................................................................................... 4

    B.    The Browns do not save their Contract Clause Claim. .................................................... 7

    C.    The Browns do not save their dormant Commerce Clause claim. ................................... 8

CONCLUSION ............................................................................................................................ 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ambrose v. Vill. Of Galena*,
  2015-Ohio-3157 (5th Dist. 2015) ..................................................................................5

*Burch v. USDA*,
  174 F. App'x 328 (6th Cir. 2006) ..................................................................................5

*City Investing Co. v. Simcox*,
  633 F.2d 56 (7th Cir. 1980) ...........................................................................................3

*City of Cleveland v. Haslan Sports Group, LLC, et al.*,
  Cuyahoga County Common Pleas Court Case No. CV-25-110189 .............................6

*City of Oakland v. Oakland Raiders*,
  174 Cal. App. 3d 414 (1st. Dist. 1985) ..........................................................................9

*Hughes v. Alexandria Scrap Corp.*,
  426 U.S. 794 (1976) ......................................................................................................9

*Martin-Marietta Corp. v. Bendix Corp.*,
  690 F.2d 558 (6th Cir. 1982) .....................................................................................2, 3

*Railroad Comm'n v. Pullman Co.*,
  312 U.S. 496 (1941) .........................................................................................2, 3, 4, 11

*State ex rel. Ohio Attorney General Mike DeWine v. Precourt Sports Ventures
  LLC,* 2018 Misc. LEXIS 6293 .......................................................................................5

*State v. Pribble*,
  158 Ohio St. 3d 490, 2019-Ohio-4808, 145 N.E.3d 259 (2019) ...................................6

*Stevens v. City of Columbus*,
  2022 U.S. App. LEXIS 20829 (6th Cir. 2022) ..............................................................5

*Traughber v. Beauchane*,
  760 F.2d 673 (6th Cir. 1985) .....................................................................................3, 4

*Warth v. Seldin*,
  422 U.S. 490 (1975) ......................................................................................................8

*White v. Mass. Council of Constr. Emplrs*,
  460 U.S. 204 (1983) ....................................................................................................10

**Statutes**

Ohio Revised Code § 9.67 ................................................................................................ *passim*

Ohio Rev. Code § 9.67(A) ........................................................................................................6

Ohio Rev. Code § 9.67(B) ........................................................................................................6

Ohio Rev. Code § 2744.01(F)...................................................................................................6

**Other Authorities**

United States Constitution Art. I, § 8, cl. 3 ("Commerce Clause") ...................................2, 8, 9, 10

United States Constitution Article I, § 10 ("Contract Clause") .................................................2, 7, 8

**INTRODUCTION**

Rather than demonstrate why this case should not be dismissed the Browns double down on their request for a federal court ruling that they also claim to not need. The Browns have it backwards. Courts do not have a duty to decide federal questions when there is no reason to do so. They have an obligation to avoid exactly that. When undecided issues of state law are dispositive of a case—as the Browns claim that they are here—the federal questions cannot jump the line. This Court should abstain from deciding the Browns' federal claims until the state law claims are adjudicated *and* it becomes necessary to do so.

Instead of recognizing this well-settled approach to constitutional challenges, the Browns muddy the waters. On one hand, they claim that the Modell Law does not apply to them, but on the other ask for this Court for a declaration that it is unconstitutional. This begs the question – what are they going to do with the declaration? Because as the City correctly points out in its *Motion to Dismiss* (and the Browns seem to concede in their response), they are not actually asking this Court to enjoin enforcement of the Modell Law. Perhaps that makes sense. After all, why would the Browns need to enjoin a law that does not apply to them? This Court can, and should, easily avoid the Browns' procedural predicament by abstaining and first allowing the questions of Ohio law to be litigated where they belong – in state court.

But even if abstention did not apply in this case, it should still be dismissed. It is only by playing fast and loose with the facts and the law that the Browns can argue otherwise. Ohio Revised Code § 9.67 ("Modell Law" or "Statute") governs a narrow sliver of business relationships between the State, political subdivisions, and the professional sports teams that ask for and accept hundreds of millions of taxpayer dollars. It is not a criminal statute. It does not implicate the First Amendment. And when the correct test for vagueness is applied, it easily passes constitutional

1

muster. A person of ordinary intelligence would know what is required of the Browns before the Team relocates and begins playing elsewhere. They have given this Court no reason to conclude otherwise.

The Browns fall similarly short in defending their Contract Clause claim. Though the Browns confusingly refer to several contracts between *other* parties, they fail to identify a single contract to which *they* were a party in 1996. The Browns' only contract is the Expansion Franchise Agreement, which did not exist until 1998. The Modell Law was in effect at the time and the Browns cannot now complain about its requirements.

Finally, the Browns can only defend their Commerce Clause claim by ignoring the current state of the law and the text of the Statute. The Modell Law is not facially discriminatory because the Browns keep saying that it is. It simply ensures that public financiers be given a seat at the "opportunity to purchase" table before a professional sports team can take the money and run. The Browns fail to overcome the inescapable conclusion that the dormant Commerce Clause does not apply to the Modell Law, much less violate it.

### A. The Browns failed to overcome Pullman.

The Browns have it backwards. They are not entitled to a federal court ruling on a constitutional question before they need it. *Pullman* abstention applies to correct their course, and none of the cases cited by the Browns compel a different conclusion. *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941).

For example, the Browns rely on *Martin-Marietta Corp. v. Bendix Corp.* in which the Sixth Circuit recognized that "[u]nder the *Pullman* doctrine, where a state law is being challenged in federal court as contrary to the federal Constitution and there are questions of state law which may be dispositive of the case, a federal court should abstain from deciding the case and allow the state

courts to decide the state issues." *Martin-Marietta Corp. v. Bendix Corp.,* 690 F.2d 558, 563 (6th Cir. 1982); *See Plaintiff Cleveland Browns Football Company LLC's Brief in Opposition to Intervenor-Defendant the State of Ohio's Motion to Dismiss ("Opposition"),* Doc. 27 at p. 8. In *Martin*, the Sixth Circuit overruled the district court's decision to apply *Pullman* and abstain from considering a federal constitutional challenge to two Michigan statutes while those statutes were being enforced against the plaintiffs through state processes. *Martin,* 690 F.2d 558. Although the Sixth Circuit reversed the district court, it treated favorably *City Investing Co. v. Simcox,* 633 F.2d 56 (7th Cir. 1980), the case on which the district court based its abstention. The *Martin* court noted that in *Simcox*, abstention was appropriate because a ruling by a state court that the plaintiffs' activities did not fall within the challenged statute would have mooted the federal constitutional claims. *Martin,* 690 F.2d at 563 (citing *Simcox,* 633 F.2d 56). Abstention was not appropriate in *Martin* because the challengers did not dispute that the challenged statute applied to them, "suggested no construction which would remedy the constitutional defects" and moved to enjoin its enforcement. *Id.*

Here, the Browns dispute that the Modell Law even applies and are not seeking to enjoin its enforcement. *Amended Compl.,* Doc. 12 at ¶ 131. A state court ruling that they are correct would moot the federal constitutional claims and abstention is thus warranted. *Martin,* 690 F.2d at 563 (citing *Simcox,* 633 F.2d 56). Said differently, *Martin* does not help the Browns, it proves the State's point. And, this case is on all fours with *Simcox,* not *Martin.*

*Traughber v. Beauchane* is equally unhelpful to the Browns. *Opposition* at p. 8 (citing *Traughber v. Beauchane,* 760 F.2d 673 (6th Cir. 1985)). There, the Sixth Circuit rejected the district court's application of *Pullman* in a challenge to Tennessee's attachment statute. The state court had refused to rule on the constitutionality of the attachment statute after it had already been

3

applied to the plaintiffs, instead deferring to the federal court on that issue. But the district court applied *Pullman*, abstained from deciding the constitutional question and "the judicial comity which underlay[] *Pullman* [became] a judicial comedy at the expense of the [plaintiffs]". *Id.* at 682. In essence, the plaintiffs were caught in limbo between the state and federal courts.

Reversing the district court, the Sixth Circuit recognized that "*Pullman* abstention is applicable where state interpretation of an unclear law would remove the federal issue by making unnecessary a constitutional decision." *Id*. It was inapplicable in *Traughber* because "no ruling by a state court interpreting the attachment statute [had] permitted the federal trial court to avoid ruling" on whether the statute had been applied in violation of the fourteenth amendment, as alleged. *Id.*

Again, that is not the case here. The Browns claim that their actions neither trigger nor violate the Modell Law, doc. 12 at ¶ 131, *and* they claim it unclear. *Id*. at ¶¶ 43-51, 68-83. If they are correct, a state court ruling could "remove the federal issue by making unnecessary a constitutional decision". *Traughber* at 682. *Pullman* abstention applies.

Rather than recognize that a state court decision could eliminate the need for a federal constitutional one, the Browns attempt to recast the State's argument. The State is not, as the Browns claim, arguing that a state court should first decide the federal questions that this case presents. *See Opposition* at pp. 6, 9. Instead, the point is that consistent with *Pullman,* and the cases cited by the Browns, this court should only decide the federal claims if it becomes necessary to do so. According to the Browns, the Modell Law does not apply to them, so it never should be. Abstention is warranted and the Browns have failed to prove otherwise.

**B. The Modell Law is not vague.**

In response to the State's *Motion*, the Browns fail to recognize, much less address, the less stringent vagueness test which applies in this as-applied challenge to an economic regulation. This case does not involve a criminal statute or the First Amendment. *Opposition* at p. 10, (citing *Memphis Ctr. For Reprod. Health v. Slatery,* No. 20-5969, 2020 U.S. App. LEXIS 36780 (6th Cir. 2020) (challenge to a criminal statute)); *Id.* at p. 12 (citing *Belle Maer Harbor v. Charter Twp. Of Harrison,* 170 F.3d 553 (6th Cir. 1999) (challenge to a criminal statute)); *Id.* at p. 11 (citing *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Supreme Court,* 894 F.3d 235 (6th Cir. 2018) (First Amendment challenge to Ohio Code of Judicial Conduct)). Nor does it involve a local zoning ordinance which are "in derogation of common law and must be strictly construed". *Ambrose v. Vill. Of Galena*, 2015-Ohio-3157 (5th Dist. 2015), cited at *Opposition* at p. 12.

Instead, the Modell Law is an economic regulation that is subject to a less stringent vagueness test and entitled to greater leeway. *Stevens v. City of Columbus,* 2022 U.S. App. LEXIS 20829 (6th Cir. 2022); *Burch v. USDA*, 174 F. App'x 328 (6th Cir. 2006). And while the Browns claim to acknowledge that theirs is an as-applied challenge, *Opposition* at p. 11, they play fast and loose with how the Court is to consider it. They dodge the actual question: whether the Modell Law provides a person of ordinary intelligence with notice of what is required of the Browns before they stop playing the majority of their games at Huntington Bank Field. *Stevens,* 2022 U.S. LEXIS 20829 * 11; *see also Burch,* 174 F. App'x. at 333 (quoting *United States v. Mazurie*, 419 U.S. 544, 550 (1975 ("'vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.'")). It does.

Turning again to the term "elsewhere," notable in its absence is any discussion by the Browns of the *Precourt* case, which rejected the identical argument presented here. *See State ex rel. Ohio Attorney General Mike DeWine v. Precourt Sports Ventures LLC,* 2018 Misc. LEXIS 6293. Instead

of distinguishing, much less acknowledging, its existence, the Browns attempt to create a conflict between the City and the State. *See Opposition* at pp. 12-13. But the City and the State are on the same page when it comes to the word "elsewhere". That is, the state court Complaint outlines City's efforts to try to reach an agreement with the Browns under Ohio Rev. Code § 9.67(A)) for them to play somewhere other than the Stadium. *City of Cleveland v. Haslan Sports Group, LLC, et al.,* Cuyahoga County Common Pleas Court Case No. CV-25-110189, Complaint, ¶ 28. When an agreement could not be reached, the City began to enforce the "notice and opportunity" provisions in Ohio Rev. Code § 9.67(B). *Id*. at ¶ 41. In other words, the term "elsewhere" is so easily understood that the City's Complaint identically tracks the 'either/or' application of Ohio Rev. Code § 9.67 laid out by the State in its *Motion to Dismiss*. Doc. 24 at p. 3.

The Browns' continued challenge to "political subdivision" fares no better. They do not, and cannot, deny that Ohio law defines "political subdivision". Ohio Rev. Code § 2744.01(F). Instead, they posit that when the General Assembly used the term "political subdivision" in the Modell Law it did not mean *that* political subdivision (the one it already defined). *Opposition* at p. 13. Leaving aside the Browns' complete lack of support for this notion, "[i]t is a well-settled rule of statutory interpretation that statutory provisions be construed together and the Revised Code be read as an interrelated body of law." *State v. Pribble,* 158 Ohio St. 3d 490, 494, 2019-Ohio-4808, 145 N.E.3d 259 (2019) (quoting *State v. Moaning,* 76 Ohio St.3d 126, 128, 1996-Ohio-413, 666 N.E.2d 1115). When interpreting related and co-existing statutes—such as one that uses a term and one that defines it—the Court must harmonize and give effect to all statutes unless they conflict. *Pribble,* 158 Ohio St. 3d at 490 (quoting *United Tel. Co. of Ohio v. Limbach,* 71 Ohio St.3d 369, 372, 1994-Ohio-209, 643 N.E.2d 1129 (1994) (additional citations omitted)). Said

differently, the Modell Law does not need to explicitly incorporate Ohio Rev. Code § 2744.01(F)'s definition of "political subdivision", Ohio law already does it.

At its core, the Browns argument is not really that the terms "political subdivision", "opportunity", or "reside in the area" are unclear or undefined. Instead, they still claim confusion as to *which* political subdivision—the City or the County—should be given notice and opportunity and in which political subdivision potential investors must reside. *Opposition* at pp. 13-14. Their alleged confusion rings hollow. As they helpfully point out by bolding the word "**the**", the relevant political subdivision in the text of the Modell Law is the one that provided financial assistance to the professional sports team. *Id.* The Browns allege that only one did – the City of Cleveland. Doc. No. 12 at ¶ 3. Confusion cleared.

### C. The Browns do not save their Contract Clause Claim.

Seeming to understand their timing problem, the Browns now claim that the HBF Lease and FCA are the relevant contracts which will allegedly be impaired by the Modell Law. *Opposition* at p. 16. But that is not what the *Amended Complaint* alleges. There, the Browns claim that the Modell Law impairs the NFL Franchise Agreement in violation of the Contract Clause. Doc. No. 12 at ¶¶100-101. Their pivot away from the Complaint is nothing more than smoke and mirrors. An inventory of contracts, the parties to them, and the dates entered explains why:

- *HBF Lease and Franchise Commitment Agreement* ("*FCA*"): Entered into between the NFL and the City in 1996; *Id.* at ¶ 12;

- *Expansion Franchise Agreement*: Entered into between the Browns and the NFL in or about September 1998; *Id.* at ¶ 40;

- *HBF Lease*: Assigned to StadCo by the NFL in or about 1998; *Id.* at ¶ 41.

7

So, according to the Browns, they are only a party to one contract, the Expansion Franchise Agreement, and they did not become a party to it until 1998, well after the Modell Law was enacted.

What they are really saying is that when they entered into the Expansion Franchise Agreement with the NFL in 1998, NFL's Franchise Agreement was one of the terms of the contract. *Id.* at ¶ 35. That is the case for all NFL franchises. *Id.* But they do not allege, nor could they, that they were somehow bound by it, the FCA, or anything else, before they purchased the Team in 1998. The same holds true for the HBF Lease. The Browns do not allege that they were ever a party to it. They lack standing to hinge their Contract Clause claim on someone else's contract (e.g. StadCo or the NFL). *Warth v. Seldin*, 422 U.S. 490 (1975) (a party must generally assert his own legal rights and cannot rest his claim to relief on the legal rights or interests of third parties). And even if the Browns' affiliate StadCo could somehow be considered one and the same as the Browns (a doubtful premise), it did not become a party to the HBF Lease until the 1998 assignment. Doc. No. 12 at ¶ 41. Their timing problem would still be fatal.

### D. The Browns do not save their dormant Commerce Clause claim.

The Modell Law is not facially discriminatory, and the Browns cannot twist its terms to make it so. It does not give anything to in-state actors that is not also available to those from outside Ohio or the area of the political subdivision. It is simply not true for the Browns to assert otherwise. *Opposition* at p. 17 (arguing that the law expressly favors in-state economic interests by giving individuals who reside in the area special rights with respect to the purchase of professional sports organization, while not providing the same economic opportunities to individuals outside of the area and/or the state); *Id.* at p. 19 (arguing that the law limits the Browns' access to potential purchasers based on residence). But it is only by misconstruing the Modell

Law that the Browns can hope to save their dormant Commerce Clause claim. A plain reading of the Law should quickly dash those hopes.

So too should a review of *City of Oakland v. Oakland Raiders* on which the Browns rely. *Oakland* is a California state court case which involved eminent domain and applied a now-outdated interpretation of the dormant Commerce Clause. *Opposition* at p. 17 (citing *City of Oakland v. Oakland Raiders,* 174 Cal. App. 3d 414, 422 (1st Dist. 1985). The fact that the Browns rely on it without even acknowledging the on-point *Ohio* court decision which rejected an identical dormant Commerce Clause claim is telling. *See Precourt, LLC,* 2018 Misc. LEXIS 6293.

This not an eminent domain case where Ohio law is being used to take a Team or even prohibit it from relocating. Instead, the Modell Law is a statute that even the *Oakland* court recognized would escape Commerce Clause review. In *Oakland* the City had taken the Oakland Raiders by eminent domain. Rejecting the condemnation on Commerce Clause grounds, the court held that the City could "escape commerce clause review if it had in fact acted as a mere market participant – i.e. if it had attempted to enter the football market on an equal footing, bidding with other potential market participants and seeking to purchase from someone willing and able to sell." *Oakland,* 174 Cal. App.3d at 419. Once again, that is what the Modell Law does. It puts a political subdivision or a group of investors in its area on equal footing with everyone else. It provides an equal opportunity but does not demand a specific outcome or result. It discriminates against no one.

Ultimately, the Browns fail to establish that the Commerce Clause applies to this case at all. The Commerce Clause applies when the government attempts to *regulate* interstate commerce. *Hughes v. Alexandria Scrap Corp.,* 426 U.S. 794, 809 (1976) ("the right to engage in interstate commerce is not the gift of a state[…], a state cannot regulate or restrain it" (quoting

9

*H.P. Hood & Sons v. Du Mond,* 336 U.S. 525 (1949)). Under the market participation theory it does not apply where, as here, the state or a political subdivision enters the market and participates in it. *White v. Mass. Council of Constr. Emplrs,* 460 U.S. 204, 208 (1983).

Notably, the market participation theory is not limited in its application to situations in which the state or political subdivision act as buyers or sellers. For example, in *White,* the United States Supreme Court applied the market participation theory to an executive order issued by the Mayor of Boston which required that for all construction projects funded in whole or part by city funds, at least half of the workforce had to be bona fide Boston residents. *White,* 460 U.S. 204. The Court upheld the order because the city participated in the marketplace when it provided funds for construction. *Id.* It recognized that the government can be a market participant when it expends its own funds. *Id.* at 214-15.

The crux of the market participant theory is that when the government participates in a market, as opposed to just regulating it, the Commerce Clause does not apply. *See White,* 460 U.S. 204. Contrary to the Browns' assertion, it is not limited in its application to situations in which the City buys or sells the Team. *Opposition* at p. 19; *see White.* 460 U.S. 204. It also applies when the government acts as financier. *White,* 460 U.S. 204 at 214-15. The City and State became market participants when they financed the Browns. The government is permitted to attach strings to that financing. The Modell Law is the strings and the Commerce Clause has no application.

Nor is this a situation in which the strings spill over into other markets. When the government imposes conditions upon the market in which it participates, those conditions cannot burden other markets. *Opposition* at p. 19 (quoting *South-Central Timber Dev., Inc. v. Wunnicke,* 467 U.S. 82, 89 (1984)). Because at that point, the government is regulating a market in which it is not participating. That is not what is happening here.

10

The Modell Law is limited to the market in which the State or political subdivision participates – the one in which professional sports teams accept hundreds of millions of taxpayer dollars. It does not spill over elsewhere – for example, the increasingly rare market in which professional sports teams are privately funded and do not ask for and accept taxpayer assistance. The Modell Law is not an unavoidable regulation imposed upon all businesses. It applies only to those professional sports teams that willingly enter into the marketplace with the State or a political subdivision by accepting public money. A team can easily avoid its reach by not doing so.

## CONCLUSION

The State is not trying to avoid this lawsuit or "favor" the state court action. *Opposition* at p. 1. It is confident in its ability to defend the constitutionality of the Modell Law against the Browns' claims. The point is that there is an order in which those claims should be litigated, and this is not it. Federal courts should only reach federal questions when and if it becomes necessary. *Pullman* abstention applies to allow the state court to make that determination. In response to the *Motion to Dismiss,* the Browns have failed to overcome its application. They similarly failed to state any federal claim for this Court to decide. For the reasons set forth in the *State's Motion to Dismiss,* this case should be dismissed.

Respectfully submitted,

DAVE YOST
OHIO ATTORNEY GENERAL

*/s/ Bridget C. Coontz*
Bridget C. Coontz (0072919)
Chief Counsel and Ethics Officer
Samuel C. Peterson (0081342)
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Tel: 614-728-2035
bridget.coontz@OhioAGO.gov
Samuel.peterson@OhioAGO.gov

**NORTHERN DISTRICT OF OHIO LOC. R. 7.1(f) CERTIFICATION**

I certify that this case is assigned to a standard track. The Memorandum in Support of this Motion to Dismiss complies with the page limit for such cases.

/s/ *Bridget C. Coontz*
_____
Bridget C. Coontz (0072919)
Chief Counsel

*Counsel for the State of Ohio*

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically using the Court's ECF system and sent to the following via email:

Mark Griffin, Esq.
Gilbert Blomgren, Esq.
City of Cleveland Law Department
601 Lakeside
Cleveland, Ohio 441144
Via email:
mgriffin@clevelandohio.gov
gblomgren@clevelandohio.gov

Gregory Hilbert, Esq.
James R. Saywell, Esq.
Samuel V. Lioi, Esq.
Tracy K. Stratford, Esq.
Jones Day
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114-1190
ghilbert@jonesday.com
jsaywell@jonesday.com
jherdman@jonesday.com
slioi@jonesday.com

Kip T. Bollin, Esq.
Kyle A. Hutnick, Esq.
Robert F. Ware, Esq.
Thomas M. Ritzert, Esq.
Anthony C. White, Esq.
Thompson, Hine – Cleveland
3900 Key Tower
127 Public Square
Cleveland, Ohio 441144
Via Email:
Kip.bollin@thompsonhine.com
Kyle.hutnick@thompsonhine.com
Robert.ware@thompsonhine.com
Thomas.ritzert@thompsonhine.com
Anthony.white@thompsonhine.com

*/s/ Bridget C. Coontz*
_____
Bridget C. Coontz (0072919)
*Counsel for the State of Ohio*