# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| CLEVELAND BROWNS FOOTBALL COMPANY LLC, | ) CASE NO. 1:24-CV-01857 ) ) |
| Plaintiff, | ) JUDGE DAVID A. RUIZ ) |
| vs. | ) ) ) Magistrate Judge |
| THE CITY OF CLEVELAND, | ) Jonathan D. Greenberg ) |
| Defendant, | ) ) |
| STATE OF OHIO, | ) Defendant's Brief in Opposition to Plaintiff's ) Motion for Leave to Amend Its Amended ) Complaint |
| Intervenor. | ) |

## DEFENDANT CITY OF CLEVELAND'S
## BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND ITS AMENDED COMPLAINT

**INTRODUCTION**

Just over a month ago, the Browns filed their opposition brief to the City's motion to dismiss for lack of subject-matter jurisdiction. In that brief, the Browns accused the City of making jurisdictional arguments that were "contrived," "tortured," "strained," "illogical," "patently false," and even "dangerous." Doc. 26 (Opp. to City MTD) at 1, 3, 7, 9. The City's jurisdictional arguments, the Browns went on, "mischaracterize" the governing authority, have "no support," and "[can]not withstand minimal scrutiny." *Id.* at 8, 9. The Browns thus told this Court, the City, the State, and the public more generally—again, just over a month ago—that their first amended complaint was "well pled" and that this Court "undoubtedly" had jurisdiction. *Id.* at 2, 5.

But now, in seeking leave to file a new complaint—with a new federal cause of action, new alleged bases for jurisdiction, new relief, new plaintiffs, and a new defendant—the Browns effectively concede that the City was right about jurisdiction all along. In a month, the Browns went from calling the City's jurisdictional arguments "dangerous" to conceding that only a new complaint gives them any chance in federal court. What's changed? The law has not. The facts have not. The parties have not. The Court has not. The fundamentals have not.

The complaint should not either. In their three-page motion for leave to amend, the Browns never explain what has changed—never explain why, exactly, they think they need to amend their complaint. As best the City can tell, the only thing that has changed since the Browns accused the City of making "patently false" jurisdictional arguments is the Browns' law firm of choice: The Browns left the Cleveland market to hire a law firm from New York City. And that new law firm appears to no longer think that the City's jurisdictional arguments are "rhetorical posturing," "illogical," and "contrived"; to the contrary, they appear to think these arguments are exactly right. That is why the Browns' proposed new complaint tries to create jurisdiction in each spot where the City identified it as currently lacking—pleading a new cause of action (§ 1983), seeking new

1

relief (an injunction), and bringing in a new defendant (City Law Director Mark Griffin).

Federal-court pleading, however, does not work this way. A plaintiff "cannot create jurisdiction by amending their complaints to add a new federal claim" (here, § 1983). *In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, 953 F.3d 890, 895 (6th Cir. 2020). After all, "subject matter jurisdiction cannot be created retroactively by amendment." *Stapp v. Broadwing, Inc.*, 2009 WL 530100, at *2 (S.D. Ohio Feb. 27, 2009). Instead, when, as here, jurisdiction does not already exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

Nor, at any rate, have the Browns offered any reason why "justice [] requires" permitting their new complaint. Fed. R. Civ. P. 15(a)(2). In their cursory motion, they have offered no affirmative reason *at all* for needing or wanting to amend—itself a reason to deny their motion. *See Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir. 2001).

Reading between the lines (as the City and Court must do, given the Browns' say-nothing motion), it appears that the Browns want to amend because they hired new counsel who realized that the Browns' motion-to-dismiss opposition brief is manifestly erroneous—who realized that the City's jurisdictional arguments are correct. But "[t]he retention of a new attorney able to perceive or draft different or more creative claims from the same set of facts" is not a legitimate basis for amendment of a pleading. *Rhodes v. Amarillo Hospital District*, 654 F.2d 1148, 1154 (5th Cir. 1981); *see, e.g.*, *Rheil v. Hook*, 401 B.R. 256, 260 (Bankr. S.D. Ohio 2009). Neither is it enough, as the Sixth Circuit has held, that the Browns harbored "[a] misconception of the law," *Troxel Mfg. Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973)—as when (for example) they called the City's jurisdictional arguments "patently false." The Browns already had two chances, in their original and first amended complaints, to create jurisdiction. Now that the

briefing on the operative complaint is complete, this Court is fully "justified in concluding that to put [the City] through the time and expense of continued litigation . . . would be manifestly unfair and unduly prejudicial." *Id.*; *see, e.g.*, *Alexander v. Univ. of Memphis*, 2021 WL 2579973, at *5 (6th Cir. June 7, 2021); *Shane v. Bunzl Distrib. USA, Inc.*, 275 F. App'x 535, 537–38 (6th Cir. 2008); *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 874–75 (6th Cir. 1973).

If all this were not enough, the Browns' motion for leave to amend is also futile. Some things change (the Browns' new attorneys), but some things remain very much the same (the reality that federal court is not the proper forum and that the Browns' claims fail). The Browns' proposed new pleading here, along with their response to the City's lawsuit in state court, only makes the need for this case to be litigated in state court *more* glaring. The Browns have only *added* to the state-law questions that must be answered before any court would reach the constitutional merits (if a court would reach them at all). And those constitutional merits remain as weak as before. Amending the complaint is thus futile several times over. Leave should be denied.

To this day, the Browns remain blind to the Modell Law's obligations as they continue to charge ahead with their fraught Brook Park dome project.[1] But it is well past time for the Browns to face the implications of flouting Ohio law—in an Ohio state court.

## ARGUMENT

If the reader knew nothing about Civil Rule 15 and read only the Browns' three-page motion for leave to amend, the reader would be excused for thinking that plaintiffs are *entitled* to amend their complaint whenever "the initial case management conference has not yet occurred." Doc. 30 (Mot. for Leave to Amend) at 1. The Browns certainly treat their motion that way. But that, of course, is not the law. The Browns *already* took advantage of their one amendment as of

---

[1] *See* Easterling, *Browns owners see June 30 deadline for state funds as next key date in stadium project*, Akron Beacon Journal (Mar. 31, 2025).

3

right. Doc. 12 (Am. Compl.). After that—and especially after briefing on dispositive motions is complete—plaintiffs must obtain approval to further amend. Fed. R. Civ. P. 15(a)(2). This "requirement of judicial approval demonstrates that leave to amend is not granted automatically." *Jackson v. Harris*, 2020 WL 13984345, at *1 (N.D. Ohio Feb. 7, 2020) (Ruiz, J.).

Judicial approval should be denied here for three independent reasons. *First*, this Court lacks jurisdiction to grant leave—and a proposed amended complaint cannot create jurisdiction. *Second*, a court should "not grant a motion to amend" when, as here, the amendment's reason is unstated or improper. *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 737 (6th Cir. 2022). And *third*, the Court would still have to dismiss the proposed new complaint, making the amendment futile at any rate. Leave should therefore be denied. *See, e.g.*, *Ashland Univ. v. Sec'y of Dep't of Educ.*, 2024 WL 5088564, at *2 (N.D. Ohio Dec. 11, 2024) (Ruiz, J.); *Migdal 1, LLC v. Hyundai Motor Am. Corp.*, 2023 WL 6214528, at *4 (N.D. Ohio Sept. 25, 2023) (Ruiz, J.).

## I. THIS COURT (STILL) LACKS JURISDICTION.

Although the Browns do not explain their reason for wanting to amend the complaint (itself a problem discussed in Section II), their reason does not really matter, because the Court lacks jurisdiction under the existing, operative complaint. *See* Doc. 25 (City MTD Br.) at 9–14; Doc. 28 (City Reply Br.) at 4–15. Specifically: (1) the Browns failed to invoke § 1983 or any other right of action, *see Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 902 (6th Cir. 2014); *see, e.g.*, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992); (2) the Browns' instead sought only declaratory relief under the Declaratory Judgment Act, which is not sufficient for federal-question jurisdiction, *see Skelly Oil Co. v. Phillips Petrol. Co.*, 339 U.S. 667, 671 (1950); *Toledo v. Jackson*, 485 F.3d 836, 839 (6th Cir. 2007); *see also, e.g.*, *Marek v. Navient Corp.*, 2016 WL 11264709, at *3 (N.D. Ohio Dec. 6, 2016) (Ruiz, J.); and (3) the Browns lack standing anyway due to their failure to seek any relief that would actually redress their alleged

4

injury (enforcement of the Modell Law), *see Haaland v. Brackeen*, 599 U.S. 255, 294 (2023).

Without calling attention to it in their motion for leave to amend, the Browns quietly attempt to retroactively correct each of these three jurisdictional problems by, as they put it, "add[ing] new parties and claims." Mot. for Leave to Amend at 1. Most notably, they propose to add the "obvious path to federal court for most constitutional violations": § 1983. City Reply Br. at 7; *see* Doc. 30-1 (2d Am. Compl.) ¶¶ 14, 16, 96, 115. The Browns also propose to add jurisdictional allegations—no longer resting exclusively on the Declaratory Judgment Act. *See* 2d Am. Compl. ¶¶ 14, 16. And the Browns propose to add new relief (an injunction) against a new defendant (Mark Griffin), *id.* ¶¶ 13, 16, 99–100, presumably to try to invoke *Ex parte Young*, 209 U.S. 123, 170 (1908), to give them an argument for Article III redressability. The Browns, in short, "seek to create jurisdiction by amending their complaints to add a new federal claim," a new defendant, and new relief. *DePuy Orthopaedics*, 953 F.3d at 895.

But under controlling law, *see, e.g.*, *id.* at 895–97 (collecting authorities), the Browns cannot do so. To even *address* whether to permit an amendment, the Court must have jurisdiction. *See Saxon Fibers, LLC. v. Wood*, 118 F. App'x 750, 752 (4th Cir. 2005); *Cliffs Nat. Res. Inc. v. Seneca Coal Res., LLC*, 2018 WL 2012900, at *5 (D. Del. Apr. 30, 2018). After all, "subject matter jurisdiction cannot be created retroactively by amendment." *Stapp*, 2009 WL 530100, at *2. So when, as here, jurisdiction does not already exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co.*, 523 U.S. at 94.

A federal statute confirms this. Congress provided that "[d]efective allegations of jurisdiction may be amended, upon terms." 28 U.S.C. § 1653. "At first blush, the language of this provision appears to cover the situation here," permitting the Browns' proposed amendments to allege jurisdiction when none existed originally. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490

5

U.S. 826, 830–31 (1989). But why, then, did the Browns not so much as mention this statute?

It is because this statute (and federal law more generally) *forecloses* the plaintiff from "creat[ing] jurisdiction by amending their complaints to add a new federal claim" (here, § 1983), far less to *also* add parties and relief. *DePuy Orthopaedics*, 953 F.3d at 895. Federal law instead permits only technical "changes to insufficient allegations of jurisdiction" (mostly on diversity jurisdiction, such as making clear where the parties are domiciled). *Id.*; *see also Newman–Green*, 490 U.S. at 831. It does not allow what the Browns seek here: to substantively change the claims, relief, and parties. "Put more simply, section 1653 permits amendments to clarify jurisdiction that has existed all along, but does not permit amendments to add new facts or claims to create new jurisdiction." *Brooks v. USAA Fed. Sav. Bank*, 2019 WL 7205891, at *1 (C.D. Cal. Feb. 19, 2019).

Thus, the Browns' attempt to "tack[] on additional claims"—including "Section 1983 claims"—is "beyond the scope of curing defective allegations of jurisdiction." *Saunders v. Huron Cnty. Comm'rs*, 2013 WL 1196438, at *2 (N.D. Ohio Mar. 22, 2013). Their new claim under the federal civil-rights statute comes with entirely different doctrinal issues that are not presented by the operative complaint. *See, e.g.*, *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978); *Chaney-Snell v. Young*, 98 F.4th 699, 708 (6th Cir. 2024). Nor does federal law permit "a plaintiff's attempt to amend" to make the Browns' *other* "substantive" changes to their allegations (such as on the relief sought and the defendants against whom it is sought). *DePuy Orthopaedics*, 953 F.3d at 895. These proposed changes confirm that the Browns are not merely fixing a technicality in jurisdictional pleading when jurisdiction previously existed, but rather seeking to "create jurisdiction" because none exists on their operative complaint. *Id.* "Their motion seeks to create jurisdiction, not to confirm it." *Id.* That is improper.

Courts routinely reject leave to amend in these circumstances. *See, e.g., id.* at 896–97

6

(rejecting attempt to add Magnuson-Moss Warranty Act claim); *Saunders*, 2013 WL 1196438, at *2 (same for § 1983); *Mills v. Maine*, 118 F.3d 37, 53 (1st Cir. 1997) (same for adding party for *Ex parte Young*); *Sumpter v. Hungerford*, 2014 WL 3401093, at *5 (E.D. La. 2014) (same for a "new federal claim against a new defendant"); *Cliffs Nat. Res. Inc.*, 2018 WL 2012900, at *4 (same for "entirely new theory of liability under a federal statute in an effort to establish federal question jurisdiction retroactively"); *see also Francisco v. Edmonson*, 2014 WL 4929329, at *2 (W.D. La. 2014) (in the § 1983 context, noting that "amendment to a complaint may not remedy a jurisdictional defect by asserting a cause of action to serve as a statutory basis for federal question jurisdiction"—just what is happening here). This Court should too: "The Constitution does not authorize Plaintiff's request." *Jordan v. Payment Saver*, 2024 WL 5165327, at *3 (D.S.C. 2024).

All told, then, while it is a step in the right direction for the Browns to implicitly concede that this Court lacked jurisdiction all along—for the very reasons the Browns a month ago called "patently false" and "dangerous"—that implicit concession dooms their motion. Jurisdiction was a problem for the Browns to try to fix *before* hastily filing this federal court complaint, or at least *before* filing their first amended complaint. By now, though, it is too late. They cannot manufacture jurisdiction through a retroactive amendment. This Court should dismiss instead.

## II. THE BROWNS' MOTION FOR LEAVE IS IMPROPER ANYWAY.

Even if this Court had jurisdiction to grant this motion, it should still deny it. The Browns fail to explain the changes they are trying to make or why they need them now—itself a reason to deny the motion. And to the extent that their reason can be gleaned, it is improper.

### A. The Browns Offer No Reason Why Justice Requires The Proposed Overhaul.

The Browns, not the City, bear the burden of showing why "justice [] requires" the substantial amendments to their complaint. Fed. R. Civ. P. 15(a)(2); *see Brautigam v. Damon*, 697 F. App'x 844, 851 (6th Cir. 2017). A party cannot satisfy their burden by saying nothing or by

7

saying only why the other side's arguments are wrong. *Brautigam*, 697 F. App'x at 851; *see also, e.g.*, *Tolliver v. Collins*, 2011 WL 4916193, at *2 (S.D. Ohio Oct. 14, 2011) (collecting cases). They instead "must set forth with particularity the . . . grounds supporting the application." Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1485 (3d ed.); *see* Fed. R. Civ. P. 7(b).

The Browns, however, offer no reason why "justice [] requires" the amendment. Their "cursory memorandum in support of [their] motion for leave to amend failed to explain" *both* why they think they need to amend *and* "why the district court's discretion should be exercised in [their] favor to permit amendment at th[is] point in the litigation." *Brautigam*, 697 F. App'x at 851 & n.2; *see Evans v. Pearson Enterprs., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006).

The closest the Browns get to setting forth the grounds for their motion "with particularity" is to argue that their new complaint would (1) "aid the efficient adjudication of [the] motions to dismiss" and (2) "work no prejudice to defendants." Doc. 30 (Mot. for Leave to Amend) at 2. Their first explanation—on efficiency—cuts very much against them. It would be *in*efficient to start over the motion-to-dismiss process, now that those motions are fully briefed and ready to resolve. The Browns' second explanation—on prejudice—misunderstands the nature of this inquiry. Rather than treating prejudice as one factor among many, the Browns treat prejudice as the be-all and end-all. *Id.* (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999), which affirmed the *denial* of a motion for leave to amend). But there is much more to the analysis than prejudice. *Carson v. U.S. Off. of Special Couns.*, 633 F.3d 487, 495 (6th Cir. 2011). Plus, the supposed lack of prejudice to the City and State is not an affirmative reason the Browns need to amend; it is a (misguided) defense to the City's prejudice argument. *See infra* at 11–13.

So why then, really, are the Browns seeking leave to amend? What is their (unstated) affirmative reason for doing so? The Browns' only possible explanation is that they "did not know

8

that [their] claims w[ere] legally defective until that was pointed out in the course of argument." *Rhymer v. Philip Morris, Inc.*, 164 F. App'x 268, 269 (3d Cir. 2006) (denying leave and citing Sixth Circuit law, *Troxel*, 489 F.2d at 971). But that is not enough. "In the Sixth Circuit," as elsewhere, "[a] misconception of the law is not an excuse"; "[a] court does not accept such a mistake as a basis for granting a Rule 15(a) motion." *Helms v. City of Green*, 2006 WL 8448477, at *3–5 (N.D. Ohio Dec. 28, 2006). The Browns "mistakenly or inadvertently failed to address everything in [the] original complaint," a lack of diligence that justifies denying their motion for leave to amend. *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008) (citation omitted).[2]

This remains true even when the plaintiff belatedly hires a new law firm "able to perceive or draft different or more creative claims from the same set of facts." *Rhodes*, 654 F.2d at 1154; *see, e.g.*, *Villa v. City of Chicago*, 924 F.2d 629, 632 (7th Cir. 1991); *Rheil*, 401 B.R. at 260. The Browns' chance to get the law right was in their initial and first amended complaints. They even could have waited to see the City's arguments before amending their complaint as of right. *See* Fed. R. Civ. P. 15(a)(1). But they did not do that. Instead, they amended first, and opposed second. "Justice" does not now "require" that the Browns are given yet another bite at the apple. This Court is instead "justified in concluding" that the City need not be put "through the time and expense" of having to re-brief dispositive motions on a new complaint—which "would be manifestly unfair and unduly prejudicial." *Troxel*, 489 F.2d at 971; *see, e.g.*, *Alexander*, 2021 WL 2579973, at *5; *Shane*, 275 F. App'x at 537–38; *Head*, 486 F.2d at 874–75; *Helms*, 2006 WL

---

[2] *See also, e.g.*, *Wash. v. Se. Pa. Transp. Auth.*, 2021 WL 2649146, at *33 (E.D. Pa. 2021) (party did "not explain why he did not amend his Complaint sooner, and appears to now seek leave to amend in anticipation of an adverse ruling on this claim"); *Schor v. Daley*, 563 F. Supp. 2d 893, 904 (N.D. Ill. 2008); *Am. Med. Ass'n v. United Healthcare*, 2006 WL 3833440, at *5 (S.D.N.Y. 2006) (denial when motion was made in "anticipation of an adverse ruling on the original claims"); *Tuggle v. Greektown Casino*, 2006 WL 8432451, at *2 (E.D. Mich. 2006) (similar).

8448477, at *5; see also, e.g., *Sodexo Mgmt., Inc. v. Benton Harbor Area Sch. Dist.*, 2016 WL 845338, at *3–4 (W.D. Mich. Mar. 2, 2016) (denying leave motion filed after dispositive briefing).

### B. The Browns' Motion Is In Bad Faith And Would Cause Prejudice.

There are other reasons, too, why the Browns' motion should be denied as improper under Fed. R. Civ. P. 15(a)(2). A party cannot seek leave to amend through bad-faith litigation tactics or when doing so would cause prejudice. *Skatemore*, 40 F.4th at 737. Both are true here.

***Bad faith.*** The Browns' motion for leave to amend continues the Browns' effort to cling to this federal-court case, rather than just litigating these issues in state court—where the case belongs. After rushing to federal court to try to secure their preferred forum, in what now was clearly a placeholder complaint, the Browns amended once. But they did not stop there. They then opposed the City's motion to dismiss in what has been exposed as a frivolous opposition brief. Hopefully, the Browns will formally recant their heated rhetoric from that brief—accusing the City of "rhetorical posturing" and calling the City's jurisdictional arguments "patently false," "strained," "contrived," "tortured," "illogical," unable to "withstand minimal scrutiny," and even "dangerous." Browns MTD Opp. at 1, 3, 7, 9, 11. Or, if the Browns do not withdraw that opposition brief, hopefully they will explain to this Court why it is that the Browns feel the need to add a § 1983 claim, injunctive relief, and an individual defendant—precisely the things they earlier insisted they did not need for this Court to have jurisdiction. But as things stand now, with the Browns trying to have it both ways, the Browns' litigation tactics reek of bad faith.

Then there is the timing of it all. A week after filing their motion-to-dismiss opposition brief, local counsel for the Browns called the City's counsel, explaining that they were planning to move for leave to amend. Mot. 1. But why the change of heart so soon after their aggressive opposition brief? Either the Browns did not do their research until *after* filing their opposition brief, or they directly misstated the law when they protested against the City's arguments.

10

But in any event, the Browns refused to discuss the content of their amendment or share a copy with the City. Instead, they just filed it weeks later. And the Browns timed this filing with a press blitz around the Brook Park Dome—having press releases come out within *minutes* of their federal filing.³ This tracks, too, the proposed new complaint's irrelevant allegations championing the background and generosity of the Browns' owner. *See, e.g.*, 2d Am. Compl. ¶¶ 40, 43, 46 (touting Jimmy Haslam "working his way up to CEO" after "pumping gas" and the Haslam Sports Group's charitable efforts). And this tracks the Browns' other attempts to litigate this case in the court of public opinion, rather than this Court.⁴ Unfortunately, none of this is in good faith.⁵

**Prejudice.** The Browns act as though they are not doing *anything* in moving for leave to amend—they act as though their new complaint would be some blip on the radar of this case. But just look at the redline comparing the proposed new complaint with the operative one. Ex. A. Look, too, to the fully briefed and ready-to-resolve motions to dismiss by the City and State. Starting all this over would absolutely prejudice the City and State.

---

³ *See, e.g.*, *A Letter to Cleveland Browns Fans in Northeast Ohio and Beyond on Our Stadium Process*, ClevelandBrowns.com (Mar. 18, 2025); *Haslam Sports Group Details Key Benefits of Proposed Enclosed Huntington Bank Field*, ClevelandBrowns.com (Mar. 18, 2025).

⁴ *See, e.g.*, Gallek, *Browns File New Demand for Federal Court to Rule on 'Modell Law'*, Fox News (Feb. 14, 2025); Carey & DeNatale, *Cleveland Browns Continue Push for 'Modell Law' to Be Ruled Unconstitutional by Federal Judge*, WKYC 3 Studios (Feb. 15, 2025); McCann, *Cleveland Browns Blast City Over 'Unnecessary' Stadium Lawsuits*, Sportico (Feb. 19, 2025).

⁵ For similar reasons, sanctions are warranted, and the City intends to seek them. From the beginning of this lawsuit, the City saw it for what it was: a "rush[] to federal court to try to preempt the City of Cleveland from enforcing the Modell Law where this dispute belongs," in state court. City Reply Br. at 1. The Browns' "race to the federal courthouse resulted in a facially defective complaint that fails to even allow this Court to reach the merits." *Id.* Now, by seeking leave to completely overhaul their complaint, the Browns prove the City right. The Browns' strident opposition to the City's motion to dismiss for lack of jurisdiction was based "on frivolous grounds," warranting costs and fees. LR 7.1(i); *see* Black's Law Dictionary 811 (11th ed. 2019). The Browns' whole process, moreover, has unreasonably "multiplie[d] the proceedings." 28 U.S.C. § 1927. And the Browns have "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991) (citation omitted).

True enough, in some cases the plaintiff waited even longer to try to amend.  But prejudice is not an exercise in counting the number of days that have passed since the initial complaint.  It is an exercise in examining the effect of the new complaint on the case.  And here, the new complaint would require, at a minimum, a full new round of dispositive motions.  *See, e.g.*, *Hiller v. HSBC Fin. Corp.*, 2014 WL 656258, at *3 (E.D. Mich. 2014) (denying leave because new facts were known when original complaint was filed and motions to dismiss fully briefed).  Nor would this new round of briefing be on the same theories.  The City's motion to dismiss, for example, targeted the fundamental jurisdictional problems with the operative complaint—especially the lack of any right of action (*e.g.*, § 1983) and the declaratory-only relief.  The Browns' proposed new complaint "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation"— meaning "the court may deem it prejudicial."  Wright & Miller, *supra*, § 1487 & n.11.  The City, in other words, "would have conducted [its] defense differently had Plaintiffs tendered their motion to amend" earlier.  *Helms*, 2006 WL 8448477, at *5.  That is enough for prejudice.  *See, e.g.*, *Gregory v. Mitchell*, 643 F.2d 199, 202–03 (5th Cir. 1981) (denying leave to amend filed after the court had taken motion to dismiss under submission); *Streambend Props. II, LLC v. Ivy Tower Minneapolis*, 781 F.3d 1003, 1015 (8th Cir. 2015) (motion denied when it "appears to have been brought . . . to avoid dismissal after defendants' motions to dismiss").

In fact, the Sixth Circuit has affirmed the denial of leave to amend "when the request was made after the defendant's motion to dismiss was fully briefed," because "allowing amendment" would "encourage delay and bad faith on the part of plaintiffs and prejudice defendants who would have wasted time and expense attacking a hypothetical complaint."  *Detrick v. Heidtman Steel Prods., Inc.*, 677 F. App'x 240, 246 (6th Cir. 2017).  Just so here.

None of this even considers the prejudice to Mark Griffin—who would go from bystander to federal-court defendant overnight. The Browns knew full well about him and yet never named him. He would have to retain counsel and answer or move. Yet another layer of unaddressed prejudice compounding with the Browns' dire effort to restart a case that never belonged here.

The Browns' ploy is also ironic, given that the Browns have brazenly criticized the City for being obstinate and delayed, *see* 2d Am. Compl. ¶ 80; Doc. 26 at 11–12; have emphasized that this litigation must move "expeditiously," Doc. 21 at 3–4; and have even opposed the City's request for a routine extension after the City had just retained counsel. Yet it is the *Browns*, not the City, who are trying to restart the clock here when there is already a pending case in state court.

\* \* \*

"Seeking to amend one's complaint when it appears that the current one is a sure loser is not unusual," but neither is it unusual to deny "leave to file that amended complaint." *Hindo v. Univ. of Health Scis.*, 65 F.3d 608, 615 (7th Cir. 1995). It is particularly appropriate for a court to curtail this type of "cat and mouse game of motions to dismiss followed by a motion to amend"— followed by news releases—that the Browns attempt here. *Thompson v. Ill. Dep't of Pro. Regul.*, 300 F.3d 750, 759 (7th Cir. 2002); *see, e.g.*, *Hesed-El v. Aldridge Pite*, 2021 WL 5504969, at \*7 (11th Cir. Nov. 24, 2021). The Browns' game in federal court should end now. Their dress-rehearsal complaints to try to secure a federal forum should be dismissed.

### III. THIS MOTION SHOULD BE DENIED FOR FUTILITY AT ANY RATE.

This case could not proceed even under the second amended complaint. *See, e.g.*, *Ashland Univ*, 2024 WL 5088564, at \*2 (denying for futility); *Migdal 1*, 2023 WL 6214528, at \*4 (same).

**A.** *Abstention*. The abstention arguments have only become stronger. For one thing, the Browns have made even clearer that this lawsuit is not properly the "first-filed" one: The City's state-court lawsuit is the first lawsuit to properly secure jurisdiction, which is what matters.

13

*See, e.g.*, *ABB Automation, Inc. v. Honeywell Inc.*, 2002 WL 483523, at *3 (S.D. Ohio Mar. 20, 2002); *Jefferson Ward Stores, Inc. v. Doody Co.*, 560 F. Supp. 35, 37 (E.D. Pa. 1983); *cf. U.S. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009) (abrogated on other grounds).

For another thing, the Browns have made even clearer that *Pullman* abstention applies. Case books indeed should be written about how perfectly this case fits the *Pullman* doctrine. It applies under the operative complaint: The Browns themselves claim that a state-law issue—whether the Modell Law applies to the Browns' Brook Park move—independently resolves the entire case in their favor, without any court ever needing to reach the constitutional merits. *See* City MTD Br. 17–19; City Reply Br. 17–20; Doc. 24 (State MTD Br.) at 4–6. And *Pullman* applies, as much or more, under the Browns' proposed new complaint: They lodge the same constitutional arguments against the Modell Law, *see* 2d Am. Compl. ¶¶ 82–118, and then raise the same independent state-law claim asking this Court to interpret the Modell Law as *inapplicable* to the Browns' actions, *id.* ¶¶ 119–22. *Pullman* applies when, as here, the plaintiff argues that the state law "might then not even apply to [them]." *Harrison v. NAACP*, 360 U.S. 167, 177 (1959).

The Browns' filings elsewhere confirm the need for *Pullman* abstention. In state court, they agree that this case and the City's state-court action "turn on" the "proper interpretation of the Modell Law." And the Browns have raised even more state-law arguments—contending, for example, that the Modell Law will not apply to them even in the future. The state court will eventually decide these state-law arguments, which would moot the constitutional claims raised here. Why should—indeed, how can—this Court rush to decide those constitutional claims?

**B.** ***Constitutional claims.*** Speaking of those constitutional claims that may never be ripe, they fail as a matter of law. Amending the complaint to retroactively create jurisdiction, even if it were possible, would therefore be futile: the new complaint would still fail to state a claim.

14

The State has fully briefed these arguments, which are all correct. State MTD Br. 7–19; Doc. 29 (State MTD Reply) at 4–11; *see* City Reply Br. 3 (agreeing). If anything, the State *understates* how strong these arguments are for dismissal. For example, the Browns' Contracts Clause claim fails because, as the State explains, no pre-Modell Law contractual rights *of the Browns* were impaired. State MTD Reply 7–8. But it also fails because there is no impairment of *any* contract, far less the "substantial impairment" needed for a violation. *Sveen v. Melin*, 584 U.S. 811, 819–26 (2018). The Modell Law requires the Browns only to either (A) obtain the City's consent for the team to move away from their stadium ("elsewhere"); or (B) offer the team for sale. Ohio Rev. Code § 9.67. Under what pre-1996 contract do the Browns have a contractual right to move without the City's consent or without first offering the team for sale? The Browns do not say. The closest they come is to allege that the Modell Law *affects* some contracts. 2d Am. Compl. ¶ 88. But "the [Supreme] Court has always recognized that some laws affect contracts without violating the Contracts Clause"—that laws that "enable a party with only minimal effort to protect his original contract rights" are constitutional. *Sveen*, 584 U.S. at 820 n.3. So too here.

The Browns have done nothing to change any of these failures (apart from unsuccessfully trying to hide that the contracts at issue post-date the enactment of the Modell Law, *compare* State MTD Br. 13; *with* 2d Am. Compl. (removing certain references to 1998 contract)). In short, nothing in the newly proposed complaint would change the reality that the Modell Law is constitutional. And once the Browns' constitutional claims are wiped away, there is no reason for this Court to exercise supplemental jurisdiction over the novel and complex state-law claim that a state court is better suited to address. 28 U.S.C. § 1367(c)(1), (3). All roads lead to state court.

## CONCLUSION

This Court should deny the Browns' motion to amend and dismiss the operative complaint.

Respectfully submitted:

/s/ *Justin E. Herdman*

Justin E. Herdman (0080418)
Tracy K. Stratford (0069457)
James R. Saywell (0092174)
Samuel V. Lioi (0100464)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Phone: (216) 586-7108
Fax:    (216) 579-0212
Email: jherdman@jonesday.com
         tkstratford@jonesday.com
         jsaywell@jonesday.com
         slioi@jonesday.com

Mark D. Griffin (0064141)
Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Email: MGriffin@clevelandohio.gov

*Attorneys for Defendant The City of Cleveland*

16

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed electronically on the 1st day of April, 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*s/ Justin E. Herdman*

*One of the Attorneys for Defendant The City of Cleveland*