**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| CLEVELAND BROWNS FOOTBALL COMPANY, LLC, | : : | Case No.  1:24-cv-01857 |
| Plaintiff, | : : | Judge David A. Ruiz |
| vs. | : : | |
| THE CITY OF CLEVELAND, et al. | : : | |
| Defendants. | : | |

**THE STATE OF OHIO'S OPPOSITION TO PLAINTIFF'S**
**MOTION TO FILE *SECOND AMENDED COMPLAINT***

I.      INTRODUCTION

More is not always better. Though the Browns are back with a third version of the complaint, seeking to add facts and parties, they still run headlong into the same problems faced by versions one and two. First, they are *still* seeking a declaration under Ohio law that is dispositive of their proposed federal claims. If they are correct that their actions neither "trigger or violate the Modell Law" this entire dispute is over and there is no reason to reach their federal claims. *Pullman*.still applies and this Court should abstain. *Second,* even if this Court were to reach the federal claims that this new group of Plaintiffs seek to bring, for the reasons set forth in the fully-briefed *Motions to Dismiss,* they would still fail. Amending the complaint to permit claims that must ultimately be dismissed is futile. The *Motion to Further Amend the Complaint* should be denied on that basis.

In the alternative, if this Court is inclined to give the Plaintiffs yet another shot, this case should be stayed pending the outcome of the state court case. Once again, an Ohio Court should be permitted to decide the dispositive—and novel—issues of Ohio law that Plaintiffs raise. If the Browns have confidence in their claim that their actions neither trigger nor violate the Modell Law, they should not object to a stay.

II.     BACKGROUND

The proposed *Second Amended Complaint* seems to add two things: parties and background. Beginning with parties, the Cleveland Browns Football Company, LLC, which owns and operates the Cleveland Browns NFL Franchise, again seeks to bring claims ("Browns Football Company"). Doc. No. 30-1 *Second Amended Complaint,* ¶ 8 ("*Sec. Am. Compl."*) Now, so too does the Cleveland Browns Stadium Company ("Browns Stadium Company"), JHAC, LLC, which owns both the Browns Football Company and the Browns Stadium Company, and Haslam Sports Group, which is the managing member of JHAC, LLC. *Id.* ¶¶ 9-11 (collectively, to include the Browns Football

Company, "Proposed Plaintiffs"). The Proposed Plaintiffs seek to bring their claims against the City of Cleveland ("City") and a new defendant, Mark Griffin, the City's Law Director. *Id.* ¶ 13.

Turning to the Background, the *Second Amended Complaint* lays out the history behind the City's 1973 lease with the Cleveland Browns. *Id.* ¶¶ 18-21. That lease was still in effect in 1995 when then-owner Art Modell sought to move the Team to Baltimore. *Id*. It is on that distinction that the Proposed Plaintiffs seem to hinge their claims. *Id.* ¶ 38. They are owners who "act nothing like Modell", and the Modell Law has never been applied to a situation like theirs. *Id.* Of course, these allegations only underscore the point that *how* Ohio law applies to the current situation is a threshold issue that triggers *Pullman.*

Leaving that aside, the *Second Amended Complaint* lays out the litigation that ensued when Art Modell threatened to move to Baltimore, as well as how it settled. *Id.* ¶¶ 21-35. Ultimately, Modell was permitted to move the existing Browns franchise to Baltimore but was required to surrender the Browns' name and records to the new NFL franchise in Cleveland. *Id.* ¶ 23. In return, the City was required to build, with funding from the NFL, a new stadium ("Stadium") to be leased by the new Browns Franchise for thirty years. *Id.* None of the Proposed Plaintiffs were a party to the settlement agreement, the Lease between the City and the NFL, or any of the other agreements which kept the Browns NFL franchise in Cleveland. *Id.; and see Id.,* Exhs. A and B.

The Lease and the Franchise Commitment Agreement were signed by the NFL and the City on June 12, 1996. *Id.,* Exhs. A and B. Though the proposed *Second Amended Complaint* alleges that the Lease was dated April 26, 1996, its terms provide that did not become effective until "the last of its executions". *Id.,* Exh. A, p. 80 § 43. The last person to execute the Lease was then-Cleveland Mayor Michael R. White, who signed on June 12, 1996. *Id.,* p. 85.

Ohio Revised Code § 9.67, known as the "Art Modell Law" was passed in reaction to Modell's attempt to move the Browns from Cleveland to Baltimore. *Id.* ¶ 36. It was passed by the 121st General

3

Assembly in a Supplemental Appropriations Bill on May 30, 1996. *See* Attachment A, 146 Ohio Laws, Part VI, 11560, 11824–25 (June 20, 1995). Because it was passed in an appropriations bill, it went into effect immediately. *Id.; see also,* Ohio Const. Art. II, §1d ("Laws providing for…appropriations for the current expenses o the state government and state institutions…shall go into immediate effect."). It provides:

> No owner of a professional sports team that uses a tax-supported facility for most of its home games and receives financial assistance from the state or a political subdivision thereof shall cease playing most of its home games at the facility and begin playing most of its home games elsewhere unless the owner either:
>
> (A) Enters into an agreement with the political subdivision permitting the team to play most of its home games elsewhere;
>
> (B) Gives the political subdivision in which the facility is located not less than six months' advance notice of the owner's intention to cease playing most of its home games at the facility and, during the six months after such notice, gives the political subdivision or any individual or group of individuals who reside in the area the opportunity to purchase the team.

Ohio Rev. Code § 9.67. After the Modell Law passed, the City built the Stadium and in 1998 Al Lerner acquired the new Browns Franchise. *Id.* ¶ 39.

The Haslam family acquired the Team in 2012. *Id.* In the *Second Amended Complaint* the Proposed Plaintiffs allege that the Stadium Company, which the Haslam Family owns, "is a party to *a lease*" of HBF Field from the City. *Id.* ¶ 9. But they do not allege that any are a party to "the Lease", which is defined in paragraph 25 as being the original Lease by Way of Concession executed by the NFL. *Id.* ¶ 25; *and see Id.,* Exh. A. Instead, they claim that the new Browns Franchise, owned by Al Lerner, assumed the Lease when he acquired the Team in 1998. *Id.* ¶ 39. Thus, it appears that the Stadium Company's "lease" referred to in paragraph 9 of the *Second Amended Complaint* is different than the "Lease" referred to in paragraph 25 and attached as Exhibit A.

The proposed *Second Amended Complaint* provides more detail regarding the Haslam family, their businesses, dedication to the community and their relationship with the City. It is fair to say that

4

in recent years, much of that relationship has centered on whether the Browns would stay in downtown Cleveland or move to Brook Park. *Id.* ¶¶ 40-72. When the Haslams determined that remaining in downtown was not practical and announced their intent to focus on moving to Brook Park, the City threatened to apply the Modell Law to the Browns. *Id.* ¶¶ 72-79. The result was this case and the state court case filed by the City and pending in the Cuyahoga County Court of Common Pleas. *City of Cleveland v. Haslam Sports Group, LLC, et al.,* Cuyahoga County Common Pleas Court Case No. CV-25-110189 (Moore, J.), filed January 14, 2025. Now, the Browns seek to amend their complaint for the third time. But the addition of parties and facts do not help this case clear its many hurdles, the first of which is *Pullman* abstention. Ultimately, the proposed amendment would be futile and should be denied on that basis. In the alternative, if the amendment is granted this case should be stayed so that the state court can be permitted to answer the dispositive question of Ohio law that the Proposed Plaintiffs pose: how can the Modell possibly apply to the Haslams? *Id.* ¶ 74.

### III. LAW AND ARGUMENT

While leave to amend a pleading "shall be freely given 'when justice so requires[,]" a district court may deny leave to amend if the proposed amendment would be futile. *Smith v. City of Memphis,* 2021 U.S. App. LEXIS 1825*4 (6th Cir.) (quoting *Moss v. United States,* 323 F.3d 445, 476 (6th Cir. 2003) (quoting Fed. R. Civ. P. 15(a). "[F]utility of amendment…is simply defined as an amendment to the complaint that would not survive a [Rule 12(b)(6)] motion to dismiss." *500 Assocs. v. Vt. Am. Corp.,* 496 Fed. App'x 589, 593 (6th Cir. 2012) (citing *Riverview Health Inst. LLC v. Medical Mut. of Ohio,* 601 F.3d 505, 512 (6th Cir. 2010). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must allege sufficient facts that, accepted as true, 'state a claim to relief that is plausible on its face.'" *Strayhorn v. Wyeth Pharms., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff

5

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Though the proposed *Second Amended Complaint* adds parties and facts, none of the additions can salvage this case. It still suffers the same defects as the *First Amended Complaint*. *First,* issues of state law are dispositive of the Proposed Plaintiffs' federal claims and *Pullman* abstention applies. *Second,* because none of the newly added Plaintiffs were party to a contract that the Modell Law could have conceivably impaired when it was passed, their Contract Clause claims still fail. *Third,* the Proposed Plaintiffs raise the same vagueness challenge from the *First Amended Complaint* that are subject to dismissal. Rather than fix their initial deficiencies, the Proposed Plaintiffs instead confuse questions of how the Modell Law *applies* to their situation with whether it is vague. There is no reason to amend a complaint for the third time to *still* be left with one that fails to state a cognizable claim. The *Motion to Amend* should be denied as futile.

1. ***Pullman* abstention still applies to the Second Amended Complaint.**

Rather than have confidence in their state law claim that their actions neither "trigger nor violate" the Modell Law, the Proposed Plaintiffs double down on their efforts to avoid Ohio courts. But "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state court an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 83 (1975) (citing *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941)). "If the state courts would be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." *Harris,* 420 U.S. at 84; *GTE North, Inc. v. Strand,* 209 F.3d 909, 921 (6th Cir. 2000).

When determining whether to apply *Pullman* abstention, the Sixth Circuit asks two questions: 1) whether an unclear state law exists; and 2) the likelihood that the state court's decision on the state law issue would "obviate the necessity for a decision of the federal constitutional question or substantially modify the constitutional issue." *Tyler v. Collins,* 709 F.2d 1106, 1108 (6th Cir. 1983) (quoting 1A Moore's Federal Practice P0.203[1] (1982)). "If the state courts would be likely to construe the statute in a fashion that would avoid the need for federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong." *Harris,* 420 U.S. at 84; *GTE North, Inc. v. Strand,* 209 F.3d 909, 921 (6th Cir. 2000).

Though there are more of them now, the Proposed Plaintiffs seek the same state law declaration sought in the *First Amended Complaint*: "that any action by the Browns to cease playing most of their home games at Huntington Bank Field after their existing lease of that facility expires does not trigger or violate the Modell Law." *Compare, Sec. Am. Compl.,* ¶¶ 119-122, and *First Am. Compl.,* ¶¶ 122-131. If they are correct on their question of state law, the federal claims fall away. The case pending in the Cuyahoga County Court of Common Pleas will decide whether they are.

Rather than allow the Ohio court to decide this case of first impression under Ohio law, the Browns redouble their efforts to avoid that result. They moved to stay the state court proceeding "in favor of" this federal case. *City of Cleveland v. Haslam Sports Group, LLC, et al.,* Cuyahoga County Common Pleas Court Case No. CV-25-110189, *Defendants' Motion to Stay the Action, or in the Alternative, Dismiss the Complaint,* filed March 18, 2025. They have it backwards. *Pullman* firmly establishes that an Ohio court should decide the novel issues of Ohio law. This is especially true here, where those issues are teed up and ready to proceed, but for the Plaintiffs' own attempt to delay.

**2. None of the Proposed Plaintiffs had a contract to impair.**

Leaving aside abstention, the proposed *Second Amended Complaint* does not fix the Contract Clause claim. That is, even with the additional plaintiffs and history, timing is still fatal. The *Second*

7

*Amended Complaint still* fails to identify a single contract to which any of the Proposed Plaintiffs were a party when the Modell Law was passed.

Article I, Section 10 of the United States Constitution prevents the State from passing laws that impair the obligation of contracts. "When assessing a claim under the contracts clause, the first step is to determine 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Home-Owners, Inc. v. Boxer,* 2024 U.S. App. LEXIS 26426 *20 (quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). The question is "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein,* 503 U.S. 181, 186 (1992).

Importantly, it is impossible for a statute to unconstitutionally impair a contract that did not exist when the statute was enacted. *See Texaco, Inc. v. Short,* 454 U.S. 516, 531, (1982). Parties contract against the backdrop of the applicable law and "[t]he laws which subsist at the time and place of the making of a contract" form a part of it, even if not "expressly referred to or incorporated in its terms." *Home Bldg. & Loan Asso. v. Blaisdell,* 290 U.S. 398, 429-30 (1934). "[C]ourts only consider whether the law impaired *vested* contract rights." *Home-Owners Ins.,* 2024 U.S. App. LEXIS 26426*21 (emphasis in original). Considering this question, the relevant timeline is as follows:

- May 30, 1996 the 121st General Assembly passes Ohio Rev. Code § 9.67, which became immediately effective;
- June 12, 1996 Lease by way of Conversion ("Lease") between the City and the NFL effective, *Sec. Am. Compl,* Exh. A;
- June 12, 1996 Franchise Commitment Agreement between the City and the NFL effective, *Id.,* Exh. B;
- 1998 Al Lerner acquires the new Browns Franchise and assumed the Lease, *Id.* ¶ 19
- 2012 the Haslam family acquired the Browns. *Id.* ¶ 40.

8

None of the Proposed Plaintiffs were a party to the Lease when the Modell Law *passed*. Neither was the NFL. It did not sign the Lease or the Franchise Commitment Agreement until June 12, 1996. *See Id.,* Exhs. A and B. As far as timing, the *Second Amended Complaint* fares no better than the first.

Even if timing were not dispositive, the Contracts Cause claim would still fail because the *Second Amended Complaint* does not allege any facts to support the conclusion that any contracts are or will be impaired impaired. To the contrary- the gist of the Proposed Plaintiffs' argument is that they intend to fulfill all terms of the Lease, and under those circumstances the Modell Law does not apply. Said differently, they assert their intention to comply with all contractual requirements, and do not allege that anything is impairing their ability to do so.

Finally, the *Second Amended Complaint* errs by focusing on the wrong question. On its own, Ohio Rev. Code § 9.67 does not impose any obligations on anyone. The requirements of the Statute come into play only when the owner of a professional sports team "receives financial assistance from the state or a political subdivision." It is the owner's choice to accept public money that gives rise obligations under that statute. The relevant question is therefore whether Proposed Plaintiffs chose to accept public funds at any time after the statute's enactment. That is a question that the *Second Amended Complaint* does not address, and its silence on that point is telling.

3. **Plaintiffs' Commerce Clause Claim still fails.**

For the same reasons that the Plaintiffs' dormant Commerce Clause claim fails, so too would the Proposed Plaintiffs' Commerce Clause claim. The Commerce Clause "prevents States from discriminating 'against the citizens and products of other States[.]'" *Tenn. Wine & Spirits Retailers Ass'n v. Thomas,* 588 U.S. 504, 523, 139 S.Ct. 2449, 204 L.Ed.2d 801 (2019) (quoting *Walling v. Michigan,* 116 U.S. 446, 460, 6 S.Ct. 454, 29 L.Ed. 691 (1886) "Under the modern approach to the dormant Commerce Clause, a law's validity largely depends on whether it discriminates against out-of-state businesses in favor of in-state ones." *Truesdell v. Friedlander,* 80 F.4th 762, 764 (6th Cir.

2023) (citing *Nat'l Pork Producers,* 598 U.S. 356). The legal inquiry is divided into two steps. *Truesdell,* 80 F.4th at 768 (citing *C & A Carbone, Inc. v. Town of Clarkstown,* 511 U.S. 383, 390 (1994); and *Foresight Coal Sales, LLC v. Chandler,* 60 F.4th 288, 295 (6th Cir. 2023). Step one is to "ask whether a challenged state law "discriminates" against out-of-state economic interests to benefit local economic interests." *Truesdell,* 80F.4th at 768. If it does not discriminate, step two is to ask "whether it nevertheless inflicts a 'substantial harm' on interstate commerce." *Id.*

*First*, Ohio Rev. Code § 9.67 does not discriminate on its face. *Id.* It neither mentions nor restricts who may purchase a team. Nor does it exclude who may have the "opportunity to purchase." Instead, Ohio Rev. Code § 9.67 treats out-of-state purchasers, in-state purchasers that are not from the area, the political subdivision, and investors in the area identically. The only point is that the political subdivision that expended taxpayer money, as well as investors in the area, must be given the same *chance* as everyone else. They are in the running, but no one else is removed from it.

That is why the identical argument was rejected in the only other case to consider a Commerce Clause challenge to the Modell Law. *See State of Ohio ex rel. Ohio Attorney General Mike DeWine, et al. v. Precourt Sports Ventures, LLC, et al.* Franklin County Common Pleas Court Case No. 18-CV-001864 (Brown, J.) (Dec. 3, 2018 Order denying *Motion to Dismiss*). There the court noted that "nothing in the plain text of Ohio Rev. Code § 9.67 excludes those from outside of Ohio to also participate in the same opportunity" as those from inside Ohio. *Id*. Rather "[t]he only residency distinction in Ohio Rev. Code § 9.67 is to at least give local purchasers the opportunity to buy the team, the same opportunity afforded to out-of-state purchasers." *Id*. The court then correctly concluded that the Statute is not facially discriminatory and does not favor in-state businesses to the detriment of those from out-of-state. *Id*. at 34.

Given that Ohio Rev. Code § 9.67 does not discriminate between in-state and out-of-state businesses, the next question is "whether it nevertheless inflicts a 'substantial harm' on interstate

10

commerce." *Truesdell,* 80 F.4th at 768 (citing *Nat'l Pork Producers,* 143 S.Ct. at 1162-63 (plurality opinion)). A statute that appears facially neutral may still discriminate against interstate commerce in its operation. *Id.* at 770. But "a court must not confuse a law that has only a disparate impact on out-of-state businesses for one that has discriminatory effects on interstate commerce." *Id.* at 771. Disparate impact alone is not enough. *Id.* (citing *Exxon Corp. v. Governor of Md.,* 437 U.S. 117, 126 (1978)). Instead, "a facially neutral law has a discriminatory effect if it gives in-state entities a 'competitive advantage' that will lead consumers to shift market share to those entities." *Truesdell,* 80 F.4th at 770.

A law may still violate the Commerce Clause if "its interstate 'burden[s]' 'clearly' exceed its 'local benefits' under a benefits-burdens balancing test that the Supreme Court adopted in *Pike."* *Id.* at 768 (quoting *Pike v. Bruce Church,* 397 U.S. 137, 142 (1970)). The United States Supreme Court's controlling plurality opinion in *Nat'l Pork Producers* recently imposed important constraints on the *Pike* balancing test. *Truesdell,* 80 F.4th at 768 (citing *Nat'l Pork Producers,* 143 S.Ct. at 1161-64). Now, courts "should not even attempt to quantify a state law's local 'benefits' or compare those benefits to the law's costs unless the challenger has first shown that the law inflicts 'substantial burdens' on interstate commerce[.]'" *Truesdell,* 80 F.4th at 768 (quoting *Nat'l Pork Producers,* 143 S.Ct. at 1161). Even then, the court should consider only the interstate commerce burdens, not the costs allegedly incurred by specific businesses. *Truesdell,* 80 F.4th at 768.

The *Second Amended Complaint* still asserts nothing more than the conclusory allegation that the Modell Law "places excessive burdens on interstate commerce without advancing any legitimate local interest." *Sec. Am. Compl.* ¶ 91. But that is all it alleges. The Proposed Plaintiffs do not allege any facts to support the conclusion that the Modell Law substantially burdens *all* of interstate commerce, as they must under Fed. Civ. R. 12(b)(6). *See Nat'l Pork Producers,* 598 U.S. at 385. But there is no more to allege, because Ohio Rev. Code § 9.67 does not give in-state entities (such as the

11

Proposed Plaintiffs) *anything* that is unavailable to out-of-state entities. At most, it levels the "opportunity" playing field between the City, investors in the area, and every other possible in- or out-of-state purchaser. But it does not give the City, or anyone else, purchaser selection rights.

The Modell Law impacts only a small subset of specific businesses – professional sports teams in Ohio that play a majority of their home games in a tax-supported facility and receive financial assistance from the state or a political subdivision, that want to relocate and play the majority of their games somewhere other than the taxpayer-supported facility. This limited reach falls far short of the impact on *all* interstate commerce which is required to sustain a Commerce Clause challenge after *Nat'l Pork Producers'* limited *Pike*. *See Truesdell*, 80 F.4th at 773 (citing *Nat'l Pork Producers,* 43 S.Ct. at 1161-64 (plurality opinion)). Rather than regulate interstate commerce the Statute imposes easily avoidable conditions upon those who voluntarily accept (and often lobby for) taxpayer money to support their private business. The Commerce Clause is neither triggered nor violated.

But even if the *Second Amended Complaint* alleged a substantial impact on interstate commerce, the Modell Law's benefits easily outweigh any cost. The Statute protects not just the initial investment, but the promise of down-the-road benefits which justified the initial taxpayer support. *See Precourt* at 39 (recognizing that a sports franchise is of significant value to the public and to the well-being of the community). For example, the Proposed Plaintiffs tout the benefits of a domed stadium in Cleveland and the Brook Park option. *Sec. Am. Compl.* ¶ 56 (stating "a dome multiplies by several times the economic impact and tax revenues a stadium can generate"); *Id.* ¶ 60 (stating "state and local revenues from additional year-round use of the [Brook Park] stadium beyond Browns games—projected to be more than $6.3 billion over a thirty-year lease term—will enable construction of a world-class sports facility that in time will pay for itself."). They are correct on both fronts. Both options drive economic development. The point is that when public money is invested to drive economic activity, the political subdivision that made the investment gets the chance

12

to protect not only the initial investment, but the promise of future benefits which justified the initial outlay. The burden of providing an equal opportunity is correspondingly low to the scope and effect of Ohio Rev. Code § 9.67. *Precourt* at 39. Its benefits far outweigh its benefits.

   **4. Plaintiffs' vagueness challenge will still fail.**

The *Second Amended Complaint* recycles the same vagueness challenge, but then tacks on questions about the Statute's applicability. It conflates vagueness with merits questions that can be—and should be—answered in the state court case. For example, the Proposed Plaintiffs ask "whether [the Modell Law's] requirements are triggered when the Browns have complied and will comply with all game usage obligations of the lease agreement"; "what agreements can satisfy its requirement of an 'agreement with the political subdivision permitting the team to play most of its home games elsewhere'"; "the nature and timing of financial assistance the Browns must receive for their owner to be subject to the Modell law"; "the standard for determining the time of 'the owner's intention to cease playing most of its home games at the facility'"; and "the nature of the required 'six months' advance notice' and the manner in which it can be adequately provided." *Sec. Am. Compl.* ¶ 94.

A statute is not vague simply because a party does not yet know the answer to a merits-based question. That is what trial courts are for. The Browns cannot credibly claim confusion over how the Modell Law applies to them, while affirmatively trying to prevent an Ohio court from providing those answers.

Turning to the re-hashed vagueness challenge, a law will survive a void-for-vagueness challenge so long as it provides "'the person of ordinary intelligence a reasonable opportunity to know what is prohibited' and offer[s] clear standards to judges, juries, and police that prevent discriminatory or arbitrary enforcement." *Stevens v. City of Columbus,* 2022 U.S. App. LEXIS 20829 *11 (citing *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972)). But "mathematical certainty" in statutory language is not required and "perfect clarity and precise guidance have never been required even of

13

regulations that restrict expressive activity[.]" *Stevens* 2022 U.S. App. LEXIS 20829 *12, (citing *United States v. Williams,* 553 U.S. 285, 304 (2008) (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 794 (1989)). Further, "[i]n the absence of legislative intent to the contrary, the plain and ordinary meaning of the statute controls." *United States v. Edge,* 989 F.2d 871, 878 (6th Cir. 1993).

Ohio Rev. Code § 9.67 does not regulate expressive activity *and* it is a civil statute. This matters because "'[c]ivil laws not implicating the First Amendment are reviewed less stringently than criminal laws 'because the consequences of imprecision are qualitatively less severe.'" *Stevens,* 2022 U.S. App. LEXIS 20829 *13 (quoting *Hoffman Estates v. Flipside,* 455 U.S. 489, 498 (1982)). Thus, "[c]ourts [] typically consider only as-applied challenges to civil laws." *Id.* (citing *Belle Maer Harbor v. Charter Twp. Of Harrison,* 170 F.3d 553, 557 (6th Cir. 1999); *see also, Burch v. USDA,* 174 F. App'x. 328, 333 (6th Cir. 2006) (quoting, *United States v. Mazurie,* 419 U.S. 544, 550 (1975) ("'vagueness challenges to statues which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.'")).

Even then, "regulatory statutes governing business activities, where the acts limited are in a narrow category, [receive] greater leeway." *Burch,* 174 F. App'x. 328 * 12 (quoting *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162 (1972)). Economic regulation is subject to a less stringent vagueness test "because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action." *Id.* (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498, (1982)). These businesses "may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process. *Hoffman Estates,* 455 U.S. at 498.

The Modell Law is narrow. It applies only to 1) professional sports teams; 2) that use a taxpayer-supported facility for most of their home games and receive financial assistance from the

14

state or political subdivision; and 3) who want to begin playing most of their home games somewhere other than the facility. These businesses have the perfect opportunity to clarify its meaning *before* they accept public funding. Their failure to do so does not make the Statute unconstitutionally vague.

Nonetheless, the *Second Amended Complaint* strings together some of the same vagueness challenges that fail in the *First Amended Complaint.* Specifically, it questions the lack of a definition of the "area" in which a "group of individuals" must reside to be given the "opportunity to purchase the team". The meaning of "reside in the area" is easy to understand and withstood an identical challenge in *Precourt*. There, the court recognized that the term "area" is used in connection with "political subdivision" and these words must be read in context, as Ohio law requires. *Precourt* at 50 (citing Ohio Rev. Code § 1.42). Read together, a person of ordinary intelligence would understand this to mean the area around the City of Cleveland.

"Opportunity to purchase" is equally clear. "Read in context, the phrase is clearly read by an individual of ordinary intelligence to mean a chance to buy." *Precourt* at 49. The Statute's "opportunity to purchase" requirement is straightforward, and is one used by courts in interpreting contracts. *See United States ex rel. Martin v. Hathaway* 63 F.4th 1043, 1055 (6th Cir. 2023) (interpreting "remuneration" as including the opportunity to purchase company stock); *SEC v. G. Weeks Secur., Inc.* 678 F.2d 649, 652 (6th Cir. 1982) (stating a firm commitment contract offers the buyer the opportunity to purchase a commodity at some point in the future at or near current prices). Any other questions about how to satisfy the "opportunity to purchase" requirement can be easily answered in the state court case. *See e.g. Sec. Am. Compl.* ¶ 94.

So too can the Proposed Plaintiffs' questions regarding the nature and timing of financial assistance that trigger the Modell Law. *Id.* Regardless, a person of ordinary intelligence would understand "financial assistance" to include the taxpayer support that the Browns admitted they will receive through 2028. *See First Am. Compl.* ¶ 3 (stating that upon expiration of the Lease, "nor will

15

there be any obligation for there to be taxpayer funds used to support [Huntington Bank Field], the Browns, or the Team's use of HBF."); *and see* American Heritage Dictionary of the English Language (5th ed. 2022) (defining "financial" as "of, relating to, or involving finance, finances, or financiers" and "finances" as "monetary resources"; and "assistance" as "the act of helping" or "aid; help").

Finally, the Modell Law is an 'either/or' statute. The owner of a team can either enter into an agreement with a political subdivision permitting it to play the majority of its home games elsewhere and satisfy Ohio Rev. Code § 9.67(A); *or* it can give notice of its intention to move and an opportunity to purchase under Ohio Rev. Code § 9.67(B). The City and the Browns do not have an agreement under Ohio Rev. Code § 9.67(A). Thus, that subsection has no application in this case and the Proposed Plaintiffs cannot challenge it on vagueness grounds. *Id.* ¶ 94; *see Warth v. Seldin,* 422 U.S. 490 (1975) (a party must generally assert his own legal rights and cannot rest his claim to relief on the legal rights and interests of third parties).

A law is not vague simply because parties disagree—and ultimately litigate—whether it has been satisfied. The Proposed Plaintiffs cannot create ambiguity by conflating their merits-based claims with their constitutional ones. The Cuyahoga County Common Pleas Court is poised to answer their merits-based challenges and a person of ordinary intelligence can easily understand what is left.

### IV. CONCLUSION

It is not efficient to permit an amendment which poses dispositive questions of state law that can be (and should be) decided in the pending state court action. That is particularly true here, where the amended complaint also fails to state a cognizable federal claim. The most efficient—and legally sound—approach is to apply *Pullman* and permit the Ohio court decide the novel issues of Ohio law that the Browns present. If the Browns are correct, and their actions neither trigger nor violate the Modell Law, this Court will be left with nothing to do. That is efficiency. For the foregoing reasons the Plaintiff's *Motion for Leave to Further Amend the Complaint* should be denied.

Respectfully submitted,

DAVE YOST
OHIO ATTORNEY GENERAL

*/s/ Bridget C. Coontz*
Bridget C. Coontz (0072919)
Chief Counsel and Ethics Officer
Samuel C. Peterson (0081342)
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Tel: 614-728-2035
bridget.coontz@OhioAGO.gov
Samuel.peterson@ohioago.gov

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed electronically on the 1st day of April, 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

>*/s/ Bridget C. Coontz*
> Bridget C. Coontz (0072919)
> Chief Counsel and Ethics Officer
> 30 East Broad Street, 17th Floor
> Columbus, Ohio 43215
> Tel: 614-728-2035
> bridget.coontz@OhioAGO.gov