# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| **CLEVELAND BROWNS FOOTBALL COMPANY, LLC,** | : | |
| | : | Case No. 1:24-cv-01857 |
| Plaintiff, | : | |
| | : | Judge David A. Ruiz |
| vs. | : | |
| | : | |
| **THE CITY OF CLEVELAND, et al.** | : | |
| | : | |
| Defendants. | : | |

## THE STATE OF OHIO'S SUPPLEMENTAL MOTION TO DISMISS PLAINTIFF'S *SECOND AMENDED COMPLAINT*

This case is moot and should be dismissed. As of September 30, 2025, the version of Ohio Revised Code Section 9.67 at issue in this case will no longer exist. It was repealed. The new version of Ohio Rev. Code §9.67 is significantly different than the one challenged here, and it eliminates the constitutional concerns that the Browns raise. In fact, the new Ohio Rev. Code §9.67 does not even apply to the Browns' proposed move from Cleveland to Brook Park. There is no longer a live case-or-controversy before this Court, and this case should be dismissed. But even if this Court had jurisdiction to consider a repealed statute, as set forth in the State of Ohio's pending *Motion to Dismiss the Second Amended Complaint*, ECF Doc. No. 45, this case should still be dismissed. The reasons for this Motion are set forth in the attached Memorandum.

Respectfully submitted,

DAVE YOST
OHIO ATTORNEY GENERAL

*/s/ Bridget C. Coontz*

Bridget C. Coontz (0072919)
Chief Counsel and Ethics Officer
Samuel C. Peterson (0081342)
Deputy Solicitor General
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Tel: 614-728-2035
bridget.coontz@OhioAGO.gov
samuel.peterson@ohioago.gov

## MEMORANDUM IN SUPPORT

Since the State of Ohio last moved to dismiss this case, much has happened. The Ohio General Assembly pledged $600 million in the State's two-year operating budget to facilitate the Browns' move to Brook Park, Ohio. It also changed the law challenged here— Ohio Revised Code Section 9.67—such that it can longer stand in the way. Rather than recognize their legislative success, the Browns continue to press forward with this case and ask this Court to declare unconstitutional a statute that, as of September 30, 2025, will no longer be in effect. In other words, they are asking for an advisory opinion regarding a repealed statute. It makes no sense to give it to them. Ohio Rev. Code §9.67, commonly known as the "Modell Law," has been amended such that they are no longer subject to its requirements. And while the Browns' federal claims were always doomed to fail, they are even more so now that the law has changed. Through the legislative process, the Browns already attained the result they seek here – elimination of the old version of Ohio Rev. Code §9.67 which would have applied to their proposed move to Brook Park. Having done so, they mooted this case. It should be dismissed.

## BACKGROUND

The facts of this case are as laid out in the State's *Motion to Dismiss Plaintiff's Second Amended Complaint*. ECF Doc. No. 45. Though they have not changed, the law that applies to those facts has. Specifically, this case centers on the constitutionality and applicability of Ohio Rev. Code §9.67, the so-called "Art Modell Law". *See generally,* ECF Doc. No. 41, *Second Amended Complaint.* As passed by the 121st General Assembly on May 30, 1996, Ohio Rev. Code §9.67 provides:

> No owner of a professional sports team that uses a tax-supported facility for most of its home games and receives financial assistance from the state or a political subdivision thereof shall cease playing most of its home games as the facility and

1

begin playing most of its home games elsewhere unless the owner either:

(A) Enters into an agreement with the political subdivision permitting the team to play most of its home games elsewhere;

(B) Gives the political subdivision in which the facility is located not less than six months' advance notice of the owner's intention to cease playing most of its home games at the facility and, during the six months after such notice, gives the political subdivision or any individual or group of individuals who reside in the area the opportunity to purchase the team.

That version of the statute applied to a professional sports team that sought to play the majority of its home games anywhere other than the tax-supported facility. But that version of Ohio Rev. Code §9.67 has been repealed, and on September 30, 2025, the law will change.

In the State's biennial budget bill the 136th General Assembly amended Ohio Rev. Code §9.67 such that as of September 30, 2025 it will provide:

(A) Subject to division (B) of this section, no owner of a professional sports team that uses a tax-supported facility for most of its home games and receives financial assistance from the state or a political subdivision thereof shall cease playing most of its home games as the tax-supported facility and begin playing most of its home games at a facility located outside of the state unless the owner does one of the following:

(1) Enters into an agreement with the political subdivision permitting the team to play most of its home games at a facility located outside of the state;

(2) Gives the political subdivision in which the tax-supported facility is located not less than six months' advance written notice of the owner's intention to cease playing most of its home games at the tax-supported facility and, during the six months after such notice, gives the political subdivision or any individual or group of individuals who reside in the area the opportunity to purchase the team.

(B)(1) Any lease, operating agreement, management agreement, non-relocation agreement, or other similar agreement entered into with the political subdivision before, on, or after the effective date of this amendment that expressly obligates the professional sports team to play all or most of the professional sports team's regular season home games at the tax-supported facility for the term of the lease or agreement, or for a shorter period of time as set forth in the lease or agreement, is, upon the expiration of the term of the lease or agreement, or shorter period of time as set forth in the lease or agreement, as applicable, deemed an agreement with the

2

> political subdivision permitting the team to play most of its home games at a different facility in satisfaction of division (A)(1) of this section.
>
> (2) Notwithstanding the expiration of the term of the lease or agreement, or a shorter period of time as set forth in the lease or agreement, as applicable, any lease or agreement described under division (B)(1) of this section is not deemed an agreement with the political subdivision permitting the team to play most of its home games at a different facility, in satisfaction of division (A)(1) of this section, if the different facility is located outside of the state.

2025 Am. Sub. H.B. No. 96, 9.67 (effective September 30, 2025). Relevant here, a professional sports team is now subject to Ohio Rev. Code §9.67's requirements only if it moves out of state. Ohio Rev. Code §9.67(A). Even then, if the team has a lease with a political subdivision, that lease is now, as a matter of law, an agreement between the two which permits the team to begin playing most of its home games somewhere other than the tax-supported facility. Ohio Rev. Code §9.67(B)(1). Said differently, a lease—even one entered before September 30, 2025—is deemed to satisfy Ohio Rev. Code §9.67(A)(1). As set forth below, this fundamental change in Ohio law moots this case.

## LAW AND ARGUMENT

Article III of the United States Constitution limits a federal court's power to adjudicating "cases or controversies". *Bench Billboard Co. v. City of Cincinnati,* 675 F.3d 974, 981 (6th Cir. 2012), (citing *Ky. Right to Life, Inc. v. Terry,* 108 F.3d 637, 644 (6th Cir. 1997)). "'The mootness doctrine, a subset of the Article III justiciability requirements, demands a live case-or-controversy when a federal court decides a case.'" *Id.,* (quoting *Ky. Right to Life,* 108 F.3d. at 644). "'Legislative repeal or amendment of a challenged statue while a case is pending on appeal usually eliminates this requisite case-or-controversy because a statute must be analyzed by the court…in its present form.'" *Id.,* (quoting *Ky. Right to Life,* 108 F.3d. at 644) (citations omitted).

3

Thus, where the legislature amends a statute relevant to a case, a court's "first task is to consider if the case is moot." *Kenjoh Outdoor, LLC v. Marchbanks,* 23 F.4th 626, 692 (6th Cir. 2022), (citing *Green Party of Tenn. V. Hargett*, 700 F.3d 816, 822 (6th Cir. 2012)). This is so because "courts apply the law as it exists at the time of the decision." *Kenjoh,* 23 F.4th at 692, (citing *Bench Billboard,* 674 F.3d at 980). As here, "a change in the law tends to 'eliminate the requisite case-or-controversy.'" *Id.,* (quoting *Hargett,* 700 F.3d at 822). To determine whether the requisite case-or-controversy has been eliminated, a court must "look at both versions of the law and ask if the new statute 'operates in the same fundamental ways' as the old one." *Id.* "If the new statute presents a 'different controversy,' the case is moot." *Id.* A case would only avoid mootness "if the new statute imposes the same burdens on the plaintiff". *Id.*

Newly-amended Ohio Rev. Code §9.67 does not impose any, much less the same, burdens on the Browns. The Browns plan to move to Brook Park, Ohio. ECF Doc. No. 41, ¶ 60. When this case began, the Modell Law applied because it applied to a team's move to anywhere other than the tax-supported facility. It would have applied to the Browns' move from Cleveland to Brook Park. The recent amendments to Ohio Rev. Code §9.67 changed that. Now, the owner of a professional sports team that uses a tax-supported facility for most of its home games and receives financial assistance from the state or a political subdivision may not cease playing most of its home games at the facility and begin playing them at a facility *outside Ohio* without complying with Ohio Rev. Code §9.67. The Browns are not proposing to leave Ohio, and Ohio Rev. Code §9.67 no longer applies to their proposed move. The Court must examine this statutory framework. *Kenjoh,* 23 F.4th at 692. Doing so, it is evident that the newly amended Ohio Rev. Code §9.67 presents a different controversy than the Modell law and this case is now moot. It must be dismissed.

4

Finally, in its initial disclosures, the State raised the possibility of certifying to the Supreme Court of Ohio the question of the retroactive application of newly amended Ohio Rev. Code §9.67, should the issue arise in this case. ECF Doc. No. 59. Certification is appropriate where there is a question of state law for which there is no controlling precedent in the Ohio Supreme Court. Ohio Sup. Prac. R. 9.01. After the disclosures were filed, the City of Cleveland filed its *Revised Memorandum in Support of Its Second Motion for Partial Summary Judgment* in the Cuyahoga County Common Pleas Court Case. *The City of Cleveland v. Haslam Sports Group, LLC, et al.*, Cuy. Cty. Common Pleas Court Case No. CV-25-110189. Upon review of the pleading, it appears that the Cuyahoga County Common Pleas Court will have the opportunity to answer questions of state law surrounding Ohio Rev. Code §9.67. Ohio's existing appellate review process provides a path for the Supreme Court of Ohio to answer any unanswered questions of Ohio law, should it become necessary. Given that Ohio courts will have the opportunity to review Ohio Rev. Code §9.67, the State will not be seeking certification in this case.

There is a separate process, *Pullman* abstention, that provides an opportunity to obtain an answer to an "underlying state law question." *See Harris Ct. Comm'rs Court v. Moore*, 420 U.S. 77, 83 (1975), (citing *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)). If the Court believes that this case may turn on such a state-law question, it is abstention, not certification, that is best suited for resolving that question.

## **CONCLUSION**

This case centers on a statute which, as of September 30, 2025, will no longer exist. The Browns' fear that the Modell Law will violate their constitutional rights has been alleviated. The General Assembly changed Ohio Rev. Code §9.67 such that it does not even *apply* to their proposed

5

move to Brook Park.  These recent amendments eliminated any case-or-controversy presented in this case and it is moot.  This case must be dismissed.

                Respectfully submitted,

                DAVE YOST
                OHIO ATTORNEY GENERAL

                */s/ Bridget C. Coontz*
                Bridget C. Coontz (0072919)
                Chief Counsel and Ethics Officer
                Samuel C. Peterson (0081342)
                Deputy Solicitor General
                30 East Broad Street, 17th Floor
                Columbus, Ohio 43215
                Tel: 614-728-2035
                bridget.coontz@OhioAGO.gov
                samuel.peterson@ohioago.gov

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed electronically on September 12, 2025. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Bridget C. Coontz*
Bridget C. Coontz (0072919)
Chief Counsel and Ethics Officer
30 East Broad Street, 17th Floor
Columbus, Ohio 43215
Tel: 614-728-2035
bridget.coontz@OhioAGO.gov