**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CLEVELAND BROWNS FOOTBALL COMPANY LLC, et al., | ) | CASE NO. 1:24-CV-01857 |
| | ) | |
| Plaintiffs, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF CLEVELAND, et al., | ) | Magistrate Judge |
| | ) | Jonathan D. Greenberg |
| Defendants, | ) | |
| | ) | Memorandum in Support of Defendants' |
| STATE OF OHIO, | ) | Motion to Dismiss |
| | ) | |
| Intervenor. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS**
**PLAINTIFFS' SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................... ii

STATEMENT OF ISSUES .................................................................................... vi

SUMMARY OF ARGUMENT ............................................................................... vii

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 2

    A.    Art Modell moves the team, but the City gets to keep the "Browns." .................. 3

    B.    The Browns accept taxpayer funding for a new stadium. ..................................... 3

    C.    The current owners take over the Browns and plan to abandon Cleveland. .......... 3

    D.    The Browns hastily sue the City in federal court—and then twice amend—
        to preempt a now-pending state-court case involving the same subject-
        matter. ....................................................................................................... 4

ARGUMENT ...................................................................................................... 5

I.     THIS COURT LACKS SUBJECT-MATTER JURISDICTION ..................................... 6

II.    THIS COURT SHOULD ABSTAIN UNTIL THE STATE COURT RESOLVES
      THE TWO THRESHOLD QUESTIONS ............................................................. 7

    A.    *Pullman* Requires Abstention Here. .............................................................. 7

    B.    *Colorado River* Also Counsels Against Moving Forward with This Case
        While a More Appropriate State Case Is Already Proceeding. .......................... 9

III.   ALTERNATIVELY, THE BROWNS' CONSTITUTIONAL CLAIMS FAIL .............. 10

    A.    The Modell Law Is Not Close To Being Void for Vagueness. ............................ 11

    B.    The Modell Law Does Not Violate the Contract Clause. .................................. 12

        1.    Section 1983 does not provide a vehicle for the Contract Clause. .......... 13

        2.    The Modell Law complies with the Contract Clause at any rate. ............ 13

    C.    The Modell Law Does Not Violate the Dormant Commerce Clause. ................. 16

        1.    This Modell Law challenge involves only intrastate commerce. ............ 16

        2.    The Modell Law does not discriminate against out-of-state
            commerce. ..................................................................................... 17

        3.    The Modell Law does not excessively burden interstate commerce ....... 18

        4.    The dormant Commerce Clause does not apply here because the
            City is acting as a market participant. ............................................... 19

CONCLUSION .................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABB Automation, Inc. v. Honeywell Inc.*,
2002 WL 483523 (S.D. Ohio Mar. 20, 2002) ............................................................................9

*Am. Trucking Ass'ns v. Mich. Pub. Serv. Comm'n*,
545 U.S. 429 (2005) ..............................................................................................................16

*Asgrow Seed Co. v. Winterboer*,
513 U.S. 179 (1995) ..............................................................................................................12

*Baggett v. Bullitt*,
377 U.S. 360 (1964) ................................................................................................................7

*Bates v. Van Buren Township*,
122 F. App'x 803 (6th Cir. 2004) ...........................................................................................9

*Belle Maer Harbor v. Charter Township of Harrison*,
170 F.3d 553 (6th Cir. 1999) ...............................................................................................11

*Brown v. Tidwell*,
169 F.3d 330 (6th Cir. 1999) ................................................................................................7

*Burch v. USDA*,
174 F. App'x 328 (6th Cir. 2006) .........................................................................................11

*Carter v. Greenhow*,
114 U.S. 317 (1885) ..............................................................................................................13

*City of New York v. N.Y. Yankees*,
458 N.Y.S.2d 486 (Sup. Ct. 1983) ........................................................................................15

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976) ................................................................................................. vii, 7, 9

*Dep't of Revenue of Ky. v. Davis*,
553 U.S. 328 (2008) .........................................................................................................16, 19

*Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*,
36 F. Supp. 3d 981 (D. Nev. 2014) ......................................................................................13

*England v. La. State Bd. of Med. Examiners*,
  375 U.S. 411 (1964)....................................................................................................2, 8

*Garber v. Menendez*,
  888 F.3d 839 (6th Cir. 2018) ......................................................................................18, 19

*Gearing v. City of Half Moon Bay*,
  54 F.4th 1144 (9th Cir. 2022) ...........................................................................................8

*Harris Cnty. Comm'rs Ct. v. Moore*,
  420 U.S. 77 (1975).............................................................................................................7

*Harrison v. NAACP*,
  360 U.S. 167 (1959)...........................................................................................................8

*Haw. Hous. Auth. v. Midkiff*,
  467 U.S. 229 (1984)...........................................................................................................7

*Healthcare Co. v. Upward Mobility, Inc.*,
  784 F. App'x 390 (6th Cir. 2019) ......................................................................................9

*In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*,
  953 F.3d 890 (6th Cir. 2020) .....................................................................................vii, 6

*Jefferson Ward Stores, Inc. v. Doody Co.*,
  560 F. Supp. 35 (E.D. Pa. 1983) .......................................................................................9

*Kaminski v. Coulter*,
  865 F.3d 339 (6th Cir. 2017) ...................................................................................vii, 13

*Kircher v. City of Ypsilanti*,
  809 F. App'x 284 (6th Cir. 2020) ......................................................................................8

*Lathfield Invs., LLC v. City of Lathrup Village*,
  136 F.4th 282 (6th Cir. 2025) .........................................................................................13

*Maine v. Taylor*,
  477 U.S. 131 (1986)..........................................................................................................16

*Mascio v. Pub. Emps. Ret. Sys. of Ohio*,
  160 F.3d 310 (6th Cir. 1998) ..........................................................................................13

*Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v. District of Columbia*,
  62 F.4th 567 (D.C. Cir. 2023) ..............................................................................20

*Musson Theatrical, Inc. v. Fed. Express Corp.*,
  89 F.3d 1244 (6th Cir. 1996) ...............................................................................20

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023)................................................................................16, 17, 19

*On The Green Apartments L.L.C. v. City of Tacoma*,
  241 F.3d 1235 (9th Cir. 2001) .............................................................................16

*Or. Waste Sys., Inc. v. Dep't of Env't Quality of Or.*,
  511 U.S. 93 (1994)...............................................................................................17

*Pike v. Bruce Church, Inc.*,
  397 U.S. 137 (1970)................................................................................. vii, 18, 19

*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*,
  894 F.3d 235 (6th Cir. 2018) .................................................................. vii, 11, 12

*Preferred Care of Del., Inc. v. VanArsdale*,
  676 F. App'x 388 (6th Cir. 2017) .........................................................................10

*R.R. Comm'n of Tex. v. Pullman Co.*,
  312 U.S. 496 (1941)................................................................................. vii, 7, 8, 9

*Romine v. Compuserve Corp.*,
  160 F.3d 337 (6th Cir. 1998) ...........................................................................9, 10

*Sarkadi v. Ohio Casino Control Comm'n*,
  2021 WL 3662469 (S.D. Ohio Aug. 18, 2021)........................................................6

*Spector Motor Serv., Inc. v. McLaughlin*,
  323 U.S. 101 (1944)................................................................................................8

*Stapp v. Broadwing, Inc.*,
  2009 WL 530100 (S.D. Ohio Feb. 27, 2009).................................................... vii, 6

*State v. Precourt Sports Ventures, LLC*,
  No. 18-cv-001864 (Ohio Ct. C.P. Franklin Cnty. Dec. 3, 2018) ................12, 17, 19

iv

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998) ............................................................................................ vii, 6

*Stevens v. City of Columbus*,
  2022 WL 2966396 (6th Cir. July 27, 2022) ................................................... 11, 12

*Sveen v. Melin*,
  584 U.S. 811 (2018) ......................................................................................... vii, 15

*Tefft v. Seward*,
  689 F.2d 637 (6th Cir. 1982) ................................................................................. 6

*Trivison v. Fed. Nat'l Mortg. Assoc.*,
  2023 WL 6314577 (N.D. Ohio Sept. 28, 2023) ..................................................... 9

*Truesdell v. Friedlander*,
  80 F.4th 762 (6th Cir. 2023) ................................................................... 17, 18, 19

*United States. ex rel. Poteet v. Medtronic, Inc.*,
  552 F.3d 503 (6th Cir. 2009) ............................................................................... 10

*United States v. Kernell*,
  667 F.3d 746 (6th Cir. 2012) ............................................................................... 12

*Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*,
  455 U.S. 489 (1982) ............................................................................................. 11

*White v. Mass. Council of Constr. Emps. Inc.*,
  460 U.S. 204 (1983) ....................................................................................... 19, 20

**STATUTES**

28 U.S.C. § 1331 ............................................................................................................ 6

42 U.S.C. § 1983 ................................................................................................... *passim*

Ohio Rev. Code § 9.67 ........................................................................................ *passim*

**OTHER AUTHORITIES**

*Black's Law Dictionary* (12th ed. 2024), Westlaw ..................................................... 14

U.S. Const. amend. XIV ............................................................................................... 11

17A Wright & Miller, Fed. Prac. & Proc. Juris. § 4242 (3d ed. May 2025 update) ........................ 7

v

## STATEMENT OF ISSUES

1.  Whether a plaintiff that files a jurisdictionally deficient complaint can create jurisdiction by amending its complaint to add a new federal claim.

2.  Whether a federal court should abstain from addressing the merits of a case when resolution of the state issues by a state court—in a state case that is currently pending—would eliminate all federal issues from the case, especially when that parallel state proceeding is better suited to address the underlying dispute.

3.  Alternatively, whether the Modell Law is constitutional.

## SUMMARY OF ARGUMENT

1.  Plaintiffs cannot "create jurisdiction by amending their complaints to add a new federal claim."  *In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, 953 F.3d 890, 895 (6th Cir. 2020)*.*  After all, "subject matter jurisdiction cannot be created retroactively by amendment."  *Stapp v. Broadwing, Inc.*, 2009 WL 530100, at *2 (S.D. Ohio Feb. 27, 2009).  Instead, when, as here, jurisdiction does not already exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Plaintiffs' latest complaint should therefore be dismissed for lack of jurisdiction.

2.  Federal courts abstain when, as here, the interpretation of state law could avoid any need to address the federal issues.  *See, e.g.*, *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 500 (1941).  Resolution of the federal questions here—the constitutionality of the Modell Law—turns on two threshold state-law questions: (1) the scope and applicability of the Modell Law and (2) whether a recent amendment to the Modell Law retroactively cures the Browns' already-accrued violation.  Especially with the City's action now pending, the state courts are far better suited than this federal court to resolve the key threshold (and state-law) issue:  whether the Modell Law even *applies* to the Browns' planned move to Brook Park.  And this is also the exact type of circumstance where "wise judicial administration" warrants abstaining in "a federal suit due to the presence of a concurrent state proceeding."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976).

3.  In the alternative, the Browns' constitutional challenges to the Modell Law all fail.  For starters, the Modell Law is not unconstitutionally vague.  Its prohibitions and requirements are easily understood and sufficiently specific to pass constitutional muster.  *See Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 894 F.3d 235, 246 (6th Cir. 2018).  Next, the Browns' Contract Clause claim fails because (1) § 1983 does not provide a private right of action for Contract Clause claims, *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017); (2) the Modell Law does not impair—let alone *substantially* impair—any agreement between the parties, *see id.* at 346; *Sveen v. Melin*, 584 U.S. 811, 823–24 (2018); and (3) any (hypothetical) impairment would be a reasonable way to protect Clevelanders' legitimate interest in keeping the Browns in Cleveland.  Finally, the Browns' dormant Commerce Clause claim fails because their as-applied challenge alleges only *intra*state activity—a proposed move to Brook Park.  And regardless, the law does not discriminate against out-of-state commerce.  Rather, it imposes the same requirements on in- and out-of-state team owners; requires that the local purchasers get equal footing with all other potential purchasers; and does not otherwise excessively burden interstate commerce.  *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).

## INTRODUCTION

This dispute between the Browns and the City of Cleveland is ripe for resolution—but not in a federal forum.  At the outset, the Browns still have never properly invoked this Court's jurisdiction.  They failed from day one to plead a proper vehicle for their constitutional challenges. And the case law in this circuit is crystal clear: the Browns cannot cure that jurisdictional flaw by amending the complaint.  The Court should therefore dismiss the Browns' second amended complaint for lack of jurisdiction.

But even if this Court had jurisdiction, this case presents the paradigmatic case for abstention.  Two threshold state-law questions—either of which might independently moot this action—are squarely teed up a few blocks away in the Cuyahoga County Court of Common Pleas. There, in the City's first-to-secure-jurisdiction state action, the City has filed two motions for partial summary judgment.  One of those motions asks the state court to order the Browns to perform their obligations under the stadium lease.  The other seeks an order that the Browns' actions have violated the Modell Law—the one-of-a-kind Ohio law that prohibits professional-sports-team owners from unilaterally abandoning the taxpayers who subsidize them.  To resolve the Modell Law motion, the state court will necessarily decide two state-law questions that could moot this case altogether.  For the first, the state court must decide whether the Browns' conduct already violated the Modell Law.  If so, then the state court must decide the second, a purely state law question:  whether the recently lobbied-for amendment to the Modell Law—the "Haslam Law"—retroactively cures the Browns' Modell Law violation.  If the state judiciary decides the Modell Law does not apply here—either because the Browns did not violate it or because the Haslam Law excuses their violation—this federal action will be moot.

If, on the other hand, the state court decides the Modell Law applies and prohibits the Browns' actions, the Browns will not be deprived of their day in federal court.  In fact, the Browns'

1

state-court answer expressly reserves constitutional challenges under *England* so that—if necessary—this Court may decide the Modell Law's constitutionality.

But even if, in the alternative, the Browns' constitutional challenges see the light of day—either because the state court finds a Modell Law violation or this Court declines to abstain—the challenges lack all merit. Far from being ambiguous—let alone so ambiguous as to be *unconstitutionally vague*—the Modell Law sets out its prescriptions in plain terms. It provides that an Ohio sports team that plays in "a tax-supported facility" shall not "cease playing most of its home games at the facility and begin playing most of its home games elsewhere" without complying with the Modell Law's modest requirements (including obtaining the City's consent). *See* Ohio Rev. Code § 9.67. This easily clears the void-for-vagueness bar. The Browns' Contract Clause claim also fails. For starters, under Sixth Circuit caselaw, there is not even a private right of action for the Contract Clause. But even if that claim had a proper vehicle, the Modell Law does not impair any relevant agreement *at all*. Finally, the so-called "dormant Commerce Clause" is not even implicated—let alone violated—by this law that imposes conditions on any sports owner (in-state or out-of-state) regardless of where the team seeks to go (in-state or out-of-state) and *only if* the team agrees to receive taxpayer support in the first place.

Whether as a matter of abstention or dismissal on the merits, this Court should not entertain this faulty federal lawsuit.

## BACKGROUND

The Cleveland Browns Football Company LLC, Cleveland Browns Stadium Company LLC, Haslam Sports Groups, LLC, and JHAC, LLC, referred to collectively as the "Browns" here, are entities that own and operate the National Football League (NFL) franchise known as the Cleveland Browns. Doc. 41 (2d Am. Compl.) ¶¶ 8–11. This dispute centers on the Browns' (and their owners') legal obligations to the City of Cleveland, its residents, and its taxpayers.

2

**A.      Art Modell moves the team, but the City gets to keep the "Browns."**

Soon after Art Modell announced his intention to move the team out of Cleveland, the City sued him in state court.  Doc. 25-1 at 4.  The parties eventually settled:  Modell could take the team to Baltimore, but he had to leave behind the Browns' intellectual property—including "the Browns' history, heritage, records and memorabilia"—and pay the City.  *Id.*  The City would thus keep the Browns' name, and a new Cleveland Browns team would begin playing in 1999.

**B.      The Browns accept taxpayer funding for a new stadium.**

To prepare for the 1999 season, the Browns needed a stadium, so the City committed to building a new stadium for its team.  *See* 2d Am. Compl. ¶¶ 22–35.  The City financed construction of the stadium through taxpayer dollars and other funding sources.  Doc. 25-1 at 4.  The team and ownership accepted this funding with open arms.  And so the City and the Browns, via an affiliate, are parties to a Lease under which the City constructed that stadium—now called Huntington Bank Field—where the team plays its home games.  *Id.*  Over the years, the Browns and their owners have continued to accept taxpayer money for capital repairs to the stadium.  *Id.* at 4–5.

**C.      The current owners take over the Browns and plan to abandon Cleveland.**

In 2012, years after the Modell Law went into effect, the current owners acquired the team and assumed the Lease.  2d Am. Compl. ¶ 40.  From the beginning, the current owners (led by the Haslams) assured that the Browns would not leave Cleveland.  They went out of their way to "re-assure fans that the franchise isn't going anywhere."  They expressed this commitment in simple terms:  "We're not moving the Cleveland Browns."  And their commitment was emphatic.  "Why would we move? . . . That thought never, ever entered our minds."  Doc. 25-1 at 5–6. But in 2024, the owners "indicated to the City that they would be focusing on a domed stadium option in the city of Brook Park, Ohio."  Doc. 12, Am. Compl. ¶ 56; *see also* 2d Am. Compl. ¶¶ 56–73.

As a result of what appeared to be a breach of the Browns' owners' obligations under the

Modell Law—or an intent to breach those obligations—the City's legislative body authorized and instructed the City's Director of Law to enforce the Modell Law to protect the City and its citizens from the detrimental effects of the Browns leaving (again).  *See* 2d Am. Compl. ¶ 63.

      **D.**    **The Browns hastily sue the City in federal court—and then twice amend—to preempt a now-pending state-court case involving the same subject-matter.**

      **Federal Lawsuit.**  The Browns rushed to cut off that state-court enforcement action by filing this lawsuit.  Before the City had the opportunity to enforce its legal rights in state court, the Browns preemptively sued here—seeking (only) an anticipatory declaratory judgment that the Modell Law does not apply to the Browns and, if it does, is unconstitutional.  Docs. 1, 12.

      After full motion-to-dismiss briefing pointing out several jurisdictional flaws with the Browns' Amended Complaint (Docs. 25, 26, 28), the Browns (with new counsel) overhauled the complaint.  But this Amended Complaint brings the same three constitutional challenges and one state-law argument for preventing the City from enforcing the Modell Law.  *See* 2nd Am. Compl. ¶¶ 82–122.  Despite entirely rewriting the complaint, the Second Amended Complaint basically makes only two changes:  (1) attempting to cure jurisdictional defects, and (2) littering the complaint with irrelevant facts.  *See id.* ¶¶ 18–81.

      On the first set of changes, the Browns have added a federal cause of action—the federal Civil Rights statute of 42 U.S.C. § 1983—and now say this case "presents federal questions arising under the U.S. Constitution."  2nd Am. Compl. ¶¶ 14–16.  The Browns have added proposed relief beyond declaratory judgment (injunctive relief).  *Id.* ¶ 16.  And the Browns have added a City official that they think could potentially be subject to an injunction.  *Id.* ¶ 13.  The changes map onto the jurisdictional arguments that the City previously raised.  *See* Doc. 25-1 at 9–12.  And none of the other new allegations (really, public posturing) has any relevance to the substance of their claims, except perhaps the Browns' implicit admission that their owners leveraged the same

4

law they now flout (the Modell Law) to buy the Columbus Crew.  *See* 2d Am. Compl. ¶¶ 44–45.

**State Lawsuit.**  In January 2025, because the Browns' ongoing conduct only confirmed the Browns' violation of the Modell Law and the parties' contract, the City had no choice but to sue the Browns in Cuyahoga County Common Pleas Court.  *Id.* ¶ 78.  The City has invoked the Modell Law at issue here as well as the Lease that the Browns are currently violating.  Compl. ¶¶ 51–143, *City of Cleveland v. Haslam Sports Grp., LLC*, No. CV-25-110189 (Ohio Ct. C.P. Cuyahoga Cnty. Jan. 14, 2025).  The parties have started conducting discovery and continued to prepare for the case to move forward, per the court's order.  And on July 11, 2025, the state court denied the Browns' motion to stay or dismiss the City's lawsuit.  That same day, the City moved for partial summary judgment on its contract claim, requesting an order for specific performance.

On June 30, 2025, at the urging of the Browns, the General Assembly passed an amendment to Ohio Rev. Code § 9.67—known as the "Haslam Law."  The Haslam Law, which is slated to take effect on September 30, 2025, amends certain parts of the Modell Law.

On August 8, 2025, the Browns answered the City's complaint.  Their answer expressly reserved constitutional defenses for this Court's review.  Answer at 42, *City of Cleveland v. Haslam Sports Grp., LLC*, No. CV-25-110189 (Ohio Ct. C.P. Cuyahoga Cnty. Jan. 14, 2025).  On August 22, 2025, the City moved for partial summary judgment on its Modell Law claim.

## ARGUMENT

This case does not belong in federal court three times over.  *First*, the Court lacks subject-matter jurisdiction over the Browns' Second Amended Complaint.  *Second*, abstention doctrines preclude the Browns from entangling this Court in a state-law dispute that now presents *two* threshold questions of state law: (1) whether the Haslam Law retroactively applies to the Browns' pre-amendment conduct and (2) if not, whether the Browns violated the Modell Law.  *Third*, even if this Court reaches this case's merits, it should dismiss because the Modell Law is constitutional.

I.      **THIS COURT LACKS SUBJECT-MATTER JURISDICTION**

The Court should dismiss this case for lack of subject-matter jurisdiction.

Plaintiffs cannot "create jurisdiction by amending their complaints to add a new federal claim." *In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods. Liab. Litig.*, 953 F.3d 890, 895 (6th Cir. 2020).   After all, "subject matter jurisdiction cannot be created retroactively by amendment." *Stapp v. Broadwing, Inc.*, 2009 WL 530100, at *2 (S.D. Ohio Feb. 27, 2009). Instead, when, as here, jurisdiction does not already exist, "the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).   As a result, the Court lacks jurisdiction to consider the amended complaint—as other courts have similarly held.  Dkt. 37 at 5–7 (collecting cases).

None of the Browns' arguments in response undermined this threshold jurisdictional argument.  Dkt. 39 at 1–4.  The Browns discussed how § 1983 is not a jurisdictional statute like § 1331 (Dkt. 39 at 2–3), but they ignored how the Sixth Circuit has rejected similar attempts to add a federal claim to *invoke* § 1331, as the Browns attempted to do here.  *See In re DePuy Orthopaedics*, 953 F.3d at 896–97 (rejecting attempt to add federal Magnuson-Moss Warranty Act claim).  They also cited a case that did not address this jurisdictional argument, Dkt. 39 at 3 (citing *Tefft v. Seward*, 689 F.2d 637, 638 (6th Cir. 1982)), and proclaimed that "Ohio district courts have expressly rejected" this argument—relying on a single inapposite case, *id.* at 3–4.[1]

Because the Browns' original complaint failed to invoke this Court's jurisdiction and jurisdiction cannot be created by amendment, the Court should dismiss this action.

---

[1] That case cited by the Browns' (unlike this one) already had federal-question jurisdiction because the parties asserted claims under § 1983 (even though they were meritless under the Eleventh Amendment as initially pled).  *See Sarkadi v. Ohio Casino Control Comm'n*, 2021 WL 3662469, at *3–4 (S.D. Ohio Aug. 18, 2021).  The amendment merely tried to add an individual-capacity claim to fix the Eleventh Amendment problems for the official-capacity claims.  *Id.*

6

## II. THIS COURT SHOULD ABSTAIN UNTIL THE STATE COURT RESOLVES THE TWO THRESHOLD QUESTIONS.

With each Browns pleading in both cases, the arguments for abstaining only multiply. *Pullman* and *Colorado River* require letting the better-suited state case proceed in state court.

### A. *Pullman* Requires Abstention Here.

**1.** The City and State have explained why prior iterations of the Browns' lawsuit should not be entertained under *Pullman*. *See* Doc. 25-1 at 17–19; Doc. 26 at 17–20; Doc. 24 at 4–6. The Browns' Second Amended Complaint and state-court Answer have made that doctrine's application even clearer. *Pullman* provides that "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question, and thus avoid the possibility of unnecessarily deciding a constitutional question." *Harris Cnty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975) (citing *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941)). By abstaining, courts "avoid unnecessary adjudication of federal questions." *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 236 (1984).

In "the bulk of abstention cases," the "unsettled issue of state law" is, as here, "the applicability of the challenged statute" (the Modell Law) "to a certain person" or "defined course of conduct" (the Browns' planned move). *Baggett v. Bullitt*, 377 U.S. 360, 376–77 & nn.12–13 (1964). When these conditions obtain, courts "regularly order[] abstention." *Moore*, 420 U.S. at 83; *see also Brown v. Tidwell*, 169 F.3d 330, 332 (6th Cir. 1999) (abstention "especially appropriate and "regularly" applied when state-law question "would moot the plaintiffs' constitutional claim" and "settle [the] case" without ever having to reach constitutional merits); 17A Wright & Miller, Fed. Prac. & Proc. Juris. § 4242 (3d ed. May 2025 update) (collecting cases).

**2.** This doctrine squarely applies here. Two state-law issues—whether the Haslam

7

Law applies retroactively and, if not, whether the Modell Law applies to the Browns' move—could resolve the entire case in their favor, without any court ever needing to reach the constitutional merits.  Indeed, the Browns seem to acknowledge this much—as they must—in lodging the same constitutional arguments against the Modell Law, *see* 2d Am. Compl. ¶¶ 82–118, and then raising the same independent state-law claim asking this Court to interpret the Modell Law as *inapplicable* to the Browns' actions, *id.* ¶¶ 119–22.  *Pullman* applies when, as here, the plaintiff argues that the state law "might then not even apply to [them]."  *Harrison v. NAACP*, 360 U.S. 167, 177 (1959).  If the Browns were right on their Claim Three, a "definitive ruling on the state issue would terminate the controversy."  *Pullman*, 312 U.S. at 498.  Resolving that state issue would "end . . .  the litigation" and mean "the constitutional issue does not arise."  *Id.* at 501.

Why should—indeed, how can—this Court rush to decide those constitutional claims?  Doing so would violate the "one doctrine more deeply rooted than any other in the process of constitutional adjudication": that courts should not "pass on questions of constitutionality . . . unless such adjudication is unavoidable."  *Spector Motor Serv., Inc. v. McLaughlin*, 323 U.S. 101, 104–05 (1944).  It is anything but unavoidable here, so *Pullman* abstention applies.

To drive the point home, the Browns have now expressly reserved their federal claims in state court under *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964).  *England* allows the Browns to "reserve [the] ability to return to federal court and litigate [the] federal claims."  *Kircher v. City of Ypsilanti*, 809 F. App'x 284, 295 n.10 (6th Cir. 2020).  The Browns' *England* reservation makes *Pullman* all the more prudent here.  *See Gearing v. City of Half Moon Bay*, 54 F.4th 1144, 1150 (9th Cir. 2022) (affirming *Pullman* abstention because, among other things, the plaintiffs "made an *England* reservation in the state proceedings").

8

**B.    *Colorado River* Also Counsels Against Moving Forward with This Case While a More Appropriate State Case Is Already Proceeding.**

On top of *Pullman* squarely applying, *Colorado River* also dictates abstention from this "federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976); *see also Romine v. Compuserve Corp.*, 160 F.3d 337, 340–42 (6th Cir. 1998).  When state and federal cases are parallel—as they are here—a federal court should abstain if "a careful balancing of the important factors" weighs in favor of abstention.  *Bates v. Van Buren Township*, 122 F. App'x 803, 807 (6th Cir. 2004) (citation omitted).

The *Colorado River* factors warrant abstention.[2]  Allowing both cases to proceed on the same issue (whether the Modell Law applies to the Browns) would lead to piecemeal litigation, which is a key factor.  *See Healthcare Co.*, 784 F. App'x at 396; *Trivison v. Fed. Nat'l Mortg. Assoc.*, 2023 WL 6314577, at *8 (N.D. Ohio Sept. 28, 2023) (Ruiz, J.).  Jurisdiction was properly obtained in the state court first—as, at best, the Browns obtained jurisdiction here only when they were permitted to file this second amended complaint, whereas the proceedings have been proper and ongoing in state court for months before that.[3]  *See, e.g.*, *ABB Automation, Inc. v. Honeywell Inc.*, 2002 WL 483523, at *3 (S.D. Ohio Mar. 20, 2002); *Jefferson Ward Stores, Inc. v. Doody Co.*,

---

[2] In full, the factors are "(1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation . . . (4) the order in which jurisdiction was obtained. . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction."  *Healthcare Co. v. Upward Mobility, Inc.*, 784 F. App'x 390, 395 (6th Cir. 2019) (citation omitted).  As explained here, factors three through eight support abstention.  *See, e.g.*, *Romine*, 160 F.3d at 341 (same six factors warranted abstention).

[3] The City maintains that this Court also lacks subject-matter jurisdiction in this case and that this Court lacked jurisdiction to grant the motion for leave to file the second amended complaint.  *See* Doc. 42.

560 F. Supp. 35, 37 (E.D. Pa. 1983); *cf. United States. ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503, 516 (6th Cir. 2009) (abrogated on other grounds).

The state case is also equally (or better) suited to resolve this dispute.  Both proceedings rest heavily on the interpretation and application of an Ohio statute.  That the Browns have attempted to usurp jurisdiction by racing to federal court—essentially using federal defenses to that law's application now recast as causes of action under § 1983—does not change the state law's centrality.  And if federal constitutional questions come into play, the Ohio court is perfectly able to answer them—the Browns cannot "legitimate[ly] conten[d] that the Ohio state courts are incapable of safeguarding [their] rights." *Romine*, 160 F.3d at 342.  The state-court proceedings are also more advanced, including with initial stages of discovery.  And the state-court proceedings include breach-of-contract claims that are not at issue in this case, so that case will have to proceed in any event.  Finally, there is no exclusive federal jurisdiction concerning the Modell Law or the disposition of any underlying constitutional claims.  *See Preferred Care of Del., Inc. v. VanArsdale*, 676 F. App'x 388, 397 (6th Cir. 2017).

These abstention doctrines capture the same idea:  Federal courts must not needlessly wade into state or constitutional law when the state courts are as or better equipped to do so.  Federal courts should instead permit state courts to interpret their own laws, especially when (as here) that could eliminate the federal issues from the case.  These doctrines should keep this Court from needlessly wading into these unique state interests—against the backdrop of clear forum-shopping in the form of this anticipatory federal lawsuit—while a state court is poised to address the case.

This Court should abstain from hearing this federal case under either of these doctrines.

## III.   ALTERNATIVELY, THE BROWNS' CONSTITUTIONAL CLAIMS FAIL.

Because abstention is proper here, the Court need not and should not reach the Browns' constitutional claims.  *See* 2d Am. Compl. ¶¶ 82–118.  But even if the Court decides otherwise,

10

none of the Browns' half-baked constitutional claims have any merit.

A.     **The Modell Law Is Not Close To Being Void for Vagueness.**

The Browns challenge the Modell Law as void for vagueness.  *See* U.S. Const. amend. XIV.  But to pass due-process scrutiny, especially for a non-criminal law, a statute need only "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," *Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct*, 894 F.3d 235, 246 (6th Cir. 2018), and not invite arbitrary and discriminatory enforcement, *see Belle Maer Harbor v. Charter Township of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999).  A law's "flexibility and reasonable breadth, rather than meticulous specificity[,] does not render it unduly vague." *Platt*, 894 F.3d at 246–47.

1.     The Browns' challenge fails.  The party challenging the statute bears the burden of overcoming the presumption of constitutionality.  *Stevens v. City of Columbus*, 2022 WL 2966396, at *4 (6th Cir. July 27, 2022).  And when, as here, the statute in question is a civil statute regulating economic activities, the statute receives much greater leeway.  *See Village of Hoffman Estates v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 498–99 (1982).  Businesses like the Browns, "which face economic demands to plan behavior carefully," are "expected to consult relevant legislation in advance of action."  *Id.*; *see also Burch v. USDA*, 174 F. App'x 328, 333 (6th Cir. 2006).

Nothing about the Modell Law violates the void-for-vagueness doctrine, especially as applied here.  The Modell Law applies to any professional-sports-team owner whose team (1) plays most home games in a tax-supported facility and (2) receives financial assistance from the state or a political subdivision.  Ohio Rev. Code § 9.67.  Such a team cannot start playing most home games somewhere other than the tax-supported facility without either (A) entering into an agreement with the subdivision or (B) giving local investors the opportunity to purchase.  *Id.* § 9.67(A)–(B).  The Browns refused to comply with either of those conditions before giving notice

11

that they are moving the team.

**2.** The Browns' responses are unavailing. *First*, the Browns complain that the statute lacks definitions. *See* 2d Am. Compl. ¶¶ 94, 113. But statutes frequently lack definitions, requiring courts to resort to the normal toolkit for discerning meaning. Rather than declaring statutes with undefined terms unconstitutional out of hand, courts "give [those terms] their ordinary meaning" in the broader statute's context. *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995). That is precisely what the only court to construe the Modell Law did. *See* Ex. A, *State v. Precourt Sports Ventures, LLC*, No. 18-cv-001864, at 44–52 (Ohio Ct. C.P. Franklin Cnty. Dec. 3, 2018) ("Precourt Order") (finding no void-for-vagueness problems). And another Ohio court is poised to the same in the City's state-court action.

*Second*, the Browns air a laundry list of phrases in the statute that they proclaim are imprecise. *See* 2d Am. Compl. ¶¶ 94, 113. But that makes this statute like any other: in need of interpretation when two parties disagree. State statutes need not provide "mathematical certainty" or "perfect clarity and precise guidance." *Stevens*, 2022 WL 2966396, at *4 (citations omitted). The Browns' conduct here squarely falls within the Modell Law's ambit. And just because there *could* be difficult questions in other cases does not make the statute unconstitutionally vague in this one. *See United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012). That a court will need to interpret the scope of a statute's terms in a given case does not render the statute unconstitutional. *See, e.g.*, *Platt*, 894 F.3d at 247. This statute is not unconstitutionally vague.

**B.      The Modell Law Does Not Violate the Contract Clause.**

This Court can quickly dispose of the Browns' purported Contract Clause claims. For starters, the Sixth Circuit has held that § 1983 does not provide a vehicle for Contract Clause claims. But even if this suit had the right vehicle, the Modell Law complies with the Clause.

1.    **Section 1983 does not provide a vehicle for the Contract Clause.**

The Browns cannot sue the City for a purported Contract Clause violation.  As the Sixth Circuit has held, "an alleged Contract[] Clause violation cannot give rise to a cause of action under § 1983."  *Kaminski v. Coulter*, 865 F.3d 339, 347 (6th Cir. 2017).  If the Contract Clause vindicates "any individual rights," it "does so only indirectly and incidentally."  *Id.* at 346 (emphasis omitted) (quoting *Carter v. Greenhow*, 114 U.S. 317, 322 (1885)).  The "only right secured" by the Contract Clause arises in a contract-enforcement action.  *Carter*, 114 U.S. at 322.  The Browns have brought no such claim—instead, they seek pre-enforcement review of the Modell Law.  Because § 1983 does not license such a challenge under the Contract Clause, the Court should dispose of this claim.

2.    **The Modell Law complies with the Contract Clause at any rate.**

The Browns also do not plausibly allege any Contract Clause violation.  A law violates the Contract Clause only if the law (a) substantially impairs the contractual relationship and (b) flunks a means-ends balancing test.  *See Lathfield Invs., LLC v. City of Lathrup Village*, 136 F.4th 282, 304 (6th Cir. 2025).  The Browns' complaint falls short on both fronts.

**a.**    The Browns do not allege that the Modell Law substantially impairs any relevant agreement.  For this type of showing, courts ask whether "(1) a contract exists, (2) a change in law impairs that contract, and (3) the impairment is substantial."  *Mascio v. Pub. Emps. Ret. Sys. of Ohio*, 160 F.3d 310, 313 (6th Cir. 1998).  The Browns' complaint fails at each step.

*First*, the original and current Browns owners accepted assignment of the relevant agreements in 1998 and 2012, respectively (2d Am. Compl. ¶¶ 39–40)—so the Modell Law categorically *cannot* impair any *preexisting* contractual relationship.  *See Eagle SPE NV 1, Inc. v. S. Highlands Dev. Corp.*, 36 F. Supp. 3d 981, 988 (D. Nev. 2014) ("[T]he Contract Clause simply

has no application [when an] assignment occurred after [the challenged law] was enacted.").[4]

*Second*, even putting retroactivity aside, the Modell Law does not *at all* impair any obligations.  The Browns allege that the Modell Law's modest requirements impair their rights under the Lease and Franchise Commitment Agreement.  Yet the Browns identify no provision of either agreement that the Modell Law impairs.  Instead, the Browns claim that the agreements give the Browns contractual "rights" (1) to "move to a new home stadium" and (2) not to sell the team "to a new owner."  2d Am. Compl. ¶ 87.  But the Browns do not—and cannot—point to a single provision in either agreement that provides any of these purported "rights."  *See id.*

In fact, the Modell Law imposes less stringent restrictions than the Lease itself.  Under § 9(b)(2) of the Lease, the Browns promised to "hold, maintain and defend" their "rights to play professional football in the *City of Cleveland, Ohio*."  Lease § 9(b)(2)(i) (emphasis added).  The Browns also promised to "not negotiate with any person or do or suffer to be done anything which will cause such rights to be lost or impaired or diminished in any respect, or transferred, relocated or otherwise moved."  Lease § 9(b)(2)(ii).  By promising to not even "suffer to be done anything" that will cause the team to move out of Cleveland, the Browns breach this provision even if they fail to actively oppose any attempt towards moving the team out of Cleveland.  *See Suffer, Black's Law Dictionary* (12th ed. 2024), Westlaw ("To allow or permit (an act, etc.)").  These obligations apply "throughout the Term of this Lease."  Lease § 9(b).  Put simply, then, this provision prohibits the Browns from doing—or even standing idly by while someone else does—anything that might cause the Browns to leave Cleveland.  Compared to that outright prohibition, the Modell Law at

---

[4] The Browns do not allege how any current plaintiff obtained rights *before* the Modell Law's enactment.  As the State also argues, the Browns' rights could not have been retroactively impaired even compared to the original Lease and Franchise Commitment Agreement.  *See* Doc. 38 at 8–9 (State arguing that Modell Law took effect before at-issue contracts).

least permits the Browns to relocate if they negotiate an agreement with the City (which the Lease also requires) or give the City and local investors an opportunity to buy the team (which, assuming the result is that the team stays in Cleveland, harmonizes entirely with the Lease).  Far from demonstrating substantial impairment, the Browns plausibly allege no impairment at all.

*Third*, any impairment would be far from "substantial."  Federal law "has always approved statutes like this one, which enable a party with only minimal effort to protect his original contract rights against the law's operation."  *Sveen v. Melin*, 584 U.S. 811, 820 n.3 (2018).  Even laws that cause parties to "forfeit the sum total of [their] contractual rights" survive if the law imposes easily-complied-with conditions.  *See id.* at 823–24 (collecting cases).  Here, the Browns can easily comply with the Modell Law, either by negotiating a new agreement with the City allowing the Browns to play in Brook Park or by giving the City and local investors an opportunity to purchase the team.  So to the extent the Modell Law impairs contractual obligations at all (and again, it does not), it fits neatly with other squarely constitutional laws that only insubstantially impair a contract.

**b.**   Even if the Modell Law substantially impaired the Lease, the law still passes constitutional means-ends analysis.  That analysis turns on "whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'"  *Id.* at 819 (citation omitted).  The Modell Law aims to keep professional sports teams who accept municipal investment from unilaterally abandoning that municipality.  When teams leave, municipalities lose incalculable tax revenues, investments, and opportunities—and suffer irreparable damage to civic goodwill, pride, and reputation.  *See, e.g.*, *City of New York v. N.Y. Yankees*, 458 N.Y.S.2d 486, 489–90 (Sup. Ct. 1983) ("Much more is at stake than merely the loss of direct and indirect revenue to the city. . . . Any loss represents a diminution of the quality of life[.]").  To protect these interests, the Modell Law requires only that before teams move, their

15

owners either get the municipality's permission or give a reasonable, good-faith opportunity for local investors to buy the team—a far cry from "forc[ing a] sale to a new owner" or "prevent[ing]" a "move to a new home stadium." 2d Am. Compl. ¶ 87.  Because this law uses reasonable methods to protect significant, legitimate interests, it satisfies the Contract Clause.

### C.  The Modell Law Does Not Violate the Dormant Commerce Clause.

Last, the Browns contend that the Modell Law violates the "dormant Commerce Clause." The Supreme Court's dormant Commerce Clause doctrine "prohibits the enforcement of state laws" motivated by "'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023) (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337– 38 (2008)).  But the doctrine maintains States' "authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." *Maine v. Taylor*, 477 U.S. 131, 138 (1986) (citation omitted).  This claim fails.

### 1.  This Modell Law challenge involves only intrastate commerce.

The Browns' as-applied challenge stumbles out of the gate.  Because the team intends to move from one Ohio city to another, 2d Am. Compl. ¶ 4, they challenge the Modell Law's application only to *intra*state commerce—not interstate commerce.  Nothing about preventing the Browns from abandoning Cleveland for Brook Park burdens interstate commerce.  All of the Browns entities here have their principal place of business in-state, 2d Am. Compl. ¶¶ 8–11, and the Browns disclaim interest in moving the team outside of Ohio, *see id.* ¶¶ 6–7.  Because the facts alleged do not trigger the dormant Commerce Clause *at all*, any as-applied challenge fails.  *See Am. Trucking Ass'ns v. Mich. Pub. Serv. Comm'n*, 545 U.S. 429, 434 (2005); *On The Green Apartments L.L.C. v. City of Tacoma*, 241 F.3d 1235, 1242 (9th Cir. 2001) (dormant Commerce clause "not at all implicated" when "a complaint alleges only an intrastate burden").

16

### 2.    The Modell Law does not discriminate against out-of-state commerce.

Even putting aside the intrastate harm alleged here, the Browns fail to allege that the Modell Law violates the dormant Commerce Clause facially or as applied.  Courts analyzing a dormant Commerce Clause challenge first "ask if a challenged state law 'discriminates' against out-of-state economic interests to benefit local economic interests."  *Truesdell v. Friedlander*, 80 F.4th 762, 768 (6th Cir. 2023).  This "antidiscrimination rule" represents "the core" principle of the Court's "dormant Commerce Clause jurisprudence."  *Id.* (quoting *Nat'l Pork Producers*, 598 U.S. at 377).  "[D]iscrimination" in the Commerce Clause context "means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."  *Or. Waste Sys., Inc. v. Dep't of Env't Quality of Or.*, 511 U.S. 93, 99 (1994).  This law does no such thing.

a.    The Modell Law does not discriminate.  On its face, the law addresses the restrictions that apply to *all* owners of Ohio sports teams that accept taxpayer funding.  *See* Ohio Rev. Code § 9.67.  Nothing about these restrictions turns on where the owner lives or wants to move the team—instead, no matter where owners reside, they must comply with the Modell Law before moving the team away from the tax-supported facility.  *See id.*  The Modell Law does not "disadvantage out-of-state rivals."  *Nat'l Pork Producers*, 598 U.S. at 370.

Nor does any discriminatory effect or intent underlay this law.  The Modell Law cares only about where the team plays—not where its owner resides.  On the contrary, the law's primary application (restricting Ohio owners of Ohio teams) and motivation (protecting taxpayer's investments into professional sports team) belie any discrimination; and the one court to address a dormant Commerce Clase challenge to the Modell Law rejected it.  *See* Precourt Order at 32–35.

b.    Because they cannot show discrimination, the Browns attempt to raise a challenge on behalf of those that might want to *buy* the team.  They claim that the Modell Law gives "Ohio political subdivisions and residents preferential treatment and special rights with respect to the

17

purchase of professional sports organizations." 2d Am. Compl. ¶¶ 89, 108.  But even putting aside the Browns' lack of standing to assert such claims on behalf of these hypothetical out-of-state third parties, the Modell Law does no such thing.  Clevelanders and Ohioans do not get "special rights" compared to out-of-staters.  Just the opposite:  As explained, the Modell Law merely requires that local purchasers get *equal footing* with all other potential purchasers if the Browns do not obtain the City's consent to leave the taxpayer-supported stadium.  In all events, then, the Modell Law does not discriminate.

### 3.    The Modell Law does not excessively burden interstate commerce.

Because the Modell Law does not discriminate against out-of-state commerce, the Browns must prove that it unreasonably harms interstate commerce—*i.e.*, they must satisfy so-called *Pike* balancing.  Courts uphold statutes effectuating "a legitimate local public interest" unless the statute imposes a "clearly excessive" burden on interstate commerce relative to the "putative local benefits."  *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970).  Challengers thus face a "tall order in proving the invalidity of a seemingly neutral law."  *Truesdell*, 80 F.4th at 773.  The Supreme Court has not invalidated a law under *Pike* in 37 years.  *See id.*  And the "party challenging the law bears the responsibility of proving that the burdens placed on interstate commerce outweigh the law's benefits."  *Garber v. Menendez*, 888 F.3d 839, 845 (6th Cir. 2018).

**a.**    Out of the gate, the Browns' challenge fails because they have offered no "evidence about how much," if at all, the "statute burdens interstate commerce."  *Id.*  Where, as here the Browns merely allege summarily that "[t]he Modell Law places excessive burdens on interstate commerce without advancing any legitimate local interest," 2d Am. Compl. ¶¶ 91, 110, courts do not even reach the benefits–burdens balancing, *see Truesdell*, 80 F.4th at 774.  This alone warrants rejection of this claim, as the Browns have not "plead facts 'plausibly' suggesting a substantial harm to interstate commerce" and "facts that render that outcome a 'speculative' possibility are

not enough."  *Nat'l Pork Producers*, 598 U.S. at 385 (citation omitted).

      **b.**      Any speculative impositions would be minimal in any event.  The Modell Law only modestly limits how and when an Ohio sports team may relocate after accepting taxpayer funds.  The law affects only teams that play in a tax-supported facility and want to relocate.  Billionaire sports-team owners need not accept those subsidies.  And if they accept the funding, the law says only that they must (1) get the City's consent or (2) offer a modest, six-month opportunity to purchase (that they need not ultimately accept).  *See* Ohio Rev. Code § 9.67.  After that, the owner and team are free to move—in state or out of state.  That is no substantial burden.

      **c.**      Finally, the law's policy justifications readily support any impositions.  The General Assembly had a legitimate interest in preventing owners from bilking the taxpaying public for funds to then unilaterally leave that stadium.  *Cf., e.g.*, *Garber*, 888 F.3d at 846 ("Policy incentives that entice residents to stay in a State do not impose a cognizable burden.").  And these benefits involve more than just money—a sports franchise has significant value to the public and well-being of the community.  *See* Precourt Order at 39.  This law guards these weighty but incalculable interests that courts are ill-suited to upend.  *Cf., e.g.*, *Nat'l Pork Producers*, 598 U.S. at 381; *Truesdell*, 80 F.4th at 774.  This *Pike* claim fails.

      **4.**      **The dormant Commerce Clause does not apply here because the City is acting as a market participant.**

      Even if the Browns could otherwise state a claim, the dormant Commerce Clause does not apply when a government acts as a "market participant."  *Davis*, 553 U.S. at 339.  To qualify for this exception, the government must supply a public good or service rather than merely regulate others.  *See id.* at 340.  And that service need not be "uniquely public."  *Id.* at 348 n.16.  A governmental entity thus acts as a market participant when it "expend[s] only its own funds."  *White v. Mass. Council of Constr. Emps. Inc.*, 460 U.S. 204, 214–15 (1983).  In such cases, "the

Commerce Clause establishes no barrier to conditions" that a governmental entity may demand for its participation as a financier.  *See id.* at 210; *see also Metro. Wash. Chapter, Associated Builders & Contractors, Inc. v. District of Columbia*, 62 F.4th 567, 576–77 (D.C. Cir. 2023) (similar).

That is all that the Modell Law does.  The City acts as a financier and landlord for the stadium.  In return, the law imposes conditions on the receipt of taxpayer dollars.  *See* Ohio Rev. Code § 9.67.  It does not seek to impose conditions on anyone besides the recipient of funds.  *Cf. White*, 460 U.S. at 211 n.7 ("reach[ing] beyond the immediate parties" suggests non-market-participant).  And no one is required to accept taxpayer funds—the Browns could have avoided these obligations if they relied exclusively on private financial backing.  Because of that choice, though, the state law imposes modest conditions on the Browns' attempted move.  Nothing about that imposition violates the dormant Commerce Clause.

\*    \*    \*

All of the federal constitutional claims fail.  And given the lack of any reason to retain the lone remaining state-law issue as another court addresses the same issue, this Court should decline to exercise supplemental jurisdiction.  *See, e.g.*, *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).

## CONCLUSION

For these reasons, this Court should dismiss the Second Amended Complaint.

20

Respectfully submitted,

/s/ *Justin E. Herdman*
_____

Mark D. Griffin (0064141)
Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106
Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Email: MGriffin@clevelandohio.gov

Justin E. Herdman (0080418)
Tracy K. Stratford (0069457)
James R. Saywell (0092174)
Andrew S. Rumschlag (0102708)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114-1190
Phone: (216) 586-7108
Fax: (216) 579-0212
Email: jherdman@jonesday.com
     tkstratford@jonesday.com
     jsaywell@jonesday.com
     arumschlag@jonesday.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was filed electronically on the 12th day of September, 2025.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

*s/ Justin E. Herdman*

*One of the Attorneys for Defendants*


**LOCAL RULE 7.1 CERTIFICATE**

I certify that this case is unassigned, and this memorandum complies with the 20-page limitation set forth in Local Rule 7.1.

*s/ Justin E. Herdman*

*One of the Attorneys for Defendants*